**POMERANTZ LLP**
Jonathan Lindenfeld
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jlindenfeld@pomlaw.com

*Attorney for Movants*
[Additional Counsel on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL WIGGLESWORTH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MAIDEN HOLDINGS, LTD., ARTURO M. RASCHBAUM, KAREN L. SCHMITT and JOHN M. MARSHALECK,<br><br>Defendants. | No.: 1:19-cv-05296-RMB-JS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF THE MAIDEN INVESTOR GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL** |
| JOHN DOUGAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MAIDEN HOLDINGS, LTD., ARTURO M. RASCHBAUM, KAREN L. SCHMITT and JOHN M. MARSHALECK,<br><br>Defendants. | No.: 1:19-cv-08105-RMB-JS |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ..........................................................................................................1

ARGUMENT ...............................................................................................................................5

    A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ...............................................................................................................5

    B.    THE MAIDEN INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF .........................................................................................................7

        1.    The Maiden Investor Group is Willing to Serve as a Class Representative .................................................................................8

        2.    The Maiden Investor Group Has the "Largest Financial Interest" ..............8

        3.    The Maiden Investor Group Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure ....................................9

        4.    The Maiden Investor Group Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses .............11

    C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ..............................................................................................................12

CONCLUSION.............................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.F.I.K. Holding SPRL v. Fass*,
216 F.R.D. 567 (D. N.J. 2003)............................................................................................9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997).........................................................................................................11

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994)................................................................................................10

*Bassin v. Decode Genetics, Inc.*,
230 F.R.D. 313 (S.D.N.Y. 2005) .......................................................................................6

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006)........................................................................................10, 11

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) .......................................................................................6

*Danis v. USN Communs., Inc.*,
189 F.R.D. 391 (N.D. Ill. 1999)......................................................................................10

*Fischler v. Amsouth Bancorporation*,
176 F.R.D. 583 (M.D. Fla. 1997).....................................................................................10

*Gluck v. Cellstar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997) .................................................................................10

*Greebel v. FTP Software*,
939 F. Supp. 57 (D. Mass. 1996) ....................................................................................10

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
2004 U.S. Dist. LEXIS 10200 (E.D. Pa. Jun. 3, 2004)......................................................9

*In re Comverse Tech., Inc., Sec. Litig.*,
2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007)....................................................9

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ...................................................6

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp.2d 286 (E.D.N.Y. 1998) ...............................................................................9, 10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................................10

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) .........................................................................................6

*In re Vicuron Pharms., Inc. Sec. Litig.*,
   225 F.R.D. 508 (E.D. Pa. 2004)...........................................................................................9

*Janovici v. DVI, Inc.*, No. 03-4795,
   2003 U.S. Dist. LEXIS 22315 (E.D.Pa. Nov. 25, 2003)......................................................9

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir. 1990)................................................................................................6

*Lax v. First Merch. Acceptance Corp.*,
   1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997).......................................................8

*Malcolm v. Nat'l Gypsum Co.*,
   995 F.2d 346 (2d Cir. 1993)..................................................................................................6

*Osher v. Guess ?, Inc.*,
   2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ....................................................12

*Riordan v. Smith Barney*,
   113 F.R.D. 60 (N.D. Ill. 1986)............................................................................................11

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................... *passim*

## Rules

Federal Rules of Civil Procedure Rule 23 ..................................................................... *passim*

Federal Rules of Civil Procedure Rule 42 ....................................................................1, 6, 10

iii

Movants Steve Owen, Dennis R. Johnson, and Julio Queliz (collectively, the "Maiden Investor Group") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Rule 42 of the Federal Rules of Civil Procedure, for the entry of an Order:  (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing the Maiden Investor Group as Lead Plaintiff on behalf of all persons and entities that purchased or otherwise acquired the securities of Maiden Holdings, Ltd. ("Maiden" or  the  "Company") between March 4, 2014 and November 9, 2018, both dates inclusive (the "Class Period"); and (3) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The Maiden Investor Group, with losses of approximately $173,572, believes that it has the largest financial interest in the relief sought in this action.  The Maiden Investor Group further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as it is an adequate representative with claims typical of the other Class members.  Accordingly, the Maiden Investor Group respectfully submits that it should be appointed Lead Plaintiff.

## STATEMENT OF FACTS

Maiden is a Bermuda-based holding company that provides reinsurance services through its subsidiaries.  Reinsurance is the process by which one insurance company insures policies

1

underwritten by another insurance company, allowing that company to mitigate its risk in the event of adverse developments that may cause policy losses. The insurance company pays premiums to the reinsurance company and, if a loss triggered under the reinsurance policy develops, the insurance company can cede the agreed upon amount of loss to the reinsurer.

Because Maiden is a reinsurance company, the reliability of the underwriting procedures and processes it uses to evaluate the underlying policies it reinsures are critical to the Company's success. It is of central importance to investors that Maiden accurately assess and disclose potential risks and liabilities related to these underlying policies and, further, that the Company appropriately prices its reinsurance policies to account for such risks, establish adequate loss reserves, and avoid adverse developments and unexpected losses.

