CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
DONALD A. ECKLUND
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
decklund@carellabyrne.com

Liaison Counsel

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL WIGGLESWORTH, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | No. 1:19-cv-05296-RMB-JS |
| Plaintiff, | ) ) ) | CLASS ACTION |
| vs. | ) ) ) | THE PENSION TRUST'S OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL |
| MAIDEN HOLDINGS, LTD., et al., | ) ) ) | |
| Defendants. | ) ) ) | MOTION DAY:  May 20, 2019 |

[Caption continued on following page.]

1561253_1

JOHN DOUGAN, Individually and on Behalf of All Others Similarly Situated,

                Plaintiff,

vs.

MAIDEN HOLDINGS, LTD., et al.,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

No. 1:19-cv-08105-RMB-JS

CLASS ACTION

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT .........................................................................................................4

   A.   Taishin Bank Cannot Trigger the "Most Adequate Plaintiff"
        Presumption...............................................................................................5

        1.   Taishin Bank's PSLRA Certification Is Incurably
             Defective ........................................................................................6

        2.   As a Trust Company, Taishin Bank Lacks Standing to
             Serve as Lead Plaintiff on Its Clients' Behalf..............................9

        3.   Taishin Bank's Ability to Serve as an Adequate
             Fiduciary Is Hampered by Recent Violations of Anti-
             Money Laundering Laws in Taiwan and Monetary
             Sanctions ......................................................................................11

        4.   As a Foreign Entity, Taishin Bank is Subject to
             Additional Unique Defenses .......................................................13

        5.   Taishin Bank Is Atypical Because It's Clients
             Exclusively Purchased Preferred, Not Common, Stock ...........16

   B.   The Remaining Movants – Collectively and Individually – Do
        Not Possess the Largest Financial Interest..............................................20

   C.   The Pension Trust Should Be Appointed Lead Plaintiff.........................21

III.  CONCLUSION.....................................................................................................22

1561253_1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amswiss Int'l Corp. v. Heublein, Inc.*,
69 F.R.D. 663 (N.D. Ga. 1975) ........................................................................12

*Anwar v. Fairfield Greenwich Ltd.*,
289 F.R.D. 105 (S.D.N.Y. 2013),
*vacated on other grounds*, 570 F. App'x 37 (2d Cir. 2014)..............................14

*Buettgen v. Harless*,
263 F.R.D. 378 (N.D. Tex. 2009)........................................................................3

*Camp v. Qualcomm Inc.*,
2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ........................................................8

*Cook v. Allergn PLC*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019)....................................................19

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005)...........................................................................................18

*Eichenholtz v. Verifone Holdings, Inc.*,
2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ...................................................15

*Folding Cartons, Inc. v. Am. Can Co.*,
79 F.R.D. 698 (N.D. Ill. 1978)...........................................................................12

*Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*
2015 WL 9051333 (E.D. Wis. Dec. 16, 2015) ...................................................16

*Garbowski v. Tokai Pharm., Inc.*,
302 F. Supp. 3d 441 (D. Mass. 2018)...................................................................9

*In re Baan Co. Sec. Litig.*,
271 F. Supp. 2d 3 (D.D.C. 2002)........................................................................15

*In re Cendant Corp. Sec. Litig.*,
264 F.3d 201 (3d Cir. 2001) ........................................................................*passim*

- ii -

1561253_1

**Page**

*In re Doral Fin. Corp. Sec. Litig.*,
  414 F. Supp. 2d 398 (S.D.N.Y. 2006) ................................................................21

*In re Factor VIII or IX Concentrate Blood Prods. Liab. Litig.*,
  2009 WL 2143764 (N.D. Ill. July 14, 2009) ......................................................15

*In re Factor VIII or IX Concentrate Blood Prods. Liab. Litig.*,
  595 F. Supp. 2d 855 (N.D. Ill. 2009) .................................................................16

*In re FleetBoston Fin. Corp. Sec. Litig.*,
  253 F.R.D. 315 (D.N.J. 2008) ............................................................................12

*In re Herley Indus. Inc.*,
  2010 WL 176869 (E.D. Pa. Jan. 15, 2010) .........................................................13

*In re Network Assocs., Inc., Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999) ...........................................................13, 15

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618, 624 ...................................................................................19

*In re Spectranetics Corp. Sec. Litig.*,
  2009 WL 1663953 (D. Colo. June 15, 2009) .......................................................6

*In re Surebeam Corp. Sec. Litig.*,
  2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ...................................................11, 13

*In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*,
  2007 WL 2683636 (D.N.J. Sept. 7, 2007) ............................................................8

*Marcus v. J.C. Penney Co., Inc.*,
  2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ...................................................14

*Micholle v. Ophthotech Corp.*,
  2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ...................................................6, 19

*Montoya v. Herley Indus. Inc.*,
  2006 WL 3337485 (E.D. Pa. Nov. 14, 2006) ......................................................13

- iii -

**Page**

*Nasin v. Hongli Clean Energy Techs. Corp.*,
   2017 WL 5598214 (D.N.J. Nov. 21, 2017) .........................................................7

