THE ROSEN LAW FIRM, P.A.
LAURENCE M. ROSEN
One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: 973/313-1887
973/833-0399 (fax)
lrosen@rosenlegal.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
TOR GRONBORG
TRIG R. SMITH
ALEXANDER M. MENDOZA
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
torg@rgrdlaw.com
trigs@rgrdlaw.com
amendoza@rgrdlaw.com

Co-Lead Counsel
[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re MAIDEN HOLDINGS, LTD. SECURITIES LITIGATION | ) Master File No. 1:19-cv-05296-RMB-JS ) ) CLASS ACTION |
| This Document Relates To:<br><br>        ALL ACTIONS. | ) ) OPPOSITION TO DEFENDANTS' ) REQUEST FOR JUDICIAL NOTICE ) ) ) ) |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................1

II. LEGAL STANDARD APPLICABLE TO A REQUEST FOR JUDICIAL NOTICE ........................................................................................1

III. ARGUMENT ....................................................................................................3

    A. Defendants' Exhibits A, B, E, F, G, and H are Inappropriate For Judicial Notice for the Truth of the Matters Therein Because the Parties Dispute Their Accuracy ...........................................................3

        1. Exhibit A: Maiden's 2016 Form 10-K ......................................5

        2. Exhibit B: Maiden's 2017 Form 10-K........................................6

        3. Exhibits E and F: Maiden's 2014 and 2015 Form 10-Ks...........7

        4. Exhibits G and H: Raschbaum's and Schmidt's 2016 Forms 4 ....................................................................................8

    B. Exhibits I, J, K, and L Are Suitable Only for Limited Judicial Notice Because They Are Outside the Pleadings ................................8

    C. Exhibits C and D Are Irrelevant and Unsuitable for Judicial Notice...............................................................................................9

IV. CONCLUSION.................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hagan v. Khoja*,
  139 S. Ct. 2615 (2019) ...................................................................................3

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) .........................................................................2

*In re Horsehead Holding Corp. Sec. Litig.*,
  2018 WL 4838234 (D. Del. Oct. 4, 2018)....................................................2, 9

*In re Horsehead Holding Corp. Sec. Litig.*,
  2019 WL 1409454 (D. Del. Mar. 28, 2019).....................................................2

*In re Merck Co.*,
  2006 U.S. Dist. LEXIS 2345 (D.N.J. January 20, 2006) ..............................9, 10

*In re Viropharma, Inc. Sec. Litig.*,
  2003 WL 1824914 (E.D. Pa. April 7, 2003) .....................................................4

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018).........................................................................3

*Pennsylvania Dep't of Human Servs. v. United States*,
  897 F.3d 497 (3d Cir. 2018).....................................................................passim

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014)..........................................................................2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ....................................................................................3

*United States v. Onyenso*,
  615 F. App'x 734 (3d Cir. 2015) ...................................................................3

- ii -

**Rules**

Fed. R. Evid. 201(b) ........................................................................................2

Fed. R. Civ. P. 12(b)(6) ................................................................................1, 3

## I.    INTRODUCTION

In in a footnote in their motion to dismiss Plaintiffs' Amended Complaint for Violation of the Federal Securities Laws (the "Complaint"), Defendants request that the Court take judicial notice of 12 separate exhibits.[1] ECF No. 61-1 at 7 n.1.[2] Two of the exhibits are not referenced in the Complaint, are irrelevant to Plaintiffs' claims and are not properly subject to judicial notice. The remaining 10 exhibits could be appropriate for judicial notice for the limited purpose of identifying the existence and contents of the documents. But none of these documents are appropriate for judicial notice for the truth of the matters therein, which is how Defendants use them in their motion. Defendants' effort to use these documents to make factual arguments and contradict Plaintiffs' allegations of fraud is improper on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss.

## II.    LEGAL STANDARD APPLICABLE TO A REQUEST FOR JUDICIAL NOTICE

As a general rule, courts ruling on a Rule 12(b)(6) motion may "'consider only the allegations contained in the complaint, exhibits attached to the complaint and

---

[1]   Defendants failed to make any mention of their plans to request judicial notice in their June 6, 2020 pre-motion letter (ECF No. 49) or during the July 28, 2020 conference with the Court, or at any time prior to filing their motion to dismiss.

