Kevin H. Marino
John D. Tortorella
**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, NJ 07928-1488
Telephone: (973) 824-9300
Facsimile: (973) 824-8425
kmarino@khmarino.com
jtortorella@khmarino.com

*Attorneys for Defendants*

[Other counsel on signature block]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re Maiden Holdings, Ltd. Securities Litigation | Master File No. 1:19-cv-05296-RMB-JS <br><br> <u>CLASS ACTION</u> <br><br> ORAL ARGUMENT REQUESTED <br><br> MOTION DATE: NOVEMBER 16, 2020 |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINT ON BEHALF OF DEFENDANTS MAIDEN HOLDINGS, LTD., ARTURO M. RASCHBAUM, KAREN L. SCHMITT, AND JOHN M. MARSHALECK

**TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT ...................................................................................................2

I.   PLAINTIFFS FAIL TO PLEAD FALSE STATEMENTS ...........................2

     A.   Plaintiffs' General Omission Claims Fail ...............................................3

     B.   Plaintiffs' Assertions of Omissions Under *Omnicare* Likewise Fail..................................................................................................6

     C.   Plaintiffs' Materiality Argument Shows, if Anything, That Historical Loss Ratios Were Not Material to Investors ........................8

II.  PLAINTIFFS FAIL TO PLEAD SCIENTER..................................................9

     A.   Plaintiffs' General Assertions of Knowledge and Recklessness Fail..................................................................................................9

     B.   Defendants Fail to Plead Any Motive to Commit Fraud ....................10

     C.   The Non-Fraudulent Inference is the Sole Plausible One...................13

CONCLUSION...............................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Newlink Genetics Corp.*,
  965 F.3d 165 (2d Cir. 2020)..................................................................................7

*In re Adams Golf, Inc. Sec. Litig.*,
  381 F.3d 267 (3d Cir. 2004)..................................................................................6

*In re Apple Inc. Sec. Litig.*,
  2020 WL 2857397 (N.D. Cal. June 2, 2020).......................................................4

*In re Bio-Tech. Gen. Corp. Sec. Litig.*,
  380 F. Supp. 2d 574 (D.N.J. 2005) .....................................................................10

*In re Bristol-Myers Squibb Securities Litigation*,
  312 F. Supp. 2d 549 (S.D.N.Y. 2004)..................................................................12

*Chapman v. Mueller Water Prods., Inc.*,
  2020 WL 3100243 (S.D.N.Y. June 11, 2020) ......................................................11

*Citiline Holdings., Inc. v. iStar Fin. Inc.*,
  701 F. Supp. 506 (S.D.N.Y. 2010)........................................................................13

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
  355 F. Supp. 2d 1069 (N.D. Cal. 2005) ...............................................................13

*Dempsey v. Vieau*,
  2016 WL 3351081 (S.D.N.Y. June 15, 2016) .......................................................8

*Fryman v. Atlas Fin. Hldgs., Inc.*,
  2020 WL 2735366 (N.D. Ill. May 26, 2020).........................................................3

*GSC Partners CDO Fund v. Washington*,
  368 F.3d 228 (3d Cir. 2004)..................................................................................12

*In re: Valeant Pharmaceuticals International, Inc. Securities Litigation*,
  2019 WL 2724075 (D.N.J June 30, 2019)............................................................11

*Kline v. First W. Gov't Sec., Inc.*,
  24 F.3d 480 (3d Cir. 1994)....................................................................................4

*Li v. Aeterna Zentaris, Inc.*,
  2016 WL 827256 (D.N.J. Mar. 2, 2016)...............................................................4

*Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp.*,
  2013 WL 4405538 (S.D.N.Y. Aug. 5, 2013) ........................................................14

*Martin v. Quartermain*,
  732 F. App'x 37 (2d Cir. 2018) ..........................................................................8

*In re Mobilemedia Secs. Litig.*,
  28 F. Supp. 2d 901 (D.N.J. 1998) .......................................................................4

*Nguyen v. New Link Genetics Corp.*,
  297 F. Supp. 3d 472 (S.D.N.Y. 2018) ...............................................................13

