**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re MAIDEN HOLDINGS, LTD. SECURITIES LITIGATION | ) Master File No. 1:19-cv-05296-RMB-JS )<br>) <u>CLASS ACTION</u> ) |
| This Document Relates To:<br><br>ALL ACTIONS. | ) SUPPLEMENTAL BRIEF IN<br>) OPPOSITION TO DEFENDANTS'<br>) MOTION TO DISMISS ) |

## PLAINTIFFS' THEORY OF LIABILITY

When Defendants made statements about Maiden's loss ratios for the AmTrust business, the Exchange Act imposed a duty on Defendants to disclose material facts required so their opinions did not mislead investors.[1] Defendants violated this duty when they failed to disclose that the estimated loss ratios used for the most recent accident years were substantially lower than actual loss ratios for all prior accident years. Not only did Defendants actually know of the contradictory historical loss data—which they concede—but at the pleading stage, it is at least equally as cogent and compelling as any non-culpable inference that Defendants intentionally or recklessly omitted the historical loss data to avoid having to explain the contradiction between their estimates and the historical loss data.

---

[1] Plaintiffs' Amended Consolidated Complaint for Violation of the Federal Securities Laws (ECF No. 43) (the "Complaint"), ¶¶87-91, 97-98, 100-102, 103-104, 106-107, 109-111, 112, 116-117, 118-119, 120-122, 124-126, 127, 133-135, 136-138, 139-141, 143-145, 146, 150-152, 154-156, 157-159, 162-163, 164. All "¶__" references are to the Complaint.

## ARGUMENT

Affirmative disclosures must not mislead. Even in the absence of statute or rule requiring disclosure, once a company speaks on an issue, omissions of material fact that render the statement misleading are actionable. *In re PTC Therapeutics, Inc. Sec. Litig.*, No. CV161124KMMAH, 2017 WL 3705801, at *14 (D.N.J. Aug. 28, 2017) (citation omitted) (denying motion to dismiss). This applies to opinions. Registrants may not omit material facts about opinions that "conflict with what a reasonable investor would take from the statement itself." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 189 (2015).

Throughout the Class Period, Defendants omitted material, adverse historical loss data contradicting the loss ratios they disclosed. *See, e.g.*, ¶¶87-93. Defendants estimated Maiden's loss ratios in the 50% range for the most recent accident years despite historical claim and actuarial data establishing an average loss ratio of 70% or more for *all* prior accident years of the AmTrust business. ¶¶65-71. Plaintiffs do not allege that Defendants were not allowed to use the lower loss ratios, notwithstanding the adverse historical data. But when Defendants made their statements about the loss ratios, the Exchange Act required them to disclose the material, adverse historical data of which they had actual knowledge and which is identified in the Complaint.

1

By omitting the adverse historical data, Defendants improperly conveyed that Maiden's loss ratios aligned with the historical loss data. *See, e.g.,* ¶51 (Maiden's SEC filings identified "historic loss development as being indicative of future loss development and trends"); 2016 Form 10-K at 63, ECF No. 61-2 at 12 ("historic loss development and trend experience is assumed to be indicative of future loss development and trends").[2] As the Supreme Court made clear in *Omnicare*, 575 U.S., at 188–89, statements of opinion must "fairly align[]" with material information of which a defendant knows or should have known. Accordingly, Defendants' failure to disclose material, adverse historical information prevented investors from being able to accurately assess Maiden's loss ratios. *See In re Eros Int'l Plc Sec. Litig.*, No. CV 19-14125, 2021 WL 1560728, at *8 (D.N.J. Apr. 20, 2021) (finding omissions actionable where "omitted information conflicts with what a reasonable investor would understand the opinions to mean").[3]

---

[2] As set forth in the Complaint, both GAAP and professional standards, too, required Maiden to use historical data as a starting point for loss ratios. ¶84 (GAAP requires basing estimates on "past experience adjusted for current trends, and any other factors that would modify past experience"); *see also* ¶¶72-86. Even if they did not comply with these requirements, however, once Defendants told investors that they included historical losses in estimating future losses, they were duty bound to disclose the historical loss ratios that were significantly worse than the estimated loss ratios Defendants utilized during the Class Period.

[3] Similarly, in *PTC Therapeutics*, the court held that statements about the effectiveness of a drug were misleading because they omitted that the claims of efficacy were based on post-hoc statistical analysis and, thus, created a false impression that clinical trials showed efficacy on a pre-specified basis. 2017 WL 3705801, at *13-14. Here, by assuring investors that historical loss development was

2

Defendants' arguments intentionally confuse methodology with underlying historical data. The Complaint alleges that Defendants' opinions on future losses required them to disclose material contradictory information so as not to mislead investors. While Defendants may have had a basis for their statements reporting loss ratios, the Exchange Act prohibited them from omitting the material, adverse historical data when they made those statements. Without that data, investors could not assess the sufficiency of Maiden's reserves—and ultimately the profitability of the AmTrust book of business.

