# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re MAIDEN HOLDINGS, LTD. SECURITIES LITIGATION | ) Master File No. 1:19-cv-05296-CPO-SK ) ) <u>CLASS ACTION</u> |
| This Document Relates To: | ) ) LEAD PLAINTIFFS' APPEAL FROM ) NON-DISPOSITIVE ORDERS OF |
| ALL ACTIONS. | ) MAGISTRATE JUDGE ) ) |

# **TABLE OF CONTENTS**

I.    STATEMENT OF THE DISPUTE.................................................................1

II.   ARGUMENT ..........................................................................................7

 A.  Standard of Review...................................................................7

 B.  The Discovery Limitation Prevents Plaintiffs from Proving Their Case.........8

   1.  Judge King Erred By Disabling Plaintiffs From Proving Falsity .................8

   2.  Judge King Erred By Disabling Plaintiffs From Proving Scienter .............11

III.  CONCLUSION .......................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cardona v. Gen. Motors Corp.*,
942 F. Supp. 968 (D.N.J. 1996) ..................................................................7

*Dome Petroleum Ltd. v. Emps. Mut. Liab. Ins. Co. of Wisconsin*,
131 F.R.D. 63 (D.N.J. 1990) ......................................................................7

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983) .................................................................................15

*Kresefky v. Panasonic Commc'ns & Sys. Co.*,
169 F.R.D. 54 (D.N.J. 1996) ......................................................................7

*Lawson v. Praxair, Inc.*,
2021 WL 1207494 (D.N.J. Mar. 30, 2021)................................................7

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
367 F. Supp. 3d 16 (S.D.N.Y. 2019).......................................................13

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015).................................................................................10

*Pearlstein v. BlackBerry Ltd.*,
No. 13CV07060CMKHP, 2019 WL 1259382 (S.D.N.Y. Mar. 19, 2019) ..........11

*Saylor v. Lindsley*,
456 F.2d 896 (2d Cir. 1972)....................................................................12

*Takeda Pharma. Co., Ltd. v. Norwich Pharma., Inc.*,
Civ. Action No. 20-8966 (SRC), 2021 WL 6091106 (D.N.J. Dec. 23, 2021).......7

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016)....................................................................14

## **Statutes**

28 U.S.C. § 636(b)(1)(A) ....................................................................................................7

## **Rules**

Fed. R. Civ. P. 26(b)(1) ....................................................................................................8

Fed. R. Civ. P. 72 ..............................................................................................................1

L.R. 72.1(c)(1)(A) .............................................................................................................1

Pursuant to Fed. R. Civ. P. 72 and L.R. 72.1(c)(1)(A), Lead Plaintiffs ("Plaintiffs") in this putative class action, by and through their counsel, hereby appeal from a non-dispositive order of Magistrate Judge King and state the following:

## I.     STATEMENT OF THE DISPUTE

This is a putative class action, alleging violations of the anti-fraud provisions of the Securities Exchange Act of 1934.[1] Defendant Maiden Holdings, Ltd. ("Maiden") is a reinsurer whose main cedent is AmTrust. The thrust of the Complaint alleges that Defendants knew of or recklessly disregarded data showing that seasoned incurred losses would be in the range of 70-80% and not the low-mid-50% range, which materially conflicted with the loss reserves Maiden publicly disclosed during the Class Period. ¶¶58, 59, 87. Defendants denied these allegations, "except admit that [they] had access to and considered historical data in estimating loss reserves." Ans. ¶¶ 58, 59, 87.

In Judge Bumb's Opinion, denying, in part, Defendants' Motion to Dismiss, Judge Bumb wrote that the Complaint "boils down to a narrow claim against

---

[1] Plaintiffs filed the Amended Complaint (Dkt. No. 43) on May 1, 2020. Pursuant to the Court's August 6, 2021, Opinion ("Opinion"), denying, in part, Defendants' Motion to Dismiss (Dkt. No. 61), and ordering Plaintiffs to file a trimmed down complaint, Plaintiffs filed a Second Amended Complaint ("Complaint"). Dkt. No. 91. Plaintiffs cite to the Complaint as "¶__." Plaintiffs cite to the Opinion as "Op. __." On September 10, 2021, Defendants filed their Answer to Plaintiffs' Second Amended Complaint ("Answer"). Dkt. No. 100. Plaintiffs cite to the Answer as "Ans., ¶__."