Maiden has two reportable operating segments: (i) Diversified Reinsurance; and (ii) AmTrust Reinsurance. The Diversified Reinsurance segment consists of a portfolio of predominantly property and casualty reinsurance business focusing on regional and specialty property and casualty insurance companies. The AmTrust Reinsurance segment includes all business ceded by AmTrust Financial Services, Inc. ("AmTrust").

AmTrust and Maiden are closely-related entities, with Maiden noting in financial filings that it "may be deemed an affiliate of AmTrust." AmTrust was founded in 1998 by the brothers Michael Karfunkel ("M. Karfunkel") and George Karfunkel ("G. Karfunkel"). AmTrust underwrites and provides various niche property and casualty insurance products.

Similarly, Maiden was formed in 2007 by M. Karfunkel, G. Karfunkel, and M. Karfunkel's son-in-law, Barry Zyskind ("Zyskind"), primarily to provide reinsurance services to AmTrust. Zyskind is the current Chairman of the Board of Directors for Maiden (the "Board"), as well as the CEO, President, and Chairman of AmTrust. Members of the Karfunkel family are

2

also principal stockholders of AmTrust and owned or controlled about 49% of AmTrust's outstanding common shares as of December 31, 2016.

During the Class Period, AmTrust was Maiden's largest customer, and the companies engage in substantial commercial dealings with one another.  Most notably, Maiden reinsured a large portion of AmTrust's portfolio, and the AmTrust Reinsurance segment made up the majority of Maiden's revenues.  For example, as of December 31, 2016, the AmTrust Reinsurance segment made up over 70% of Maiden's net premiums written and net premiums earned and, pursuant to a reinsurance agreement between the parties, the Company can reinsure 40% of AmTrust's written premiums net of reinsurance with unaffiliated reinsurers.

As AmTrust was Maiden's largest and most important client, it was especially critical that the Company appropriately assess and disclose to investors the potential risks and liabilities of the AmTrust policies that it reinsures and that Maiden appropriately account for these risks in its pricing and loss reserves.  In light of AmTrust's importance, the companies' close and historical relationship and ongoing business dealings, and the nature of reinsurance underwriting, Maiden received detailed policy data that allowed it to know the truth about the risks and likelihood of loss associated with the AmTrust insurance policies it reinsured before and during the Class Period, whether or not these risks were accurately disclosed to investors or the public.

For example, defendant Schmitt, Maiden's CFO, has stated that Maiden received a "lot of detailed actuarial data from AmTrust" in order to set its "own reserves" for reinsured AmTrust policies.  Similarly, Maiden's CEO, defendant Raschbaum, has stated that "Maiden maintains a robust process of working with our clients"—including AmTrust, the Company's most important client—"to better understand the underlying dynamics of their loss development," which "includes active and ongoing claims management with additional case reserves posted by our

3

claims professionals as necessary and auditing activities, as well as account-specific actuarial analyses that all help to shape our view of ultimate exposure." In fact, the companies' businesses are so closely interrelated that, when defendant Raschbaum was asked by an analyst during an earnings conference call if AmTrust and Maiden should reach "consensus" on setting the appropriate reserves for overlapping segments of their portfolios, defendant Raschbaum responded, "Absolutely."

Throughout the Class Period, defendants misrepresented the quality and nature of Maiden's underwriting and risk management policies and practices and the risks of its reinsurance portfolio. In particular, defendants misleadingly claimed that they were subjecting AmTrust's insurance portfolio to robust analysis and cross-checks to ensure that the Company had appropriately priced the risk of reinsuring AmTrust's insurance portfolio. In truth, the Company had failed to employ sufficient underwriting and risk management protocols and had largely abdicated its responsibility to ensure that its AmTrust Reinsurance segment priced policies commensurate with the risk assumed by the Company. These failures subjected the Company, and investors, to catastrophic losses. As those losses were realized, the price of Maiden stock declined precipitously.

On February 27, 2018, Maiden reported a net loss of $133.6 million and a net adverse development of $171 million stemming from the Company's workers' compensation line of its AmTrust Reinsurance segment and from two accounts in its commercial auto line of business within the Diversified Reinsurance segment.

On this news, Maiden's stock price fell $1.20 per share, or 16%, to close at $6.00 per share on February 28, 2018.

4

On August 9, 2018, Maiden announced its financial results for the quarter ended June 30, 2018, revealing that it had continued to sustain losses, suffering a net loss of $5.9 million for the quarter, and disclosing that Maiden had suffered an adverse prior year loss development of $28.4 million in its AmTrust Reinsurance segment. The Company also revealed that its Chief Executive Officer and Chief Financial Officer would be retiring.

On this news, the price of Maiden common stock fell $3.10 per share, or 41.3%, to close at $4.40 per share on August 9, 2018.