*Newman v. Eagle Bldg. Techs.*,
   209 F.R.D. 499 (S.D. Fla. 2002)......................................................................12

*Pelletier v. Endo Int'l PLC*,
   316 F. Supp. 3d 846 (E.D. Pa. 2018)..............................................................3, 4

*Popular Imports, Inc. v. Wong's Int'l, Inc.*,
   166 F.R.D. 276 (E.D.N.Y. 1996).....................................................................16

*Richtek Tech. Corp. v. UPI Semiconductor Corp.*,
   2011 WL 13152737 (N.D. Cal. Jan. 3, 2011)...................................................16

*Steamfitters Local 449 Pension Fund v. Cent. European
   Distribution Corp.*,
   2012 WL 3638629 (D.N.J. Aug. 22, 2012) ..............................................6, 7, 10

*Steinberg v. Ericsson LM Tel. Co.*,
   2008 WL 1721484 (S.D.N.Y. Apr. 11, 2008) ...................................................13

*Stires v. Eco Sci. Sols., Inc.*,
   2018 WL 5784817 (D.N.J. Feb. 14, 2018) .....................................................3, 21

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008) .........................................................................2, 10

*Weisman v. Darneille*,
   78 F.R.D. 669 (S.D.N.Y. 1978).......................................................................11

*Willcox v. Lloyds TSB Bank, PLC*,
   2016 WL 8679353 (D. Haw. Jan. 8, 2016)........................................................14

*Xianglin Shi v. SINA Corp.*,
   2005 WL 1561438 (S.D.N.Y. July 1, 2005)..................................................13, 21

*Zemel Family Tr. v. Philips Int'l Realty Corp.*,
   205 F.R.D. 434 (S.D.N.Y. 2002).....................................................................2, 12

- iv -

1561253_1

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(2)(A)......................................................................................1, 7

28 U.S.C.
§1746...................................................................................................2, 5, 7


Federal Rules of Civil Procedure
Rule 23 ........................................................................................3, 5, 9, 19
Rule 23(a)(3)....................................................................................20

1561253_1

## I.    INTRODUCTION

Four lead plaintiff motions are pending before this Court filed by: (1) Boilermaker-Blacksmith National Pension Trust (the "Pension Trust"); (2) Taishin Bank; (3) Steve Owen, Dennis R. Johnson, and Julio Queliz (collectively, "Maiden Investor Group"); and (4) John W. Kelly.[1]  While it appears at first glance that Taishin Bank claims to have suffered a larger loss than the Pension Trust, the Private Securities Litigation Reform Act of 1995 ("PSLRA") "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies the typicality and adequacy requirements."[2]  Here, Taishin Bank cannot trigger the PSLRA's most adequate plaintiff presumption because it suffers from a host of disqualifying defects.

First, Taishin Bank's PSLRA Certification is invalid as: (1) Taishin Bank is not the entity's proper name; as the stamp, or seal, on the Certification reveals, the corporate entity is Taishin International Bank Co., Ltd.;[3] (2) it is not "personally signed by such plaintiff" as the PSLRA requires (15 U.S.C. §78u-4(a)(2)(A)); (3) it

---

[1]   On May 2, 2019, the Maiden Investor Group filed a notice of non-opposition to the competing motions.  *See* ECF No. 18.

[2]   *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001).  Unless otherwise noted, all emphasis is added and all citations are omitted throughout.

[3]   *See* Ex. 1 attached to the Declaration of James E. Cecchi in Support of Opposition to Competing Motions for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Cecchi Opp. Decl."), submitted concurrently herewith.

- 1 -

1561253_1

does not include the requisite language "'under the laws of the United States of America'" pursuant to 28 U.S.C. §1746; and (4) it contains conflicting statements suggesting Taishin Bank does not appreciate what a lead plaintiff is. Any one of these errors alone is sufficient to deny Taishin Bank's motion. *See infra* §II.A.1.

Second, it appears that the wealth management division of Taishin Bank, or, more precisely, Taishin International Bank, that is represented in the seal on the Certification is a trust company, which means the transactions identified on its Certification are really its wealth management clients, not its own. *See infra* §II.A.2. And, because Taishin International Bank doesn't own the assets – its clients do – Taishin Bank "lacks constitutional standing to bring suit for violations of the federal securities laws in its own name [instead of] the beneficial owners of the relevant securities." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 111 (2d Cir. 2008) (holding that investment advisor "lack[ed] constitutional standing" because it "has not demonstrated an 'injury-in-fact'").

Third, Taishin International Bank was fined in March 2019 by the Financial Supervisory Commission, its regulator, "for contravening the Money Laundering Control Act." *See* Cecchi Opp. Decl., Ex. 2. As such, Taishin Bank does "not meet the standards of a fiduciary who will 'fairly and adequately protect the interests' of the class [it] seeks to represent." *Zemel Family Tr. v. Philips Int'l Realty Corp.*, 205 F.R.D. 434, 436-37 (S.D.N.Y. 2002).