[2]   The referenced exhibits are attached to the Declaration of Kevin H. Marino in Support of Defendants' Motion to Dismiss the Amended Complaint. ECF No. 61-2.

matters of public record.'" *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).[3]

There are two exceptions to the rule that outside evidence may not be considered

when ruling on a motion to dismiss. First, a court can consider the text of an

undisputedly authentic document that is integral to a plaintiff's claim. *In re*

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). In

considering the applicability of this exception, "[w]hat is critical is 'whether the

claims in the complaint are "based" on an extrinsic document' – not 'merely whether

the extrinsic document was explicitly cited.'" *In re Horsehead Holding Corp. Sec.*

*Litig.*, 2018 WL 4838234, at \*9 (D. Del. Oct. 4, 2018), *adopted by In re Horsehead*

*Holding Corp. Sec. Litig.*, 2019 WL 1409454 (D. Del. Mar. 28, 2019). Second, Fed.

R. Evid. 201(b) permits a court to take judicial notice of a fact that is "not subject to

reasonable dispute because it: (1) is generally known within the trial court's

territorial jurisdiction; or (2) can be accurately and readily determined from sources

whose accuracy cannot reasonably be questioned." In such circumstances, a court

may take judicial notice of a document's existence but must **not** take notice of the

truth of any matters that can be reasonably contested. *See Pennsylvania Dep't of*

*Human Servs. v. United States*, 897 F.3d 497, 514 (3d Cir. 2018) (no clear error in

---

[3]    All citations and footnotes are omitted and emphasis added unless otherwise noted.

district court's refusal to take judicial notice of regulatory interpretation that provided some support for one party's position but was not "indisputable").

The limited application of judicial notice is not relaxed with respect to Rule 12(b)(6) motions in cases, like this one, involving violations of the federal securities laws. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (noting that "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery" and that the risk "is especially significant" in securities fraud matters), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019). While a defendant seeking to dismiss claims of securities law violations may raise, on a motion to dismiss, opposing inferences on the element of scienter, the Supreme Court has clearly held that any such inferences must be "rationally drawn from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

## III.  ARGUMENT

### A.  Defendants' Exhibits A, B, E, F, G, and H are Inappropriate For Judicial Notice for the Truth of the Matters Therein Because the Parties Dispute Their Accuracy

Judicial notice requires a "high degree of indisputability." *United States v. Onyenso*, 615 F. App'x 734, 738 (3d Cir. 2015). Thus, although Plaintiff relies on the documents submitted as Exhibits A, B, E, F, G, and H in the Amended

Complaint, judicial notice of the truth of the content of these documents would be inappropriate because the parties contest their accuracy.[4] *See In re Viropharma, Inc. Sec. Litig.*, 2003 WL 1824914, at *1 (E.D. Pa. April 7, 2003) ("[T]he Court will not accept as true the statements made by [defendant] in its SEC and FDA filings. It would be improper to accept these statements as true because the crux of the Plaintiffs' Complaint is that statements made by [defendant] were not truthful."). Like in *Viropharma*, Plaintiffs here allege that each of the Form 10-Ks submitted as Exhibits A, B, E, and F contained false and misleading statements.[5] Indeed, Defendants' own motion makes clear that the contents of these exhibits is contested: "The Amended Complaint implies that establishing loss reserves is a simple process that easily be manipulated by a handful of the Company's officers. By contrast, the same SEC filings in which Plaintiffs purport to identify misstatements about the Company's loss reserves also detail the complexity, difficulty, and sophisticated analyses that go into this estimate." Motion at 7-8. And, as Defendants admit, "Plaintiffs' . . . Amended Complaint purports to identify a substantial number of

---

[4]  Plaintiff does not oppose judicial notice of Exhibits A, B, E, F, G, and H for the fact that they were filed and the existence of the statements therein. But Defendants cite to these exhibits for the truth of contested matters they discuss, and the Court should not take notice of those so-called "facts."

[5]  *See* Complaint, ¶¶146-149 (2016 Form 10-K (Ex. A)); ¶¶164-167 (2017 Form 10-K (Ex. B)); ¶¶112-115 (2014 Form 10-K (Ex. E)); ¶¶127-132 (2015 Form 10-K (Ex. F)).

misstatements contained in SEC filings . . . ." Motion at 13. Similarly, the accuracy of the Forms 4 submitted by Defendants as Exhibits G and H is also disputed. Plaintiffs cite these documents as evidence of Defendants' scienter –part of an insider trading scheme by defendants Raschbaum and Schmitt while they were in possession of material, nonpublic information about Maiden. Am. Compl., ¶¶187-188. In return, Defendants make an improper factual argument based on the Forms 4 listing that the purpose of the insider sales as "tax planning purposes." Mot. at 29. The Court should not take judicial notice of this purported "fact." Because the veracity of the 10-Ks and Forms 4 is hotly contested, and as discussed more specifically below, the Court should decline to take judicial notice for the truth of their contents. *See Pa. Dep't of Human Servs.*, 897 F.3d at 514.