*Oklahoma Firefighters Pension and Ret. Sys. v. Lexmark, Int'l, Inc.*,
  367 F. Supp. 3d 16 (S.D.N.Y. 2019) ...................................................................7

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ......................................................................... 1, 2, 4, 6, 8

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000) ...............................................................................9

*Russo v. Bruce*,
  777 F. Supp. 2d 505 (S.D.N.Y. 2011) ...............................................................13

*Sapir v. Averback*,
  2016 WL 554581 (D.N.J. Feb. 10, 2016) ..........................................................12

*SEB Inv. Mgmt. v. Endo Int'l, PLC*,
  351 F. Supp. 3d 874, 911 (E.D. Pa. 2018) ..........................................................4

*In re Signet Jewelers Ltd. Sec. Litig.*,
  2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) .....................................................6

*In re Synchronoss Techs. Inc. Secs. Litig.*,
  2019 WL 2849933 (D.N.J. July 2, 2019) ...........................................................11

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016) ...............................................................................7

*Underland v. Alter*,
  2011 WL 4017908 (E.D. Pa. Sept. 9, 2011) ........................................................2

iii

Defendants respectfully submit this memorandum of law in further support of their motion to dismiss the Amended Complaint.

## PRELIMINARY STATEMENT

Plaintiffs' case turns on the allegation that Maiden should have given greater weight to historical information in estimating loss reserves. Beyond that hindsight contention, Plaintiffs allege no facts suggesting Maiden deliberately under-reserved, misrepresented its process for estimating reserves, or engaged in other wrongdoing.

Recognizing these obstacles, the Opposition pivots to claim that Maiden made misleading omissions by failing to disclose that historical loss ratios differed from its loss reserves. But Plaintiffs' general authority concerning omissions says nothing about disclosures in connection with opinions about loss reserves, and applicable cases under *Omnicare* impose no such obligation. Indeed, Plaintiffs demand for disclosure of one of many inputs into Maiden's reserve process offers no limiting principle, but instead invites investors to dissect the processes employed by insurers and lenders to find information to which an investor, in hindsight, would give different weight. Plaintiffs' assertion that a "fact cutting the other way" is immune from disclosure only if it is "ancillary" further indicates Plaintiffs' support for an unworkable—and non-existent—disclosure regime.

Plaintiffs' scienter claims also fail. Defendants' cases firmly establish that Raschbaum's and Schmitt's very limited stock sales (they held the vast majority of

1

shares through the decline)—made months before the first alleged corrective disclosure and for tax purposes—do not support improper motive. Plaintiffs' allegations concerning incentive compensation and capital raising never rise above the generic assertions routinely rejected in securities cases. And Plaintiffs' demand that the Court ignore Maiden's clean audit opinions and external actuarial approvals underscores that Plaintiffs recognize the impact of that information on their claims.

Plaintiffs' case depends on the implausible inference that Maiden's modeling and estimation choices amount to deliberate under-reserving and fraud. Plaintiffs' failure, in particular, to allege any motive for misconduct dooms their claims.

## ARGUMENT

## I.    PLAINTIFFS FAIL TO PLEAD FALSE STATEMENTS

Plaintiffs do not meaningfully refute Defendants' arguments that (i) Plaintiffs fail to allege that Defendants did not truly believe Maiden's loss reserve estimates; (ii) loss reserves are opinions under *Omnicare*;[1] (iii) Maiden's characterization of its process as "disciplined," "credible," and "refined" is not actionable; (iv) Plaintiffs fail to allege how, if at all, reporting of historical loss ratios changed between Maiden's Supplemental 2016 Disclosures and 2017 Disclosures; and (v) pleading

---

[1] Plaintiffs cite *Underland v. Alter*, 2011 WL 4017908 (E.D. Pa. Sept. 9, 2011) for the separate proposition that not "*all* statements pertaining to loan loss reserves are opinions." *See* Opp. 24 (quoting *id.* at *9). *Underland* actually confirms that adequacy of loan loss reserves is "a subjective evaluation." *Id.* at *9.

aggregate historical loss ratios does not allege with particularity a disparity between loss reserves and historical information for individual business lines.