By identifying Defendants' failure to disclose the adverse historical loss results, which are specifically set forth in the Complaint, when they spoke about Maiden's loss ratios, Plaintiffs have adequately pleaded false and misleading statements. Defendants' concession that they knew the information contradicting their statements[4] is sufficient, itself, to establish a strong inference of scienter. *See GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 239 (3d Cir. 2004) (noting "any required element of scienter is satisfied where . . . the defendant had actual knowledge of the material information") (citation omitted). Second, viewing the

---

a foundation for Maiden's publicly disclosed loss ratios, while failing to disclose historical loss ratios that differed dramatically from their estimates for recent years, Defendants created the false impression that the loss ratios were in line with historical loss data.

[4] *See, e.g.,* Oral Arg. Tr. at 5 ("Are historical data considered? Yes, they are, okay?").

facts holistically, the inference of fraudulent intent is at least equally as cogent and compelling as any non-culpable inference. Omitting the historical loss data alleviated the burden of explaining why it contradicted Maiden's estimated loss ratios. The inference that Defendants chose not to disclose the historical loss data because it contradicted Maiden's reported loss ratios is at least as cogent and compelling as any non-fraudulent inference. Particularly when taken together with the additional allegations of scienter (¶¶186-195)[5], which must be considered holistically[6], Plaintiffs have pleaded a strong inference of scienter.[7]

---

[5] While the Court expressed concern about motive, the "absence of a motive allegation, though relevant, is not dispositive." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011). Moreover, contrary to Defendants' argument, the Complaint does identify how Raschbaum and Schmitt's insider trading was out-of-line with past practices. ¶188 ("Raschbaum and Schmitt did not engage in any insider trading in the 12 months before the Class Period began").

[6] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 324 (2007).

[7] BDO's "clean" audit opinions do not shield Defendants from liability. Maiden dismissed BDO shortly after filing its 2016 10-K. Either BDO was incompetent or unaware. *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 83 (1st Cir. 2002) (reversing dismissal and rejecting the defendants' argument that clean audit opinions and the absence of a restatement precluded scienter because "[t]o hold otherwise would shift to accountants the responsibility that belongs to the courts" and "allow officers and directors of corporations to exercise an unwarranted degree of control over whether they are sued, because they must agree to a restatement of the financial statements"). In any event, BDO audit opinions are a red herring because the Court will decide whether Defendants violated a duty to disclose contradictory information, not whether Maiden's financial statements were materially accurate.

Defendants insist the adverse historical information was immaterial, a mere fact "cutting the other way." Motion at 26. At the pleading stage, however, historical information that contradicts loss ratios by 40-60% is not "so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality." *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 274–75 (3d Cir. 2004); *see also Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 177 (2d Cir. 2020) (reversing dismissal, ruling "omitted contrary facts substantially undermined the conclusion a reasonable investor would reach" from statement of opinion).[8]

Nor do Maiden's 2016 10-K disclosures assist Defendants. Defendants improperly aggregated the 2016 10-K's loss development tables, disabling investors from calculating the true, materially adverse historical data. In any event, that data also materially undrestated the historical loss data the Company eventually disclosed in the 2017 10-K. ¶¶67-68.

Accordingly, the Complaint adequately pleads actionable omissions and scienter, and the Court should deny Defendants' Motion to Dismiss in its entirety.

---

[8] The significant price impact on February 14 and February 28, 2017, when the Company disclosed $52 million in reserve charges for the AmTrust business, part and parcel of the underlying historical data they omitted, suffices to plead the omission's materiality adequately. *See Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000); *see also, SEB Inv. Mgmt. AB*, 351 F. Supp. 3d at 903.

Dated: May 24, 2021

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Laurence M. Rosen*
Laurence M. Rosen

One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: 973/313-1887
973/833-0399 (fax)
lrosen@rosenlegal.com

**THE ROSEN LAW FIRM, P.A.**
DANIEL TYRE-KARP
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
dtyrekarp@rosenlegal.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
TOR GRONBORG
TRIG R. SMITH
ALEXANDER M. MENDOZA
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
torg@rgrdlaw.com
trigs@rgrdlaw.com
amendoza@rgrdlaw.com

**ROBBINS GELLER RUDMAN & DOWD LLP**
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100

6

631/367-1173 (fax)
srudman@rgrdlaw.com

*Co-Lead Counsel for*
*Lead Plaintiffs and the Class*

7

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of May, 2021 a true and correct copy of the foregoing SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ Laurence M. Rosen
Laurence M. Rosen