Maiden: The estimated loss reserves used for the most recent accident years were substantially lower than actual historical loss ratios for prior accident years." Op. 14. Judge Bumb's Opinion continued that "To be clear, Plaintiffs do not allege that Defendants were not allowed to use the lower loss ratios. Rather, Plaintiffs pin their entire case on the idea that Defendants should have disclosed the historical AmTrust data, which they claim was 'material' and 'adverse.'" *Id*.

Given the nature of Plaintiffs' claims, Plaintiffs must prove that the factual predicate existed (*e.g.*, that the estimated loss reserves used for the most recent accident years were substantially lower than actual historical loss ratios for prior accident years), and that it rendered the AmTrust loss ratios Maiden disclosed during the Class Period misleading. Plaintiffs must also prove that Defendants knew of or had access to the adverse information that Plaintiffs allege Defendants omitted. If they did, then they are culpable for failing to disclose it.

Judge King's Rulings from which Plaintiffs are appealing, has essentially disabled Plaintiffs from conducting discovery to establish both the factual predicate and Defendants' state of mind, thereby making Judge King's ruling clearly erroneous.

Judge Bumb's enunciation of discovery's parameters in her Opinion confirms this. For example, Judge Bumb made clear that "For now, Plaintiffs have pressed their claims based upon reasonable—barely—inferences, and the Court will allow

2

limited discovery to proceed." Op. 17. The Opinion reiterated the scope of discovery, stating: "***Plaintiffs aver that Defendants fraudulently failed to disclose the historical loss ratios—and that will be the focus of discovery***." *Id*. (emphasis added). Toward that end, Judge Bumb instructed, "[t]he parties shall meet and confer and propose to the Magistrate Judge a limited discovery schedule which deals with ***the sole claim against Maiden:*** was there an intentional decision made by the Defendants to omit AmTrust's historical loss ratio information from the view of investors?" *Id*. 17-18 (emphasis added). Judge Bumb continued, "[i]f the evidence proves that there was not, then the case appears to be what Defendants have claimed, one of hindsight judgment." *Id*. 18.

Notwithstanding Judge Bumb's Opinion, Judge King erroneously limited discovery to whether Defendants considered some or any historical information instead of allowing discovery directly related to the remaining issues in this case.

As Judge Bumb stated, the Complaint does "***not*** allege that Defendants were not allowed to use the lower loss ratios." Op. 5 (emphasis added). But rather, this rests on whether Defendants should have disclosed the historical AmTrust data, which [Plaintiffs] claim was "material" and "adverse." Op. 14. Judge Bumb understood that the "focus of discovery" will be to determine whether "Defendants fraudulently failed to disclose the historical loss ratios" and that the "sole claim" was

3

not whether defendants considered information but whether they acted with requisite state of mind when they withheld it from investors. Op. 17-18.

On September 21, 2021,[2] Judge King convened a discovery conference. Without defining the scope of discovery, Judge King allowed Defendants to dictate what they would produce in response to Plaintiffs' targeted discovery requests. Far from a "fishing expedition," designed to elicit information on all aspects of the Amended Complaint, Plaintiffs' Requests for Production and Interrogatories sought information necessary to prove the factual predicate and Defendants' state of mind when they omitted it.

Rejecting Plaintiffs' narrowly tailored discovery, Judge King accepted Defendants' proposal to produce bottom line actuarial analyses, showing that a Maiden committee considered some historical information. Judge King accepted Defendants' counsel's representation that "the document that we propose to produce and our understanding of them is that they, by their very nature, they are actuarial analysis, which takes into account numerous factors and data in arriving at estimates." 9/21 Tr. 22:15-18. Counsel continued, "[t]hat includes historical data and loss experience of the Amtrust book of business." 9/21 Tr. 22:18-19.