Then, on November 9, 2018, Maiden announced its financial results for the quarter ended September 30, 2018, including a massive $308.8 million net loss and a $210.4 million adverse prior year loss development in just its AmTrust segment. The Company also revealed that the sale of Maiden's business assets had resulted in an impairment loss of $74.2 million.

On this news, the price of Maiden common stock fell $1.12 per share, or nearly 32%, to close at $2.40 per share on November 12, 2018.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT

### A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay.

5

Fed. R. Civ. P. 42(a).  See also Manual for Complex Litigation (Third), § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at \*4–8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each action was brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws.  Accordingly, the Related Actions allege substantially the same wrongdoing, namely that defendants issued materially false and misleading statements and omissions that artificially inflated the price of Maiden's securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged.  Consolidation of the Related Actions is therefore appropriate.  *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 U.S. Dist.

6

LEXIS 69133), at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## B.    THE MAIDEN INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The Maiden Investor Group should be appointed Lead Plaintiff because it has the largest financial interest in the Action and otherwise meets the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Maiden Investor Group satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1. The Maiden Investor Group is Willing to Serve as a Class Representative

On February 11, 2019, counsel for plaintiff in the first action to be filed caused a notice to be published pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced that a securities class action had been filed against the defendants herein, and advised investors of Maiden securities that they had 60 days from the date of the notice to file a motion to be appointed as Lead Plaintiff. *See* Declaration of Jonathan D. Lindenfeld in Support of Motion of the Maiden Investor Group for Consolidation, Appointment as Lead Plaintiff, and Approval of Counsel ("Lindenfeld Decl."), Ex. A.

The Maiden Investor Group has filed the instant motion pursuant to the Notice, and its members have attached Certifications attesting that they are willing to serve as representatives for the Class, and provide testimony at deposition and trial, if necessary. *See* Lindenfeld Decl., Ex. B. Accordingly, the Maiden Investor Group satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2. The Maiden Investor Group Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

As of the time of the filing of this motion, the Maiden Investor Group believes that it has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merch. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at \*7-\*8 (N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate

8

losses suffered).[1] The most critical among the Lax Factors is the approximate loss suffered. *See*, *e.g.*, *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004); *Janovici v. DVI, Inc.*, No. 03-4795, 2003 U.S. Dist. LEXIS 22315, at *39 (E.D.Pa. Nov. 25, 2003); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 10200, at *2–3 (E.D. Pa. Jun. 3, 2004); *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 572 (D. N.J. 2003).

During the Class Period, the Maiden Investor Group (1) purchased 30,300 shares of Maiden securities; (2) expended $375,782 on its purchases of Maiden securities; (3) retained 16,736 of its Maiden shares; and (4) as a result of the disclosures of the fraud, suffered a loss of $173,572 in connection with its Class Period purchases. *See* Lindenfeld Decl., Ex. C. Because the Maiden Investor Group possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. The Maiden Investor Group Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

---

[1] *See also In re Olsten Corp. Sec. Litig.,* 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998). *Accord In re Comverse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999). In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.")).

The claims of the Maiden Investor Group are typical of those of the Class. The Maiden Investor Group alleges, as do all class members, that defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Maiden, or omitted to state material facts necessary to make the statements they did make not misleading. The Maiden Investor Group, as did all members of the Class,

10

purchased Maiden securities during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986); *Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent.'") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

The Maiden Investor Group is an adequate representative for the Class. There is no antagonism between the interests of the Maiden Investor Group and those of the Class, and its losses demonstrate that it has a sufficient interest in the outcome of this litigation. Moreover, the Maiden Investor Group has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

### 4. The Maiden Investor Group Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses

The presumption in favor of appointing the Maiden Investor Group as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interest of the
> class; or

11

(bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

The ability and desire of the Maiden Investor Group to fairly and adequately represent the Class has been discussed above.  The Maiden Investor Group is not aware of any unique defenses defendants could raise that would render it inadequate to represent the Class.  Accordingly, the Maiden Investor Group should be appointed Lead Plaintiff for the Class.

## C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001).  The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, the Maiden Investor Group has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes.  Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See* Lindenfeld Decl., Ex. D. As a result of the firms' extensive experience in litigation involving issues similar to those raised in the Related Actions, the Maiden Investor Group's counsel have the skill and knowledge which will enable them to prosecute a consolidated action effectively and expeditiously.  Thus, the Court may be assured

12

that by approving the selection of Lead Counsel by the Maiden Investor Group, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, the Maiden Investor Group respectfully requests that the Court issue an Order (1) consolidating the Related Actions; (2) appointing the Maiden Investor Group as Lead Plaintiff for the Class; and (3) approving Pomerantz Lead Counsel for the Class.

Dated:   April 12, 2019

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jonathan D. Lindenfeld*
Jonathan D. Lindenfeld
Jeremy A. Lieberman*
J. Alexander Hood II*
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
         ahood@pomlaw.com
         jlindenfeld@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom*
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

(**pro hac vice* application to be filed)

*Counsel for Movants and*
*Proposed Lead Counsel for the Class*

13