- 2 -

1561253_1

Fourth, as a Taiwan-based entity, Taishin Bank is uniquely "plagued with *res judicata* issues" that "jeopardize[] the interests of the entire class," while also potentially introducing thorny discovery-related concerns, particularly in a geo-political climate where U.S.-Taiwan-China relations are tenuous and fluid (at best).[4] And finally, Taishin Bank's clients traded exclusively in preferred stock, not common stock, and therefore fails to satisfy Rule 23's typicality requirement. For all of these reasons, Taishin Bank cannot be appointed lead plaintiff.

Similarly, the Court should deny the remaining competing motions because both the Maiden Investor Group and John W. Kelly claim a significantly smaller loss than the Pension Trust. In addition, the Maiden Investor Group failed to offer any evidentiary basis regarding how its individual members are affiliated and what they have in common and therefore appears to be "precisely the type of lawyer-created group the Third Circuit cautioned about in *In re Cendant Corp.*" *Stires v. Eco Sci. Sols., Inc.*, 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018).

In contrast, the Pension Trust is the movant with the largest loss that also satisfies the Rule 23 requirements and, as an institutional investor, is the quintessential lead plaintiff candidate. *See Pelletier v. Endo Int'l PLC*, 316 F. Supp. 3d 846, 853

---

[4]  *See, e.g.*, *Buettgen v. Harless*, 263 F.R.D. 378, 383 (N.D. Tex. 2009); Scott Kastner, *China-U.S.-Taiwan relations are in choppy waters. Here's what's going on*, THE WASHINGTON POST, Apr. 30, 2018 ("The United States does not recognize the ROC government — but also doesn't recognize Taiwan as a part of China.").

(E.D. Pa. 2018) (finding institution was "more capable of representing the interests of the [class] members" even though competing individual investors claimed larger losses). As a result, the Pension Trust's motion should be granted.

## II.   ARGUMENT

Pursuant to the PSLRA, a "court must appoint a lead plaintiff whom it 'determines to be most capable of adequately representing the interests of class members.'" *Pelletier*, 316 F. Supp. 3d at 848; *Cendant*, 264 F.3d at 266 ("the goal of the Reform Act's lead plaintiff provision is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class"). Importantly, the PSLRA "does not permit courts simply to 'presume' that the movant with 'the largest financial interest in the relief sought by the class' satisfies the typicality and adequacy requirements." *Cendant*, 264 F.3d at 264. Rather, it is the movant's burden to "state[] a *prima facie* case of typicality and adequacy." *Id.* And, "[i]n conducting the initial inquiry as to whether the movant with the largest losses satisfies the typicality and adequacy requirements, the court may and should consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted." *Id.*

"If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should

- 4 -

1561253_1

explain its reasoning on the record (so that appellate courts will have an adequate basis for review) and disqualify that movant from serving as lead plaintiff." *Id.* at 267. "The court should then identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified." *Id.*

### A.   Taishin Bank Cannot Trigger the "Most Adequate Plaintiff" Presumption

Although Taishin Bank asserts the largest financial interest, it cannot satisfy the Rule 23 typicality and adequacy requirements because it will be subject to a host of unique defenses that will become a major focus of the litigation because Taishin Bank: (1) is not the entity's proper legal name; (2) submitted a defective PSLRA Certification that failed to provide the requisite information to assess the signer's authority, omitted mandatory language to be legally effective under 28 U.S.C. §1746, and contains internally conflicting statements undermining any inference that Taishin Bank appreciates what a lead plaintiff is; (3) failed to establish that it has standing to bring its wealth management clients' claims; (4) as a Taiwan-based entity, is subject to unique *res judicata* and discovery-related concerns; and (5) the bank's clients exclusively purchased preferred shares and did not purchase or acquire any Maiden Holdings, Inc. ("Maiden") common stock.

- 5 -

### 1.    Taishin Bank's PSLRA Certification Is Incurably Defective

The first fundamental problem with Taishin Bank's motion is that while the motion was filed on behalf of "Taishin Bank" (ECF No. 14-1), the seal on its Certification reveals that the entity's proper name is actually Taishin International Bank Co., Ltd. *See* Cecchi Opp. Decl., Ex. 1. While this may initially seem technical, it is plain that Taishin International Bank "did not timely file a motion for appointment as lead plaintiff and did not file the certification required by the PSLRA." *See Steamfitters Local 449 Pension Fund v. Cent. European Distribution Corp.*, 2012 WL 3638629, at *11 (D.N.J. Aug. 22, 2012) (denying motion by entity that failed to move or file a certification); *see also* ECF Nos. 14, 14-1, 14-2, 14-3, 14-5, 14-6 (all papers only contain the English words Taishin Bank, not Taishin International Bank). Indeed, as Judge Simandle held in similar circumstances, the "Court cannot assume that [Taishin International Bank] met the filing deadline simply because [Taishin Bank] did." *Steamfitters*, 2012 WL 3638629, at *12. As such, it is likely that Taishin International Bank will "be subject to a unique defense regarding invalid or lack of certification because the validity of their purported certification is fairly debatable" and "a unique defense regarding untimely filing." *Id.*[5] Nor can the problem be