### 1.    Exhibit A: Maiden's 2016 Form 10-K

Defendants improperly cite Maiden's 2016 Form 10-K for the truth of the matters asserted. For instance, Defendants repeatedly quote this document in an attempt to establish the "complexity, difficulty, and sophisticated analyses" that went into Maiden's loss estimates. Motion at 7-9. Defendants also repeatedly quote the 2016 Form 10-K to make the factual assertion that "Maiden made clear to investors the inherent risk in estimating loss reserves." Motion at 10-12. But as discussed above, Plaintiffs contest the accuracy of the 2016 Form 10-K. Am. Compl., ¶¶146-149. For example, Plaintiffs allege that the 2016 Form 10-K was false

and misleading because it understated Maiden's loss reserves and overstated its operating income due to "Defendants' unlawful conduct of deliberately or recklessly under-reserving for AmTrust liabilities during the Class Period . . . ." Complaint, ¶148. This allegation directly contradicts Defendants' attempts to use this document to defend Maiden's reserve process. Thus, because the accuracy of the 2016 Form 10-K is in dispute, the Court should decline to take judicial notice of the truth of its contents. *See Pa. Dep't of Human Servs.*, 897 F.3d at 514.

### 2.    Exhibit B: Maiden's 2017 Form 10-K

Defendants improperly cite Maiden's 2017 Form 10-K for the truth of the matters asserted. For instance, Defendants assert that "[e]ach Form 10-K . . . features a report from the Company's independent external auditor *validating the effectiveness of the Company's internal controls*." Motion at 9. Similarly, Defendants cite the audit report in the 2017 10-K to argue that "[t]hird-party approval further, and strongly, validates Maiden's approach." Motion at 23-24. While it is not necessarily improper for the court to take judicial notice of the fact that each 10-K includes a report from the Company's external auditor, Defendants' factual assertions that these reports "validat[e] the effectiveness of the Company's internal controls" and "further, and strongly, validate[] Maiden's approach" improperly goes beyond the facts of the 2017 Form 10-K to the truth of the matter asserted. Like the 2016 Form 10-K, Plaintiffs allege that the 2017 Form 10-K was

- 6 -

similarly false and misleading because it overstated Maiden's 2017 consolidated loss reserve and net income due to "Defendants' unlawful conduct of deliberately or recklessly under-reserving for AmTrust liabilities during the Class Period . . . ." Complaint, ¶¶164-167. Thus, because the accuracy of the 2017 Form 10-K is in dispute, it would be improper for the Court to take judicial notice of the document for Defendants' claim that the audit report validates their internal controls or for any other truth of the matters asserted. *See Pa. Dep't of Human Servs.*, 897 F.3d at 514.

### 3. Exhibits E and F: Maiden's 2014 and 2015 Form 10-Ks

Defendants improperly cite Maiden's 2014 and 2015 Form 10-Ks for the truth of the matters asserted: namely, that "loss reserves do not represent an exact calculation of liability; rather, loss reserves are estimates of what we expect the ultimate resolution and administration of claims will cost"; and "[t]hese estimates are based on actuarial projections and on our assessment of currently available data . . . ." Motion at 11. But just as with the 2016 and 2017 Form 10-Ks, Plaintiffs allege that the 2014 and 2015 Form 10-Ks understated Maiden's loss reserves and overstated its net income due to "Defendants' unlawful conduct of deliberately or recklessly under-reserving for AmTrust liabilities during the Class Period . . . ." ¶¶112-15; 127-130. Thus, Plaintiffs allege that Defendants' in the 2014 and 2015 Form 10-Ks contained misstatements and material omissions. Because the accuracy of the 2014 and 2015 10-Ks is in dispute, it would be improper for the Court to take

judicial notice of the documents for any truth of the matters asserted. *See Pa. Dep't of Human Servs.*, 897 F.3d at 514.