Nor do Plaintiffs address their failure to plead facts—beyond hindsight—suggesting that Maiden failed to follow its own disclosed process for estimating reserves. Plaintiffs argue repeatedly that Maiden had access to historical data, but provide no facts suggesting that Maiden failed to review and consider that data. At base, Plaintiffs' claim is little more than a disagreement with Maiden over how to incorporate historical data into the estimation of loss reserves. It is well-settled that Plaintiffs' disagreement cannot support a claim for securities fraud.[2]

Recognizing these infirmities and the weight of authority dismissing similar misstatement claims, Plaintiffs now assert that Maiden's alleged failure to disclose historical loss ratios is an actionable omission that belies its loss reserve statements.

### A.    Plaintiffs' General Omission Claims Fail

Plaintiffs' omission claims rely on inapposite authority. Plaintiffs assert that once an issuer speaks, it must "communicate any additional information" so as not

---

[2] *Fryman v. Atlas Fin. Hldgs., Inc.*, 2020 WL 2735366 (N.D. Ill. May 26, 2020) is on point. *Fryman* found that even though older claims "were paying out in excess of case reserves"—what Plaintiffs allege here—that "does not plausibly allege that Defendants did not *believe* that the reserve amounts . . . based on actuarial analysis were inadequate." *See id.* at *7. *Fryman* also rejects allegations of fraud despite disclosure of incorrect information about certain types of claims, *id.* at *9.

3

to "render misleading that which was communicated." Opp. 14[3] (quoting *Kline v. First W. Gov't Sec., Inc.*, 24 F.3d 480, 490-91 (3d Cir. 1994)). *Kline* was issued 20 years before *Omnicare* and a year before the PSLRA, and has nothing to do with loss reserves. Plaintiffs' other authority is similarly unhelpful to them. *See Li v. Aeterna Zentaris, Inc.*, 2016 WL 827256 (D.N.J. Mar. 2, 2016) (statements relating to drug trials); *In re Mobilemedia Secs. Litig.*, 28 F. Supp. 2d 901, 939 (D.N.J. 1998) (various misstatements about media business unrelated to reserves); *SEB Inv. Mgmt. v. Endo Int'l, PLC*, 351 F. Supp. 3d 874, 900, 911 (E.D. Pa. 2018) (statements about declining "abuse rates" for a certain drug were false because *the opposite* was true).[4] And no case obliges Maiden to disclose component inputs into its reserve estimates.

Plaintiffs insist that "affirmative disclosures of Maiden's loss ratios and loss reserves obligated Defendants to disclose adverse historical data that undermined these positive statements." Opp. 14. But historical ratios in isolation—as opposed to as part of Maiden's complex estimation process, *see, e.g.*, AC ¶ 82, Opp. 6-8, MTD 7-9—do not "undermine[]," or even contradict, Maiden's loss reserve

---

[3] Plaintiffs' Opposition is cited as "Opp. __"; Defendants' Motion is "MTD __"; Defendants' Request for Judicial Notice is "RJN __".

[4] *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397 (N.D. Cal. June 2, 2020) is inapposite. *Apple* addresses a garden-variety misstatement by Apple's CEO that the company's business in China was "very strong" at a time when Apple was aware of "troubling signs coming out of China" that were "particularly bad." *See id.* at *16. The CEO's statement "did not align with the information he possessed at the time" because, according to plaintiffs there, the CEO's statement was flat-out false. *Id.*

estimates; and loss reserve statements are predictions of losses, and not "positive." Because Plaintiffs fail to allege, among other things, that loss reserves depend on historical loss ratios, not disclosing disparities between the two is not actionable.