---

[2] The transcript of the September 21, 2021, discovery conference is attached hereto as Exhibit A. Plaintiffs cite to it as "9/21 Tr. __."

4

Defense counsel conceded, however, that the information his clients proposed to produce did not include all of the historical information Plaintiffs required to prove the Complaint's factual predicate. "[T]o be clear," he stated, "it does not include . . . every, you know, every scrap of data, every single item that Maiden ever considered over the course of, you know, several years in putting together these estimates." 9/21 Tr. 22:19-25. With respect to the actuarial analyses and committee meeting minutes, however, counsel concluded, "[a]nd those minutes also will consider, among other factors, historical information and historical data and exhibits that reflect historical information and historical data that are contained in the actuarial analysis." Simply stated, Defendants proposed, and Judge King accepted, that they need initially produce only scant information showing that they considered some historical information.

Even as Judge King improperly limited discovery to what Defendants wanted to produce rather than information related to Plaintiffs' sole claim, Judge King left room for further discovery. She stated, "But the Court will give you an opportunity to follow up after reviewing these initial disclosures, somewhat akin to a Rule 26 disclosure, in a limited capacity, and come back, and then we can probably have a more productive discussion as to what is relevant and why." 9/21 Tr. 20:7-12.

5

Judge King reconvened the discovery conference on December 8, 2021.[3] Notwithstanding Plaintiffs' detailing that Defendants had failed to produce even a full complement of information they had agreed to produce, Judge King ruled that substantively, discovery was closed. Judge King ruled that "the documents ordered and ordered to be produced in Request Number 1A, B and C has been produced." 12/8 Tr. 32:14-16. Plaintiffs, she continued, "receive[d] historical loss ratio information which indicates that AmTrust did consider this information. The plaintiffs' request to receive all the loss ratio goes to second-guessing the conclusions made by . . . AmTrust, which is not what . . . Judge Bumb ordered." 12/8 Tr. 32:17-21. "[T]o that extent," Judge King found, "the discovery produced has been satisfactory to comply with Judge Bumb's . . . authorization of limited discovery information." 12/8 Tr. 32:22-25.

Notwithstanding both Judge Bumb's clearly stating both her understanding of Plaintiffs' claim and the focus of discovery, Judge King erroneously limited discovery to whether Defendants considered some historical loss information. Judge King's Ruling, on its face, prevents Plaintiffs from proving the factual predicate to their claim or from establishing Defendants' state of mind in failing to disclose it. Without this Court's intervention, extending the discovery period and compelling

---

[3] The transcript for the December 8, 2021, Discovery Conference (Dkt. No. 124) is attached hereto as Exhibit B. Plaintiffs cite to the December 9, 2021, transcript as "12/8 Tr. __."

6

production of information related to Plaintiffs' sole claim and Defendants' defenses thereto, this entire discovery process will have been illusory, a meaningless exercise that could never have resolved the issues in the case.

## II.    ARGUMENT

### A.    Standard of Review

This Court may set aside Judge King's Rulings because they are "clearly erroneous" and contrary to Judge Bumb's Order. 28 U.S.C. § 636(b)(1)(A). As discussed below, Judge King abused her discretion, entitling Plaintiffs to modification of those Rulings. *Takeda Pharma. Co., Ltd. v. Norwich Pharma., Inc.*, Civ. Action No. 20-8966 (SRC), 2021 WL 6091106 (D.N.J. Dec. 23, 2021) (citing *Kresefky v. Panasonic Commc'ns & Sys. Co.*, 169 F.R.D. 54, 64 (D.N.J. 1996)). Plaintiffs have the burden to demonstrate that Judge King abused her discretion in the Rulings, which they have done. *Id.* (citing *Cardona v. Gen. Motors Corp.*, 942 F. Supp. 968, 971 (D.N.J. 1996)). Before finding that a magistrate judge's decision was "clearly erroneous" the District Court reviewing the decision must be "'left with the definite and firm conviction that a mistake has been committed.'" *Lawson v. Praxair, Inc.*, 2021 WL 1207494, at *2 (D.N.J. Mar. 30, 2021) (quoting *Dome Petroleum Ltd. v. Emps. Mut. Liab. Ins. Co. of Wisconsin*, 131 F.R.D. 63, 65 (D.N.J. 1990)). Here, Judge King's Rulings are clearly erroneous and should be overruled.