---

[5]    *See also In re Spectranetics Corp. Sec. Litig.*, 2009 WL 1663953, at *5 (D. Colo. June 15, 2009) (declining to "conflate the interests of two distinct legal entities," one of which moved, the other of which – the one with the financial interest – did not); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (finding that "errors in [the] submissions" by the movant with a larger financial

- 6 -

1561253_1

remedied now that the statutory deadline has expired. *Id.*; *Nasin v. Hongli Clean Energy Techs. Corp.*, 2017 WL 5598214, at *3 (D.N.J. Nov. 21, 2017) (rejecting movant's attempt to cure deficient certification after the PSLRA's statutory deadline).

Beyond this initial gaffe, even assuming Taishin International Bank had timely moved, its Certification would still be defective as it was not "personally signed" and does not contain the necessary "'under penalty of perjury of the laws of the United States of America'" language the PSLRA (15 U.S.C. §78u-4(a)(2)(A)) and 28 U.S.C. §1746 requires. *See* ECF No. 14-5. This language is required because Taishin International Bank is a Taiwanese-based entity headquartered in Taipei City, Taiwan, *i.e.*, it is located outside the United States. 28 U.S.C. §1746.

Judge Martini recently found a movant's failure to timely include the "required 'under penalty of perjury' language as federal law requires . . . subject[s] it to a unique defense that renders [it] 'incapable of adequately representing the class' and, as a result, [it is] not the presumptively most adequate lead plaintiff." *Nasin*, 2017 WL 5598214, at *3 (denying lead plaintiff motion by movant with larger loss that failed to include "under penalty of perjury" language in its certification by statutory deadline);[6] *Steamfitters*, 2012 WL 3638629, at *12 (finding a "substantial likelihood that the

interest "militate against appointment and render him inadequate to serve as lead plaintiff under Rule 23's adequacy requirement").

[6] Ironically, Taishin Bank's counsel prevailed in making this argument in *Nasin* and should be well-aware of 28 U.S.C. §1746's requirements.

- 7 -

1561253_1

[s]ubsidiaries would be subject to a unique defense regarding invalid or lack of certification because the validity of their purported certification is fairly debatable"). So too here.

In addition to these myriad deficiencies, the Certification is internally inconsistent, first stating that Taishin Bank "authorizes the Rosen Law Firm, P.A. to file an action or amend a current action," but then stating that "Plaintiff has reviewed a complaint against Maiden and retains The Rosen Law Firm, P.A. and authorizes it to file a Lead Plaintiff motion on its behalf." *See* ECF No. 14-5. Which is it?

And, while a lead plaintiff motion was filed, a complaint was not. At best, this conflicting language indicates Taishin Bank does not understand what it signed, what it retained Rosen Law Firm to do, and what its role is in this litigation. *See In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, 2007 WL 2683636, at *9 (D.N.J. Sept. 7, 2007) ("In light of the course of events, the Court is unconvinced that Mr. Guzhagin was fully aware of the situation prior to selecting counsel or that he is sophisticated enough to lead the litigation [and] finds that Mr. Guzhagin has failed to demonstrate the willingness and ability to select competent class counsel, an important factor to consider [under *Cendant*]."). At worst, Taishin Bank has made false statements under penalty of perjury. *See Camp v. Qualcomm Inc.*, 2019 WL 277360, at *3-*4 (S.D. Cal. Jan. 22, 2019) (finding that "although Singh declared under penalty of perjury that he 'reviewed the complaint and authorized its filing,' there was no complaint filed

- 8 -

in his name" and that "[d]ue to these errors in Singh's pleadings, and the questions surrounding whether he is a typical plaintiff, the Court finds these questions underscore the reliability of Singh's representations" and "the Court finds that Singh does not meet the final requirements to be appointed lead plaintiff under Rule 23") (emphasis omitted) (quoting *Garbowski v. Tokai Pharm., Inc.*, 302 F. Supp. 3d 441, 455 (D. Mass. 2018) ("'[Plaintiff's] willingness to make false statements under oath contributes to the court's conclusion that he would not have been an adequate lead plaintiff.'")).

Combined, these numerous errors in its Certification confirm that Taishin Bank is ineligible for appointment as lead plaintiff.