### 4. Exhibits G and H: Raschbaum's and Schmidt's 2016 Forms 4

Defendants improperly cite the Forms 4 dated November 9, 2016 and November 15, 2016 for the factual argument that the purported reason behind Raschbaum's and Schmitt's insider trades – listed on the Forms 4 as "tax planning purposes" – undercuts Plaintiffs' inference of scienter. Motion at 29-30. But Plaintiffs allege that these Defendants' stock sales were made "while in possession of material, nonpublic information about Maiden's failure to appropriately account for AmTrust Reinsurance segment loss reserves and the resulting inflation of Maiden's financial results." Complaint, ¶187. Defendants' factual argument, based on a snippet from their self-prepared Form 4s, is improper on a motion to dismiss. And it would be improper for the Court to take judicial notice of the Forms 4 for any truth of the matters asserted therein. *See Pa. Dep't of Human Servs.*, 897 F.3d at 514.

### B. Exhibits I, J, K, and L Are Suitable Only for Limited Judicial Notice Because They Are Outside the Pleadings

Plaintiffs do not cite or reference the Forms 4 submitted by Defendants as Exhibits I, J, K, and L in the Amended Complaint. Thus, the question "whether the claims in the complaint are 'based' on an extrinsic document must be answered in the negative." *Horsehead*, 2018 WL 4838234, at *9. Accordingly, the Forms 4 are

not incorporated by reference, and the Court may not properly consider these exhibits under the first exception. Further, while Rule 201 allows a court to take notice of public records, these documents "'may only be considered for the limited purpose of showing that a particular statement was made by a particular person' and not 'for the truth of the matters purportedly contained within those documents.'" *In re Merck Co.*, 2006 U.S. Dist. LEXIS 2345, at *9-10 (D.N.J. January 20, 2006). Thus, while the Court could take judicial notice of the Forms 4 submitted as Exhibits I, J, K, and L, it must not consider the truth of the contents of these documents – which is what Defendants have attempted to use them for. *See* Motion at 30-31 (citing to unincorporated Forms 4 to make factual arguments regarding defendants Raschbaum's and Schmitt's purported stock holdings).

### C.    Exhibits C and D Are Irrelevant and Unsuitable for Judicial Notice

Plaintiffs' Complaint does not cite or reference Maiden's 2008 and 2009 Form 10-Ks submitted by Defendants as Exhibits C and D. Again, the question is whether the claims in the complaint are "based" on these documents. *Horsehead*, 2018 WL 4838234, at *9. Again, answer is no: Plaintiffs' claims are based on Defendants' misstatements during the period from February 19, 2014 to November 9, 2018 (the "Class Period"). *See, e.g.*, Complaint, ¶1. These statements, in part, related to Maiden's SEC filings going as far back as its 2013 10-K filed March 4, 2014. Complaint, ¶91. Thus, Plaintiffs in no way relied on Maiden's 2008 and 2009 10-Ks

- 9 -

in making their claims. Further, the factual argument Defendants attempt to make using these documents – that 10-Ks "predating the class period" purportedly warned investors that Maiden's reserves might be insufficient (Motion at 10) – is completely irrelevant to Plaintiffs' claims, which concern Defendants' statements *during* the Class Period. As such, the Court need not even notice the existence of Exhibits C and D. And, if the Court does notice these documents, it must not consider the truth of their contents. *Merck*, 2006 U.S. Dist. LEXIS 2345 at 9-10.

## IV.    CONCLUSION

For the reasons stated above, the Court should decline to take judicial notice of Exhibits C and D, should take only limited notice of Exhibits A, B, D, E, F, G, H, and I, and should reject Defendants' factual arguments based on the purported truth of the contents of these exhibits.

Dated: October 26, 2020                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Laurence M. Rosen*
Laurence M. Rosen

One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: 973/313-1887
973/833-0399 (fax)
lrosen@rosenlegal.com

- 10 -

**THE ROSEN LAW FIRM, P.A.**
DANIEL TYRE-KARP
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
dtyrekarp@rosenlegal.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
TOR GRONBORG
TRIG R. SMITH
ALEXANDER M. MENDOZA
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
torg@rgrdlaw.com
trigs@rgrdlaw.com
amendoza@rgrdlaw.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

*Co-Lead Counsel for
Lead Plaintiffs and the Class*

- 11 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of October, 2020 a true and correct copy of the foregoing OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE was served by CM/ECF to the parties registered to the Court's CM/ECF system.


*/s/ Laurence M. Rosen*
Laurence M. Rosen

- 12 -