Plaintiffs' demand that Maiden disclose the historical data component of its estimation process also fails to provide a limiting principle. Plaintiffs would expose insurers and lenders to suit for failing to disclose component data an investor could assert, in hindsight, would have affected the reserve estimates if it were differently incorporated. The law around reserves, as noted below, does not function that way.[5]

Plaintiffs also assert that Maiden represented historical information was the most important input into its underwriting model. Plaintiffs claim in connection with this argument that "investors relied on Maiden to accurately estimate the Company's expected future losses," Opp. 6, which reflects a fatal flaw in Plaintiffs' allegations: no reasonable investor would rely without question on predictions of the future, much less given Maiden's warnings about the risk around its reserve estimates. *See* MTD 10-12. And Plaintiffs' isolation of a few phrases from Maiden's 2016 and 2017 10-Ks about historical data cannot obscure that Maiden actually disclosed a multi-layered, multi-model process involving many inputs and various individuals inside and outside Maiden. No reasonable investor could conclude, as Plaintiffs

---

[5] Plaintiffs assert, without citation, that "reasonable investors understood that Maiden's initial loss ratios for each accident year aligned with loss ratios for more seasoned accident years. Opp. 17. This is pure speculation.

imply, that Maiden simply reviewed past performance and made a few tweaks. And, as discussed above, Plaintiffs fail to allege that Maiden did *not* incorporate historical information in precisely the way Maiden said it would. Rather, Plaintiffs speculate that if Maiden had given unspecified additional weight to historical loss ratios, Maiden would have estimated its loss reserves in some unspecified different way.[6]

**B.    Plaintiffs' Assertions of Omissions Under *Omnicare* Likewise Fail**

Plaintiffs invoke the portion of *Omnicare* under which an opinion could be false for "omit[ting] material facts about the issuer's inquiry into or knowledge concerning a statement of opinion, . . . [that] conflict[] with what a reasonable investor would take from the statement itself." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189 (2015). At most, however, historical information could have been a "fact cutting the other way" that does not render an opinion actionable—if it were contrary at all, viewed in the proper context of Maiden's estimation process. MTD 26. Plaintiffs again respond with inapposite authority. *See*, *e.g.*, *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267 (3d Cir. 2004) (not addressing reserves and pre-dating *Omnicare* by a decade).[7] Plaintiffs also cite

---

[6] Plaintiffs refer to ASC 944-40-30-1 but, as with Plaintiffs' other allegations, offer no *facts* that Maiden did not undertake the analysis indicated by the standard. *See* Opp. 10. In fact, contrary to Plaintiffs' assertions, AICPA lists three factors, including "availability of an actuarial or a statistical analysis of reserves." AC ¶ 85.

[7] *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) addresses numerous factors not present here, including a "concerted effort to promote risky lending," "the proportion of sub-prime loans in [defendant's]

*Oklahoma Firefighters Pension and Ret. Sys. v. Lexmark, Int'l, Inc.*, 367 F. Supp. 3d 16 (S.D.N.Y. 2019), to assert that a fact "cutting the other way" can be nothing more than "'ancillary' noise." Opp. 22. But *Lexmark* does not address how to determine if information is more than merely a fact "cutting the other way" because it finds that the undisclosed fact at issue was *directly contrary* to a public statement, and that it "strain[ed] credulity" to characterize the alleged misstatements as opinions at all. *See id.* at *32-33.[8]

Plaintiffs also assert that Maiden's loss reserve disclosures "did not align with the adverse information" concerning historical loss ratios, which "rendered their statements to investors false and misleading." Opp. 18. In fact, Maiden's disclosures are appropriate in the context of opinion statements. In *Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016), plaintiffs claimed, as here, that "statements were misleading for failure to include a fact that would have potentially undermined" projections concerning a developing drug. *Id.* at 212. The Court found no obligation for the drug company to disclose even "feedback" that came from the Food and Drug

---

portfolio," and "compelling" statements of an alleged former employee that "Signet personnel contemplated raising reserves . . . but senior executives . . . elected not to do so." *Id.* at *8, *13. Plaintiffs make no comparable allegations.

[8] *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165 (2d Cir. 2020) is similarly inapplicable, as it concerns a statement claiming no "major" studies concerning a medical issue had reached a different conclusion while omitting to mention studies that actually reached different conclusions. *See id.* at 177.