**B.** **The Discovery Limitation Prevents Plaintiffs from Proving Their Case**

The discovery limitation Judge King ordered prevents Plaintiffs from proving either the factual predicate to their claim—did material adverse information exist that contradicted the loss ratios that Maiden disclosed—or whether Defendants acted recklessly or knowingly in failing to disclose that information and is contrary to Judge Bumb's opinion. The discovery Plaintiffs seek is clearly relevant to the elements of securities fraud, and neither Defendants nor Judge King suggest that producing the discovery Plaintiffs seek would be overly burdensome. *See* Fed. R. Civ. P. 26(b)(1).[4]

**1.** **Judge King Erred By Disabling Plaintiffs From Proving Falsity**

Plaintiffs allege that Defendants' class period quarterly and annual filings with the SEC omitted the fact that the estimated loss ratios Maiden used for the most recent accident years were substantially lower than actual loss ratios for all prior accident years and conflicted with the loss estimates on which Defendants based. ¶¶8-9. More specifically, Plaintiffs allege Defendants estimated Maiden's loss ratios in the range of 50% for the most recent accident years, while historical claims and

---

[4] Judge Bumb's reference to a "fishing expedition" (Op. 17) does not render off-limits information related to the sole remaining claim or remove discovery in this case from the purview of the Federal Rules of Civil Procedure. The Opinion neither expresses nor implies that Judge Bumb intended to hobble Plaintiffs' ability to prove their claim in any way whatsoever. The Rules prevent so-called fishing expeditions; they do not prevent the discovery of non-privileged, relevant information.

8

actuarial data established an average loss ratio of between 70% and 80% for the AmTrust business for more seasoned years. ¶¶58, 87, 92. Plaintiffs allege these omissions misled investors because they improperly conveyed that Maiden's loss ratios for the AmTrust business aligned with historical loss data when they did not. ¶9.

Plaintiffs cannot prove the omitted historical loss ratios were material, adverse, and conflicted with the conclusions investors drew from the loss ratios Maiden disclosed without discovering the actual historical loss ratios. Accordingly, Judge King committed clear error by failing to compel Defendants to produce discovery identifying the quarterly historical loss ratios at the times Defendants made the alleged misstatements. Plaintiffs retained two expert consultants to review the documents Defendants produced, and the consultants concluded that the produced documents do not contain the underlying information that would allow them to reconstruct the loss triangles necessary to identify these historical loss ratios. Judge King refused to order Maiden to produce the bordereaux reports Maiden received from AmTrust, which would contain the loss details necessary to reconstruct Maiden's loss triangles. Instead, Defendants produced 250 cession statements from AmTrust that Maiden concedes do not contain "complete loss

9

details by accident year or by line of business"—the information necessary to reconstruct Maiden's historical losses.[5]

Defense counsel concedes the produced documents are insufficient to show the historical loss ratios at issue and argues that Defendants' failure to produce this basic information "doesn't matter" because "that's not what [Judge Bumb] ordered." 12/8 Tr. 16-21. But Judge Bumb's order of limited discovery into Plaintiffs' sole remaining claim undeniably includes discovery into the allegedly omitted information. A plaintiff cannot prove an omission misled investors without showing that the omitted facts "conflict with what a reasonable investor would take from the statement itself." Op. 12 (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 189 (2015)); *see also id*., at 194 ("The investor must identify particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context").