### 2. As a Trust Company, Taishin Bank Lacks Standing to Serve as Lead Plaintiff on Its Clients' Behalf

The Taishin Bank seal located in the signature block of its PSLRA Certification contains, in traditional Chinese, the phrase "Taishin International Bank Co., Ltd." as well as the phrase "trust business only." *See* Cecchi Opp. Decl., Ex. 1 at ¶4. The second seal located on the PSLRA Certification contains the name "Chen Hsin Pei" who, according to Taishin International Bank's website, is Head of Trust Business. *Id.* at ¶5. In fact, Taishin International Bank's website identifies trust and wealth management as the bank's major business items. These facts indicate that it is Taishin International Bank's clients – not Taishin International Bank itself – that possess the financial interest in the relief sought by the class. And, because "the alleged injury

- 9 -

1561253_1

was suffered by" Taishin International Bank's clients, Taishin Bank "lacks constitutional standing to bring suit for violations of the federal securities laws in its own name but on behalf of its clients, the beneficial owners of the relevant securities." *W.R. Huff*, 549 F.3d at 111.

Since *W.R. Huff*, courts have routinely declined to appoint entities similar to Taishin Bank as lead plaintiff. For example, in *Steamfitters*, a foreign investment manager sought appointment as lead plaintiff based upon stock purchases and losses suffered by its wholly-owned subsidiary investment entities. The court determined that the subsidiaries were "the only entities that actually purchased or owned [defendant company's] stock, and thus incurred any losses" and were "the only entities who suffered an injury-in-fact." 2012 WL 3638629 at *3, *11. As such, the parent entity had "neither authority to bring lawsuits nor title to the claims." *Id.* at *11. Because the court recognized that "[t]here is no greater impediment to a Plaintiff's ability to prosecute a case than a lack of standing," the foreign investment manager's motion was denied despite the fact that it had the largest losses of all the movants. *Id.* at *10-*11 (explaining that the "Court cannot prejudice the class members by subjecting them to the time and expense of litigating these unique defenses").

- 10 -

Taishin Bank has not demonstrated that it owns the securities identified on its Certification.  As such, Taishin International Bank lacks standing to seek appointment as lead plaintiff.

### 3.  Taishin Bank's Ability to Serve as an Adequate Fiduciary Is Hampered by Recent Violations of Anti-Money Laundering Laws in Taiwan and Monetary Sanctions

"As a fiduciary for the class," Taishin Bank "would be required to adhere to the highest standards of honesty and integrity."  *Weisman v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y. 1978).  In this regard, "[o]n more than one occasion courts have found that an individual is an inadequate lead plaintiff due to unrelated misconduct which implicates the individual's ability to serve as a fiduciary." *In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *7 (S.D. Cal. Jan. 5, 2004) (citing cases).  In *Surebeam*, the court denied a lead plaintiff motion filed by an entity whose principal representative was subject to "complaints to securities regulators including misrepresentation, unauthorized trading in client accounts, and use of unsuitable investments" and "had his National Association of Securities Dealers ('NASD') membership terminated." *Id.*

Just two months ago, on March 4, 2019, Taishin Bank was fined for violating the Money Laundering Control Act.  *See* Cecchi Opp. Decl., Ex. 2.  In imposing monetary sanctions against Taishin Bank, its regulator, the Financial Supervisory Commission, noted that "it had found dozens of such unreported transactions when

- 11 -

1561253_1

inspecting the bank's transactions between August 2016 and August 2017." *Id.* This evidence demonstrates that Taishin Bank would not be an adequate class representative in this securities fraud case and precludes the Court's consideration of it as a lead plaintiff candidate. *See Zemel Family Tr.*, 205 F.R.D. at 436-37 (denying class certification in securities case because trustee of proposed class representative was also partner of entities that had been "the subject of an SEC cease and desist order" and "SEC sanctions" which "calls to mind the nature of the very claim that plaintiff alleges in this case" and therefore would "not meet the standards of a fiduciary who will 'fairly and adequately protect the interests' of the class he seeks to represent").[7]   "Without comment or consideration of [Taishin Bank's] guilt or innocence as to the underlying charges," these facts confirm "that there is at least a potential that [Taishin Bank] will be subject to unique defenses and will not fairly and

---

[7]   *See also In re FleetBoston Fin. Corp. Sec. Litig.*, 253 F.R.D. 315, 330-35 (D.N.J. 2008) (denying class certification, in large part, due to proposed representative's criminal conviction and conduct in years preceding case); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504-05 (S.D. Fla. 2002) (declining to appoint as lead plaintiff movant cited for violating SEC and NASD rules); *Folding Cartons, Inc. v. Am. Can Co.*, 79 F.R.D. 698, 703 (N.D. Ill. 1978) ("giv[ing] great weight" to judicial findings that a principal of the proposed class representative "had participated in deceptive selling schemes, had sold sub-standard grade materials while representing them to meet specifications, and had deliberately lied and concealed his actions" and finding that "[s]uch conduct and wrongdoing are persuasive evidence of the inadequacy of the named plaintiff to assume the fiduciary position of a class representative"); *Amswiss Int'l Corp. v. Heublein, Inc.*, 69 F.R.D. 663, 669-71 (N.D. Ga. 1975) (rejecting proposed class representatives who had been convicted of federal securities violations).