Administration "merely because it tended to cut against [defendants'] projections." *Id.* Investors, the Court concluded, were not "entitled to so much information as might have been desired to make their own determination about the likelihood of FDA approval," even though investors "*perhaps would have acted otherwise had the feedback been disclosed.*" *Id.* (emphasis added). Similarly, in *Dempsey v. Vieau*, 2016 WL 3351081 (S.D.N.Y. June 15, 2016), the court found that a defendant's "failure to disclose every fact upon which its accounting judgments were based is not an actionable omission under *Omnicare*, *so long as there was in fact an accounting judgment underlying the statement at issue.*" *Id.* at *3 (emphasis added). Plaintiffs' "disagreement with the accounting conclusions" that are "bolstered by a showing that there were 'some fact[s] cutting the other way'" does not "plead an actionable omission under *Omnicare.*" *Id.*; *see also Martin v. Quartermain*, 732 F. App'x 37, 40 (2d Cir. 2018) (summary order) ("An opinion statement . . . is not [] misleading [simply because] an issuer knows, but fails to disclose, some fact cutting the other way.' This is true even when the 'fact' cutting the other way is the contrary opinion of an expert or authority.") (quoting *Omnicare*, 575 U.S. 176).

### C.    Plaintiffs' Materiality Argument Shows, if Anything, That Historical Loss Ratios Were Not Material to Investors

Plaintiffs assert that "[t]he fact that Maiden's stock price substantially dropped when Defendants finally disclosed the historical, seasoned loss ratios establishes the materiality of that information." Opp. 23.  Plaintiffs plead Maiden

made this disclosure in the 2017 10-K filed on March 1, 2018, which "reported its historical loss development tables by individual AmTrust business lines." AC ¶ 67. But on March 1, March 2, and March 5, 2018, Maiden stock closed *up* from the previous day,[9] and, regardless, the Amended Complaint does not plead that this disclosure caused Maiden's stock price to decline. *See* AC ¶¶ 168-183 (alleging corrective disclosures). Under Plaintiffs' authority, "if a company's disclosure of information has no effect on stock prices, it follows that the information disclosed . . . was immaterial as a matter of law." *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000) (internal quotation omitted). Consequently, to the extent stock price movement indicates materiality, the rise in Maiden's stock price upon disclosure of historical loss ratios indicates that information about historical loss ratios was immaterial to investors.[10]

## II.  PLAINTIFFS FAIL TO PLEAD SCIENTER

### A.  Plaintiffs' General Assertions of Knowledge and Recklessness Fail

Defendants concede that defeating falsity defeats their tag-along scienter arguments. *See* Opp. 26-27 ("[In] securities fraud cases such as this, the same facts

---

[9] *See* https://finance.yahoo.com/quote/MHLD/history?period1=1517443200&period2=1522368000&interval=1d&filter=history&frequency=1d&includeAdjustedClose=true (last visited Nov. 23, 2020).

[10] Plaintiffs conceded at the Premotion Conference that GAAP violations, without more, are not fraud. *See* MTD 19 n.11. Regardless, Plaintiffs' GAAP and accounting standards allegations, including about the 2016 Disclosures, likewise depend on Plaintiffs' claims about historical data. *See, e.g.*, Opp. 25.

often suffice to allege falsity and scienter."). Plaintiffs' keystone scienter arguments arise from Defendants' alleged access to historical data. Because this data fails to support falsity, however, knowledge of the same data cannot support scienter.[11] Plaintiffs' assertions about "core operations," SOX certifications, and the "magnitude and duration" of the fraud depend on the same meritless assertions of falsity arising from the historical loss ratios. *See id.* 30-32. Notably, Plaintiffs' assertion that Raschbaum and Schmitt "subjected themselves to criminal liability" by executing SOX certifications, Opp. 32, suggests only their strong motivation *not* to make false certifications.

### B.   Defendants Fail to Plead Any Motive to Commit Fraud

The Moving Brief established Plaintiffs' largely generic allegations fell far short of pleading that Maiden's long-serving officers had motive to defraud their shareholders. MTD 26-37. Absent a motive, "the strength of the circumstantial allegations must be correspondingly greater." *In re Bio-Tech. Gen. Corp. Sec. Litig.*, 380 F. Supp. 2d 574, 583 (D.N.J. 2005). But Plaintiffs' scienter allegations are otherwise weak, and so failure to plead motive should dispose of their claims.