Plaintiffs cannot prove their case without demonstrating the conflict between Defendants' statements and the omitted facts, and Judge King's Rulings preventing Plaintiffs from discovery into the omitted facts disabled Plaintiffs from

---

[5] Letter from Maiden to the SEC, filed September 15, 2017, at 1. Available at https://www.sec.gov/Archives/edgar/data/1412100/000114420417048365/filename1.htm.

demonstrating that conflict. *See, e.g., Pearlstein v. BlackBerry Ltd.,* No. 13CV07060CMKHP, 2019 WL 1259382, at *16 (S.D.N.Y. Mar. 19, 2019) ("*Omnicare* suggests (unsurprisingly) that undisclosed facts that may be material to an investor's understanding of statements in a securities filing but that were allegedly fraudulently omitted from the filing are relevant and discoverable.").

### 2.     Judge King Erred By Disabling Plaintiffs From Proving Scienter

Plaintiffs allege that Defendants had access to, or were aware of, historical claim and actuarial data that indicated the loss ratio for all vintages of earned premiums had historically normalized to a range of 70% to 80% over time. Plaintiffs allege that Defendants deliberately or recklessly omitted the adverse historical loss ratios, which misled investors about Maiden's reserves. ¶¶12, 58.

Judge Bumb explicitly ordered the parties to conduct discovery regarding whether Defendants made a decision to omit the historical loss ratios from the view of investors. Judge King's refusal to allow discovery into any documents directly relevant to this issue is in direct contradiction to Judge Bumb's instructions. Op. 17-18. Defendants have not produced any email communications, whatsoever, concerning Maiden's booking decisions. Nor have Defendants produced

11

communications with Maiden's external actuaries despite Defendants' own repeated assertions that such communications are vital to Plaintiffs' claims.[6]

Instead, Defendants have produced only an incomplete set of committee minutes, exhibits, and presentations. These documents are incomplete for certain quarters during the Class Period and contain a hodge-podge of draft and final versions hand selected by Defendants. Judge King erred by allowing Defendants to withhold all relevant scienter information save for a cherry-picked set of sanitized, self-serving committee minutes. *See, e.g.*, *Saylor v. Lindsley*, 456 F.2d 896, 901 (2d Cir. 1972) (describing meeting minutes as "generally selfserving instruments," in contrast to "the kind of inculpatory correspondence that so often reposes in corporate files"). The produced committee documents do not demonstrate what booking decisions Defendants made for each quarter, much less the decision-making process Defendants used to decide whether to omit the historical loss ratios each quarter.

Judge Bumb ordered limited discovery into Defendants' decision to omit Amtrust's historical loss ratio information. Op. 17-18 Judge King's own

---

[6] *See* Defendants' Motion to Dismiss (Dkt. No. 61-1), at 36 ("the fact that Maiden sought and received verification and certification from external accountants and external actuaries is completely inconsistent with an attempt to conceal facts"); Defendants' Reply Brief (Dkt. No. 69), at 2 ("Plaintiffs' demand that the Court ignore Maiden's clean audit opinions and external actuarial approvals underscores that Plaintiffs recognize the impact of that information on their claims"); *id.*, at 14 (describing Maiden's external actuary's opinion as "essentially dispositive"); Oral Argument Tr. (Dkt. No. 71), at 8:17-21 ("external actuaries reviewed the reserve loss and certified that they made a reasonable provision for the unpaid loss and loss adjustment expense and obligations [] we disclosed").

understanding of the scope of discovery, and the scope of Defendants' expected motion for summary judgment, was "the intentional decision to omit the information, and not whether or not defendants considered the information." 12/8 Tr. 40:21-25. In direct contradiction with Judge Bumb's Order, Judge King's Rulings limited discovery only to documents Defendants unilaterally believe are sufficient to show that they considered historical loss information. *Id.* 23:11-15 ("My reading of Judge Bumb's opinion which asked that she didn't want any hindsight judgment so she is not allowing plaintiff to reevaluate what should have been reported and what should not have been reported, so to the extent if the information was considered, she's satisfied.").