1561253_1

adequately protect the interests of the class." *Surebeam*, 2004 WL 5159061, at *7 (declining to appoint as lead plaintiff investor charged with securities industry misconduct); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (finding presumptive lead plaintiff was inadequate due to entity's fraud investigation); *Xianglin Shi v. SINA Corp.*, 2005 WL 1561438, at *4 (S.D.N.Y. July 1, 2005) (declining to appoint individual as lead plaintiff because "[h]onesty and trustworthiness are thus relevant factors in determining an[] individual's ability to serve as a class representative" and "convictions of fraud or other forms of dishonesty undermine the qualifications of a potential class representative").[8]

### 4.    As a Foreign Entity, Taishin Bank is Subject to Additional Unique Defenses

Similarly problematic is the fact that Taishin Bank is a Taiwanese entity, which raises a "risk that foreign courts would not give the Court's judgment res judicata effect." *Steinberg v. Ericsson LM Tel. Co.*, 2008 WL 1721484, at *1 (S.D.N.Y. Apr. 11, 2008) (denying foreign investors' motion to reconsider court's denial of lead

---

[8]   Notably, in *Montoya v. Herley Indus. Inc*., 2006 WL 3337485, at *2 (E.D. Pa. Nov. 14, 2006), one lead plaintiff movant challenged another movant's – Galleon Management, L.P. – adequacy based on SEC civil charges that were settled without any judicial finding of wrongdoing. *Id.* In rejecting the challenge, that court noted the "settlement did not include a finding of fraud." *Id.* Two weeks after the class was certified, Galleon's managing partner, Raj Rajaratnam, was indicted on securities fraud charges stemming from alleged insider trading activity at Galleon, and Galleon had to be replaced as lead plaintiff and a class representative. *See In re Herley Indus. Inc.*, 2010 WL 176869, at *1 (E.D. Pa. Jan. 15, 2010). Luckily for that class, another investor was also appointed as a class representative. *Id.*

1561253_1

plaintiff application). Taishin Bank has provided no evidence that a Taiwanese court would recognize this Court's judgment, making it entirely possible that – after obtaining a class action judgment here – Taishin Bank could also bring claims under Taiwanese law in connection with Maiden securities purchased in the United States.[9] The *res judicata* risk presented here, which is unique to Taishin Bank, further underscores why Taishin Bank should not be appointed lead plaintiff. *See Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911, at *6 (E.D. Tex. Feb. 28, 2014) ("Even though it is unclear whether there would be an issue with a judgment taking *res judicata* effect, this Court is not willing to subject the entire proposed class to that risk.").

_____

[9]   *See Willcox v. Lloyds TSB Bank, PLC*, 2016 WL 8679353, at *10, *12 (D. Haw. Jan. 8, 2016) (noting defendant's analysis that Taiwan, among other foreign countries, was unlikely to grant *res judicata* effect to court's judgment and holding that "[t]he Court does not have the benefit of a developed record on country-by-country preclusion considerations and declines to certify a class including foreign plaintiffs in whose home countries Plaintiffs have not shown a probability of *res judicata* effects"); *Anwar v. Fairfield Greenwich Ltd.*, 289 F.R.D. 105, 121 (S.D.N.Y. 2013) ("[T]he Court finds that the Plaintiffs have not sufficiently demonstrated that the stated policy or general inclination of the law of the following countries would more likely than not favor recognizing, enforcing, and giving preclusive effect to any judgment rendered in this action by this Court involving absent class members: [from] Taiwan . . . . Therefore, the Court will not certify a class which includes absent class members from [Taiwan and other foreign countries]."), *vacated on other grounds*, 570 F. App'x 37 (2d Cir. 2014); Yuliya Zeynalova, *The Law on Recognition and Enforcement of Foreign Judgments: Is It Broken and How Do We Fix It?*, 31 BERKELEY J. INT'L L. 150, 165-66 (2013) ("[C]ourts in Greece, Japan, Korea, Mexico, Portugal, South Africa, Germany, and **Taiwan** will not enforce a judgment 'if a local court (i.e., the court of the foreign country) would not have had jurisdiction under the facts.'").

- 14 -

Moreover, Taishin Bank's location is situated 12 hours ahead of this Court's time zone, casting doubt on Taishin Bank's ability to effectively monitor and participate in the litigation, and further undermining its ability to adequately serve as lead plaintiff. For example, in *Network Associates*, the court denied two foreign organization's motion to serve as lead plaintiff because, *inter alia*, "the distance[] involved . . . would impede their ability to manage and to control American lawyers conducting litigation in California." 76 F. Supp. 2d at 1030. Similarly, in *In re Baan Co. Sec. Litig.*, 271 F. Supp. 2d 3 (D.D.C. 2002), the court denied "an individual foreign investor as the lone lead plaintiff" by reason, *inter alia*, that "geographic and linguistic barriers impose[d] an additional challenge, as he lives in Germany and at times required a translator to answer questions at his deposition." *Id.* at 13; *see also Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *10 (N.D. Cal. Aug. 22, 2008) ("The fitness of the Israeli Group to be lead plaintiff is further compounded by language barriers, esoteric United States securities laws and problems inherent in communicating across continents.").