The Moving Brief established, with substantial authority, that Raschbaum's and Schmitt's sales of just 16% and 12% of their holdings, and retention of the vast

---

[11] Plaintiffs contend that page 15 of the MTD wrongly argues that scienter requires "actual knowledge." Opp. 28 n.14. Neither page 15, nor any part of the MTD, asserts that scienter cannot be pleaded through recklessness.

majority of their shares, defeats motive. *See* MTD 28-30. In response, Plaintiffs cite only *In re: Valeant Pharmaceuticals International, Inc. Securities Litigation*, 2019 WL 2724075 (D.N.J June 30, 2019). The Court there found that certain funds' sales of 22% of their Valeant holdings supported motive, *id.* at *9—but that 22% comprised ***4.2 million shares*** sold for a profit of ***$925 million***, *see id.*, and it was plausible that defendants held the other 78% because they were "unable to continue selling their shares without being caught." *Id.* at *11. *Valeant is* self-evidently not comparable. And Plaintiffs make no effort to distinguish Defendants' authority on this point. *See* MTD 28-30. Nor do Plaintiffs respond to the fact that the three-month gap between the sales and the first alleged corrective disclosure disposes of motive and scienter. *See* MTD 29-30 (gathering authority that sales two and three months before corrective disclosure do not support motive).

Plaintiffs also demand that the Court ignore Raschbaum's and Schmitt's Form 4s,[12] which provide that their sales related to tax planning. *See* Opp. 34, RJN 8-9 (citing one case, which does not address Form 4s). But courts, including this one, routinely consider Form 4s in deciding to dismiss securities class actions. *See, e.g.,* *In re Synchronoss Techs. Inc. Secs. Litig.*, 2019 WL 2849933, at *17 (D.N.J. July 2, 2019) (Wolfson, C.J.) (considering substantive reasons for sale stated in "several Forms 4 included as exhibits" to motion to dismiss); *Chapman v. Mueller Water*

---

[12] *See* Marino Decl. Exs. G and H.

*Prods., Inc.*, 2020 WL 3100243, at *20 (S.D.N.Y. June 11, 2020) (taking judicial notice of statements in Form 4s indicating reasons for sales). Although, as Plaintiffs note, *In re Bristol-Myers Squibb Securities Litigation*, 312 F. Supp. 2d 549 (S.D.N.Y. 2004), refers to a "consistent pattern of trading," that opinion rejected scienter because the trading was "undertaken primarily to make payments required for the exercise of stock options or to pay taxes" *id.* at 561, which facts were presented to the Court in Forms 4 and 5 attached to defendants' motion. *See id* at 561 and n.6. Regardless, even without the Form 4s, the limited sales, high percentage unsold, and timing of the sales all defeat any notion of motive. *See also* MTD 35-36 (the inference of scienter is highly implausible).

General allegations that a company raised capital during the class period likewise cannot support motive. MTD 33; *see also GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004) (goal of completing transactions is insufficient to plead a strong inference of scienter). The Amended Complaint pleads nothing more than a list of transactions with a short description from the related offering documents as to how Maiden would use the proceeds. *See* AC ¶¶ 192-195; *see also Sapir v. Averback*, 2016 WL 554581, at *13 (D.N.J. Feb. 10, 2016) ("[G]eneralized motivations, such as maintaining a high stock price in order to fund operations, are insufficient to establish scienter.").

12

Plaintiffs' authority is again off the mark.  In *Citiline Holdings., Inc. v. iStar Fin. Inc.*, 701 F. Supp. 506 (S.D.N.Y. 2010), for instance, the complaint alleged that iStar timed a securities offering to become effective just before a "disappointing" earnings release, and pleaded that iStar sought "much needed capital" in late 2007, "when capital raising in the marketplace was extremely unfavorable."  *See iStar* Compl. ¶¶ 138, 140.[13]  The distinct allegations in *iStar* highlight how far short of the mark Plaintiffs' allegations fall.  *See also Russo v. Bruce*, 777 F. Supp. 2d 505, 520 (S.D.N.Y. 2011) ("The bald allegation that defendants committed fraud out of a desire to raise capital" is insufficient for scienter).[14]

### C.    The Non-Fraudulent Inference is the Sole Plausible One

Plaintiffs' assertion that the MTD "propose[s] no competing inference," Opp. 36, ignores MTD Section II.E, titled "The Non-Fraudulent Inference is the Sole

---

[13] *Citiline Hldgs.,* 1:08-cv-03612-RJS (S.D.N.Y.), ECF No. 20 (Feb. 2, 2009).