Plaintiffs have never alleged that Defendants failed to "consider" historical loss information, and discovery cannot be limited to Defendants producing documents "sufficient to show" an issue that is non-dispositive to Plaintiffs' claim. Defendants and Judge King appear to be using the "considered" question as a proxy for whether the challenged statements were sincerely held opinions. But, by citing to *Lexmark*, Judge Bumb rejected the idea sincerely holding a belief negates liability for misleading investors. *See Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 32 (S.D.N.Y. 2019) ("opinion statements may also be actionable if '[although] sincerely held and otherwise true as a matter of fact ... the speaker omits information whose omission makes the statement misleading to a

13

reasonable investor'") (quoting *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016)).

Defendants' consideration of the omitted facts, if proven, would not be dispositive

in this action because merely considering information does not alleviate a corporate

officer's duty to disclose information necessary to make her statements complete

and truthful. Indeed, a defendant's decision, after careful consideration, to omit

material adverse information could be evidence of intentional deception rather than

mere negligence.

Moreover, Judge King's Rulings do not even provide Plaintiffs with fulsome

discovery into Defendants' consideration of the omitted historical loss ratios. First,

Judge King's Rulings allowed Defendants to produce only documents they

unilaterally believed are *sufficient to show* consideration rather than ordering

Defendants to produce *all* documents relevant to whether (and how) they considered

historical information. Second, Judge King failed to define *what* information

Defendants needed to have considered. As explained in Section II.B.1, Defendants

failed to produce documents identifying the historical loss information by accident

year for each quarter—much less documents showing Defendants considered such

information. Further, Defendants have refused to identify who—including the

Individual Defendants—had access to or custody of the produced documents,

including the authors of notes and highlighting on the documents. Judge King's

refusal to force Defendants to produce this basic information disabled Plaintiffs from

14

proving each Defendant had knowledge of—or access to—the omitted facts—much less whether each Defendant considered these facts.

Judge King erred by allowing Defendants to produce only a cherry-picked subset of documents relevant to Defendants' non-dispositive defense while preventing Plaintiffs from conducted any discovery into Plaintiffs' actual claim. To abide by Judge Bumb's order (Op. 17-18), the Court should reverse Judge King's Rulings and allow Plaintiffs discovery relevant to each Defendants' decision to omit the historical loss information from investors. This discovery should include email correspondence—which, as candid and contemporaneous, is often the best indicator of scienter. *See, e.g., Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n.30 (1983) ("[P]roof of scienter in fraud cases is often a matter of inference from circumstantial evidence.").

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court (1) reverse Judge King's discovery Rulings as clearly erroneous; and (2) reopen discovery, requiring Defendants to produce all requested information related to Plaintiffs' sole remaining claim.

Dated: December 27, 2021

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ *Laurence M. Rosen*
LAURENCE M. ROSEN
One Gateway Center, Suite 2600
Newark, NJ 07102
Telephone: 973/313-1887
973/833-0399 (fax)
lrosen@rosenlegal.com

**THE ROSEN LAW FIRM, P.A.**
JACOB A. GOLDBERG
DANIEL TYRE-KARP
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
jgoldberg@rosenlegal.com
dtyrekarp@rosenlegal.com

**ROBBINS GELLER RUDMAN
& DOWD LLP**
TOR GRONBORG
TRIG R. SMITH
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
torg@rgrdlaw.com
trigs@rgrdlaw.com

*Co-Lead Counsel*

16

**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY &
AGNELLO, P.C.**
JAMES E. CECCHI
DONALD A. ECKLUND
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Additional Counsel*

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th December 2021 a true and correct copy of the

foregoing PLAINTIFFS' APPEAL FROM NON-DISPOSITIVE ORDERS OF

MAGISTRATE JUDGE was served by CM/ECF to the parties registered to the

Court's CM/ECF system.


/s/ Laurence M. Rosen
Laurence M. Rosen