Taishin Bank's ability to serve as lead plaintiff is further limited by the fact that Taiwan-based discovery would, at best, be a burdensome and expensive undertaking for the class, and, at worst, be illegal. *See In re Factor VIII or IX Concentrate Blood Prods. Liab. Litig.*, 2009 WL 2143764, at *2 (N.D. Ill. July 14, 2009) ("discovery in aid of foreign litigation is a limited and cumbersome process in Taiwan, made more so

- 15 -

1561253_1

by the fact that Taiwan is not a party to the Hague Convention"); *Popular Imports, Inc. v. Wong's Int'l, Inc.*, 166 F.R.D. 276, 277 (E.D.N.Y. 1996) ("Popular Imports informed Magistrate Judge Mann that Chinese law does not permit the taking of even voluntary depositions without official authorization, which may be obtained only by submitting letters rogatory. Popular Imports said that because the unsworn depositions were illegal and because some of the third-party witnesses had since recanted their testimony, the court should suppress all of the third-party depositions taken in China.").[10]

These concerns strongly militate against a finding that Taishin Bank would be an adequate representative.

### 5.     Taishin Bank Is Atypical Because It's Clients Exclusively Purchased Preferred, Not Common, Stock

As its Certification indicates, Taishin Bank (or its clients) traded exclusively in preferred stock, not common stock. *See* ECF Nos. 14-5, 14-6. As indicated by the

---

[10] *See also In re Factor VIII or IX Concentrate Blood Prods. Liab. Litig.*, 595 F. Supp. 2d 855 (N.D. Ill. 2009) ("We are satisfied that the taking of a substantial number of depositions in Taiwan in connection with cases pending in California would be a difficult and cumbersome process, at best."); *Richtek Tech. Corp. v. UPI Semiconductor Corp.*, 2011 WL 13152737, at *2 (N.D. Cal. Jan. 3, 2011) (recognizing that action involving documents located in Taiwan and mostly written in Chinese would be a "time- and resource-intensive undertaking"); *Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, Ltd., 2015 WL 9051333, at *1 (E.D. Wis. Dec. 16, 2015) (acknowledging that "[d]iscovery, much of which has taken place in Taiwan, has been contentious and difficult, involving language barriers and interpreters" and that "[t]o better manage the case, [the presiding judge] held monthly telephonic status conferences with counsel").

1561253_1

stock charts below, the prices and volume of Maiden common stock and the two preferred stocks that Taishin Bank exclusively purchased vary throughout the Class Period:



In fact, while Taishin Bank's brief notes that the complaints allege "the price of Maiden shares declined nearly 10% to close at $17.00 per share on February 15, 2017, on abnormally high volume of over 1 million shares traded," Taishin Bank did not purchase any such shares. *Compare* ECF No. 14-2 at 4 *with* ECF Nos. 14-5, 14-6. Equally as important, the preferred stock Taishin Bank did purchase did not decline by 10%, or trade at $17.00, or have volume of over 1 million shares traded on February 15, 2017. *See* Cecchi Opp. Decl., Ex. 4. In fact, one of the preferred stock's price

- 17 -

*increased* on February 15, 2017. *Id.* The same is true for all of the other dates identified in Taishin Bank's brief (except August 9, 2018 and November 12, 2018), including preferred stock price *increases* when the common stock decreased. *Compare* ECF No. 14-2 at 4-8 *with* Cecchi Opp. Decl., Ex. 4. Taishin Bank's brief says absolutely nothing about the preferred stock price at all, let alone address the fact that the preferred stock price increased when the common stock price decreased. *See* ECF No. 14-2. Without price decreases on all but two dates that adverse information was allegedly revealed to the market, Taishin Bank cannot establish loss or loss causation – both elements of a Securities Exchange Act of 1934 claim. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005) (finding "complaint's failure to claim that Dura's share price fell significantly after the truth became known" insufficient because loss causation cannot rest on "inflated purchase price" alone). This confirms Taishin Bank is atypical of the class alleged to be harmed in both complaints and its own brief.

Additionally, the preferred shares are senior to Maiden's common stock and will have priority in the event of a liquidation or bankruptcy.[11] "Although no bankruptcy is imminent, and therefore this potential conflict is not dispositive, the

---

[11] *See, e.g.*, Prospectus filed in connection with offering for 6.625% notes, *available at* https://www.sec.gov/Archives/edgar/data/1412100/000114420416107610/v441966_424b2.htm.

Court [should] find that this issue further calls into question [Taishin Bank's] adequacy." *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 624 n.3 (S.D.N.Y. 2015) (finding that "great majority" of movant's "losses are in preferred ADSs" and recognizing that "the interests of common and preferred ADS holders—and therefore between SKAGEN–Danske and the rest of the class—may diverge at some future juncture").