[14] Plaintiffs' general allegations that Raschbaum and Schmitt were paid more when Maiden performed well, and less when it did not, *see* AC ¶¶ 189-191, are generic motive allegations routinely rejected in securities cases.  *See* MTD 31-33. Plaintiffs' distinguishable authority does not indicate otherwise.  *See Nguyen v. New Link Genetics Corp.,* 297 F. Supp. 3d 472, 498 (S.D.N.Y. 2018) (incentive compensation tied "to a specific goal—enrollment of 722 patients" in a clinical trial was "a specific motive to lie about or manipulate patient enrollment numbers"); *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1092 (N.D. Cal. 2005) (particularized allegations about "combination of" incentive plans tied specifically to price of corporate acquisitions and "budgeted levels of net income and EBITDA" meant "executives had the motive . . . to purchase acquisitions at inflated prices while developing a method of accounting gymnastics to keep EBITDA artificially high.").

Plausible One."   And without authority, Plaintiffs ask the Court to ignore the essentially dispositive impact of Maiden's audit and actuary assessments as "factual argument that is impermissible on a motion to dismiss."  Opp. 37.  But Plaintiffs do not address the cases in the Moving Brief that consider both clean audit opinions and the lack of allegations about adverse audit or actuarial assessments—both of which apply here.  *See* MTD 22-24, 36-37.  *See also Woolgar v. Kingstone Cos.*, 2020 WL 4586792, at *18 ("[A]llegations regarding the Company's loss reserves are undermined by the fact that its independent auditor, as well as its independent actuary, reviewed their accuracy," which the Court learned from the 2017 and 2018 10-Ks); *see also Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp.*, 2013 WL 4405538, at *8 (S.D.N.Y. Aug. 5, 2013) (scienter undercut by clean audit letter).[15]

Plaintiffs also assert that "absence of a restatement is irrelevant" because they "adequately plead[] the elements of securities fraud," Opp. 38, which assumes what it seeks to prove.  In fact, the absence of a restatement is another of many reasons to reject Plaintiffs' scienter allegations.  *See, e.g.*, *Woolgar*, 2020 WL 4586792, at *18 ("[R]eview of Kingstone's financial statements by such independent parties did not result in any restatement, withdrawal, or qualification during the Class Period."); *Lighthouse*, 2013 WL 4405538, at *8 ("Plaintiffs' allegation of scienter regarding

---

[15] Plaintiffs make unpleaded assertions about AmTrust's financials, but offer no facts supporting any issues relating to Maiden's own audits, much less its completely separate, independent actuarial analyses.  *See* Opp. 38 n. 17.

14

RBS's subprime exposure is further undercut by the fact that RBS never restated its holdings."); *see also* MTD 24.

## CONCLUSION

For the foregoing reasons, and for those detailed in the Moving Brief, Defendants respectfully seek an Order dismissing the Amended Complaint in its entirety, with prejudice.

Dated: November 23, 2020

**MARINO, TORTORELLA & BOYLE, P.C.**

By:  */s/ Kevin H. Marino*
　　Kevin H. Marino
　　John D. Tortorella
　　437 Southern Boulevard
　　Chatham, NJ 07928-1488
　　Telephone:  (973) 824-9300
　　Facsimile:   (973) 824-8425
　　kmarino@khmarino.com
　　jtortorella@khmarino.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
　　Michael B. Carlinsky (*pro hac vice*)
　　Rollo Baker (*pro hac vice*)
　　Jacob J. Waldman (*pro hac vice*)
　　Jesse Bernstein (*pro hac vice*)
　　51 Madison Avenue, 22nd Floor
　　New York, NY 10010
　　Telephone:  (212) 849-7000
　　Facsimile:   (212) 849-7100
　　michaelcarlinsky@quinnemanuel.com
　　rollobaker@quinnemanuel.com
　　jacobwaldman@quinneamnuel.com
　　jessebernstein@quinnemanuel.com

15