Thus, because investors that traded exclusively in preferred stock may "'introduce factual issues irrelevant to stockholder class members, like . . . duration, maturity, volatility, and interest rates, and could subject the class to unique defenses, causing unnecessary conflict,'" Taishin Bank fails to satisfy Rule 23 and should not be appointed lead plaintiff.[12] *Micholle*, 2018 WL 1307285, at *9 (declining to appoint movant that exclusively traded in options as lead plaintiff); *Cook v. Allergn PLC*, 2019 WL 1510894, at *2 (S.D.N.Y. Mar. 21, 2019) (declining to appoint movant with largest financial interest as lead plaintiff whose interest was 60% invested in options because he was not "an investor whose claims will turn out to be typical of the

---

[12] Acknowledging Taishin Bank's atypicality, Taishin Bank's counsel stated their intention to add "several" additional Maiden investors as named plaintiffs to its consolidated amended complaint. *See* ECF No. 14-2 at 14. This ploy is too little and too late given that the Pension Trust possesses a significantly larger financial interest than the additional investor with the largest loss identified by Taishin Bank's counsel and the PSLRA's statutory deadline has expired. *See* Cecchi Opp. Decl., Ex. 3 (estimating James Holtz's loss during the Class Period of $431,863.80 – well below the Pension Trust's loss).

1561253_1

average common stockholder within the meaning of Fed. R. Civ. P. 23(a)(3)" and his appointment "as lead plaintiff very likely 'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and he could subject the class to unique defenses, causing unnecessary conflict'").[13]

Combined with the failure to file an accurate motion and valid Certification, as well as fundamental standing defects and *res judicata* concerns, the fact that Taishin Bank did not purchase or acquire any Maiden common stock during the Class Period precludes it from triggering the PSLRA's most adequate plaintiff presumption. Its motion should be denied.

**B.    The Remaining Movants – Collectively and Individually – Do Not Possess the Largest Financial Interest**

The Pension Trust possesses a significantly larger financial interest than the Maiden Investor Group and John W. Kelly, ***combined***:

| *Remaining Movant* | *Claimed Loss* |
|---|---|
| **Pension Trust** | **$736,964** |
| Maiden Investor Group | $173,572 |
| John W. Kelly | $65,972 |

---

[13]   This is not to say that preferred stockholders are not members of the putative class of securities purchasers as alleged in the *Dougan* complaint; they clearly are. Rather, Taishin Bank, as an exclusive purchaser of preferred stock, should not be the lead plaintiff.

Furthermore, as this Court has previously recognized, the Maiden Investor Group "is precisely the type of lawyer-created group the Third Circuit cautioned about in *In re Cendant Corp.*" *Stires*, 2018 WL 5784817, at \*5. The Group submitted absolutely no information with its motion in an "attempt to establish that they were the type of cohesive unit that could adequately manage the litigation." *Id.* As such, the Maiden Investor Group "'cannot be counted on to monitor counsel in a sufficient manner.'" *Id.*

Because neither the Maiden Investor Group nor Mr. Kelly possess a sufficiently large financial interest, their motions should be denied.

### C.    The Pension Trust Should Be Appointed Lead Plaintiff

The Pension Trust, a sophisticated institutional investor with experience leading securities class actions as lead plaintiff, is "precisely the type of plaintiff envisioned under the PSLRA." *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 n.8 (S.D.N.Y. 2006). The Pension Trust has experience overseeing class counsel in securities litigation and ample resources to commit to the successful prosecution of this action. *See* ECF. No. 15-2 at 8-9. "With such experience and resources, [the Pension Trust] will be well-suited to oversee the litigation and ensure that the class members, rather than their lawyers, control the litigation." *SINA*, 2005 WL 1561438, at \*5. The Pension Trust is thus the ideal and preferred lead plaintiff candidate.

- 21 -

## III.    CONCLUSION

None of the competing movants satisfy the PSLRA's lead plaintiff requirements.  As such, their motions should all be denied.

DATED:  May 6, 2019                    Respectfully submitted,

                                       CARELLA, BYRNE, CECCHI,
                                       OLSTEIN,   BRODY & AGNELLO, P.C.
                                       JAMES E. CECCHI
                                       DONALD A. ECKLUND


                                              s/ James E. Cecchi
                                          JAMES E. CECCHI

                                       5 Becker Farm Road
                                       Roseland, NJ  07068
                                       Telephone:  973/999-1700
                                       973/994-1744 (fax)

                                       Liaison Counsel

                                       ROBBINS GELLER RUDMAN
                                         & DOWD LLP
                                       SAMUEL H. RUDMAN
                                       58 South Service Road, Suite 200
                                       Melville, NY  11747
                                       Telephone:  631/367-7100
                                       631/367-1173 (fax)

                                       ROBBINS GELLER RUDMAN
                                         & DOWD LLP
                                       TOR GRONBORG
                                       DANIELLE S. MYERS
                                       JUAN CARLOS SANCHEZ
                                       655 West Broadway, Suite 1900
                                       San Diego, CA  92101
                                       Telephone:  619/231-1058
                                       619/231-7423 (fax)

- 22 -

1561253_1

- 23 -

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

1561253_1