Kevin H. Marino
John D. Tortorella
**MARINO, TORTORELLA & BOYLE, P.C.**
437 Southern Boulevard
Chatham, NJ 07928-1488
Telephone: (973) 824-9300
Facsimile: (973) 824-8425
kmarino@khmarino.com
jtortorella@khmarino.com

*Attorneys for Defendants*

[Other counsel on signature block]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| In re Maiden Holdings, Ltd. Securities Litigation | Master File No. 1:19-cv-05296-CPO-SAK |
| | <u>CLASS ACTION</u> |
| | ORAL ARGUMENT REQUESTED |
| | MOTION DATE: February 7, 2022 |

---

## DEFENDANTS' OPPOSITION TO LEAD PLAINTIFFS' APPEAL FROM ORDERS ISSUED BY MAGISTRATE JUDGE KING

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...............................................................................1

COUNTER STATEMENT OF THE DISPUTE ......................................................3

    A.    Maiden Provided Reinsurance Services to AmTrust During the
        Relevant Period ...........................................................................................3

    B.    The Alleged Misstatements in the First Amended Complaint..............3

    C.    Defendants' Motion to Dismiss the First Amended Complaint............4

    D.    Judge Bumb Issues the Opinion and Order on the Motion to
        Dismiss the First Amended Complaint .................................................4

    E.    The Parties Agree Upon a Limited Discovery Schedule ......................6

    F.    Consistent With Judge Bumb's Opinion and Order, Judge King
        Limits Discovery .........................................................................................7

        1.    The September 21, 2021 Discovery Dispute Hearing ................7

        2.    The December 8, 2021 Discovery Dispute Hearing ...................9

STANDARD OF REVIEW .....................................................................................10

ARGUMENT ..........................................................................................................12

JUDGE KING'S ORDERS WERE CORRECT  AND SHOULD BE
    AFFIRMED ......................................................................................................12

    A.    Judge King's Interpretation of Judge Bumb's Opinion and
        Order Is Correct........................................................................................12

        1.    Plaintiffs' View of the Scope of Discovery Is
            Inconsistent With Judge Bumb's Opinion and Order...............12

        2.    Judge King's Discovery Rulings Correctly Apply Judge
            Bumb's Opinion and Order.......................................................14

    B.    Defendants' Production of Documents Was Reasonable ...................15

CONCLUSION.......................................................................................................19

i

## TABLE OF AUTHORITIES

**Page**

### Cases

*Druding v. Care Alternatives*,
2018 WL 6573096 (D.N.J. Mar. 22, 2018)..........................................................11

*Ebert v. Twshp. of Hamilton*,
2017 WL 4546269 (D.N.J. Oct. 11, 2017)..........................................................10

*Lindy Bros. Builders v. Am. Radiator & Std. Sanitary Corp.*,
540 F.2d 102 (3d Cir. 1976)...............................................................................11

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
367 F. Supp. 3d 16 (S.D.N.Y. 2019)..................................................................14

*Peterson v. HVM LLC*,
2018 WL 1414143 (D.N.J. Mar. 20, 2018)..........................................................10

*Richards v. Johnson & Johnson*,
2008 WL 544663 (D.N.J. Feb. 26, 2008) ............................................................11

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016)...............................................................................14

*Vanderwerff v. Quincy Bioscience Hldg. Co.*,
2018 WL 6243040 (D.N.J. Nov. 28, 2018) ........................................................11

*Wigglesworth v. Maiden Holdings, Ltd.*,
19-cv-05296-RMB-SAK,
ECF No. 87 (D.N.J. Aug. 6, 2021) ............................................................... passim

*Wigglesworth v. Maiden Holdings, Ltd.*,
19-cv-05296-RMB-SAK,
ECF No. 88 (D.N.J. Aug. 6, 2021) ............................................................... passim

Defendants Maiden Holdings, Ltd. ("Maiden"), Arturo M. Raschbaum, Karen L. Schmitt, and John M. Marshaleck (with Maiden, "Defendants") respectfully submit this memorandum of law in opposition to Lead Plaintiffs' ("Plaintiffs") appeal from certain orders of Magistrate Judge King, and state as follows:

## PRELIMINARY STATEMENT

Following briefing and oral argument on Defendants' motion to dismiss, Judge Bumb concluded that Plaintiffs' Complaint—reduced to its essence—alleged that Defendants falsely claimed to have considered, as part of Maiden's loss-reserve process, historical loss information for Maiden's reinsurance client, AmTrust. Judge Bumb further noted that the Complaint appeared predicated largely on speculation that Defendants would have increased their loss reserves had they considered historical loss information, and thus on Plaintiffs' supposition that Defendants did not consider such loss information in setting their reserves. The Court therefore ordered limited discovery on the question whether Defendants made "an intentional decision . . . to omit AmTrust's historical loss ratio information from the view of investors[.]" Aug. 16, 2021 Opinion, ECF No. 87 ("Opinion" or "Op."), at 18. The Court also made clear, however, that if such limited discovery demonstrated that Maiden <u>had</u> considered historical loss ratio information as part of its reserve analysis, Plaintiffs' claims would fail as a matter of law. *See id.* at 14–15; *see also* Aug. 16, 2021 Order, ECF No. 88 ("Order") (ordering parties to propose a limited

1

schedule "addressing the two limited issues of *historical loss data* and stock sales") (emphasis added).[1]

Under Judge King's supervision, Maiden produced documents sufficient to establish beyond doubt that Maiden considered historical loss experience as one of several factors when estimating the loss reserves it disclosed for its AmTrust business. Despite Judge Bumb's clear direction that the limited discovery she ordered not devolve into a fishing expedition, Plaintiffs—hoping to uncover evidence that would enable them to stave off dismissal—urged Judge King to allow full discovery on all issues raised by the Second Amended Complaint, ECF No. 91 ("SAC"). Judge King declined to do so, correctly finding that Defendants fulfilled their obligation under the District Court's Opinion and Order.

Plaintiffs urge this Court to find that, in adhering to Judge Bumb's mandate that discovery be limited to the question she identified, Judge King abused her discretion. The Court should decline that invitation, affirm the Orders on appeal, and set a briefing schedule for Defendants' renewed motion to dismiss.

---

[1] Discovery relating to stock sales was not disputed and is not here at issue.

## COUNTER STATEMENT OF THE DISPUTE

### A.     Maiden Provided Reinsurance Services to AmTrust During the Relevant Period

During the class period, Maiden provided reinsurance services to, among others, AmTrust, which issued workers' compensation, commercial auto and other lines of insurance.[2]  AmTrust would pay Maiden a certain amount of the premiums AmTrust collected on the policies it issued, and in exchange Maiden would pay losses incurred by the insureds on those policies and pay AmTrust a commission. MTD at 6.  Like all reinsurance providers, Maiden had to set aside certain funds—generally referred to as "loss reserves"—to account for payments Maiden might have to make to AmTrust and its other insurance-company clients for losses those clients might incur on the insurance policies they issued.  *Id.*

### B.     The Alleged Misstatements in the First Amended Complaint

Although the First Amended Complaint, filed May 1, 2020 ("FAC"), was 125-pages long, it reduced to the claim that each of Defendants' loss-reserve related statements was false because "Defendants were estimating loss ratios in the 50% range for the AmTrust business" despite "access to . . . historical claim and actuarial data that indicated . . . loss ratios had normalized to between 70% and 80% over time

---

[2] Memorandum of Law in Support of Motion to Dismiss the Amended Complaint on Behalf of Defendants Maiden Holdings, Ltd., Arturo M. Raschbaum, Karen L. Schmitt, and John M. Marshaleck, Sept. 11, 2020, ECF No. 61-1 ("MTD") at 6.

for the same book of AmTrust net premiums," *see* MTD at 14.  The supposed "truth" about Maiden's loss reserves purportedly emerged when Maiden's reserves were insufficient to pay for losses incurred on certain AmTrust policies Maiden reinsured. *See id.* at 14–16.

## C.    Defendants' Motion to Dismiss the First Amended Complaint

In September 2020, Defendants moved to dismiss the FAC.  Defendants argued, among other things, that well-settled law provides that loss-reserve estimates are opinions, and that Plaintiffs' causes of action were improperly based on disagreements, in hindsight, with the weight Maiden gave to one of many factors— historical loss ratios—involved in estimating loss reserves. *Id.* 18–26.

On May 13, 2021, Judge Bumb held oral argument on Defendants' MTD.  The Court expressed significant concern over the evolving nature of Plaintiffs' claims, noting that "I have seen the shifting sands of the plaintiff's case.  It's not fair to the defendant if the allegations continue to shift."  5/13/21 Hearing Tr. (ECF No. 76) at 47:13–16.  Accordingly, the Court gave Plaintiffs "[ten] days to tell me in three sentences [their] claim," and "then you can give me a five-page brief as to why it states a claim."  *Id.* at 47:21–22; 48:2–3.

## D.    Judge Bumb Issues the Opinion and Order on the Motion to Dismiss the First Amended Complaint

On August 6, 2021, having considered the parties' supplemental submissions, Judge Bumb issued her Opinion.  Judge Bumb criticized Plaintiffs' complaint for

"mash[ing] together instances of changing stock prices, a [GAAP] analysis, updated SEC rule interpretations, snippets from earnings call transcripts, and more, all in an attempt to paint a picture that, in hindsight, is indicative of Defendants' alleged fraud." Op. at 14. She concluded that "Plaintiffs rely upon inferences as well as inferences upon inferences to support their claim." *Id.*

In particular, Judge Bumb addressed Defendants' position that historical loss ratios were, in fact, one factor among many—as stated in Maiden's public filings— that Maiden considered in arriving at its overall loss reserve estimates for its AmTrust book of business:

> Defendants are correct. The problem for Defendants, however, is that this matter is before the Court on a Motion to Dismiss, where no discovery has occurred. Certainly, if the evidence demonstrated that Defendants considered the historical loss ratios as part of their analysis, Defendants' point is well-taken. And the inferences upon inferences constructed by Plaintiffs would likely tumble. It would be difficult to find that the alleged undisclosed data contradicted the statements made by Maiden.

Op. at 15. *See also id.* ("Plaintiffs' theory of the case is thin, by their own admission"); *id.* ("Plaintiffs pile on information throughout the Amended Complaint . . . to add substance to their allegations, but it is much of the same."); *id.* at 17 ("The Court has previously expressed its concern that the towering inferences . . . are shaky at best, and at worst, alleged in bad faith.").

In this context, Judge Bumb permitted "<u>limited discovery</u> to proceed," Op. at 17 (emphasis in original), in order to "prevent this litigation from turning into a securities fishing expedition." *Id.*

Finally, Judge Bumb instructed Plaintiffs to file an amended complaint "that eliminates surplusage;" that "discovery will be limited;" and that the parties should propose a schedule that "deals with the sole claim against Maiden: was there an intentional decision made by the Defendants to omit AmTrust's historical loss ratio information from the view of investors?" *Id.* at 17–18. "If the evidence proves that there was not, then the case appears to be what Defendants have claimed, one of hindsight judgment." *Id.* at 18.

On the same day, Judge Bumb issued the Order, which also directed the parties to "meet and confer and propose a <u>limited discovery schedule</u> to the Magistrate Judge addressing the two <u>limited issues</u> of <u>historical loss data</u> and stock sales, as detailed in the accompanying Opinion." ECF No. 88 (emphasis added).

On August 20, 2021, Plaintiffs filed a Second Amended Complaint ("SAC").

### E.    The Parties Agree Upon a Limited Discovery Schedule

On August 12, 2021, Judge King scheduled a conference to address the "limited discovery schedule ordered by" Judge Bumb. ECF No. 89. On August 23, 2021, the parties proposed a schedule, which Judge King adopted, that required completion of document production in less than two months and any remaining

6

discovery in less than four months.  *See* ECF Nos. 92, 93 ("Limited Discovery Scheduling Order").  The schedule is consistent with the Opinion and Order.

###### F.   Consistent With Judge Bumb's Opinion and Order, Judge King Limits Discovery

###### 1.   The September 21, 2021 Discovery Dispute Hearing

On September 1, 2021, Plaintiffs served their First Request for Production of Documents ("RFPs").  The RFPs demanded, among numerous other things, *every* document and *every* item of data "considered" in estimating loss reserves, including but not limited to ten separately identified categories over a five-year class period.[3]

Defendants proposed a reasonable compromise: production of (i) Maiden's internal, quarterly actuarial work and related exhibits—*i.e.* the heart of Maiden's loss-reserve analysis; (ii) meeting minutes of the committees that evaluated these analyses to determine quarterly loss reserves, which meetings were attended by, among others, Maiden's CEO, CFO, and Chief Actuary; and (iii) "cession statements," which are periodic statements from AmTrust concerning premiums, losses, and expenses under the AmTrust policies (which Plaintiffs expressly requested in their RFPs).[4]

At the September 21, 2021 hearing, consistent with Judge Bumb's Opinion, Judge King framed the problems with Plaintiffs' expansive discovery demands:

---

[3] *See* ECF No. 101 (Defs.' Sept. 10, 2021 Letter to Judge King) at 2–3.

[4] *See id.* at 2.

> [I]t's my impression that Judge Bumb was close to granting a motion to dismiss . . . .  But it seems as if we're trying to get into an entire discovery process which was not required by the Court.  And this is not your typical discovery under the rules. I think it is simply for the purpose of determining whether . . . the defendants' motion to dismiss should be granted.

9/21/2021 Hearing Tr. (Plaintiffs' Ex. A) at 36:19–37:3 (emphasis added).  By contrast, Plaintiffs made clear they view Judge Bumb's Opinion as permitting boil-the-ocean discovery into every piece of data Maiden even considered over a five-year period:

> [JUDGE KING]: -- when you ask for Maiden's historical data and loss experience? What are you looking for?
>
> MR. GOLDBERG: Every premium, every -- every data point related to claims and claims expenses called loss adjustment expenses, LAE, Your Honor.  Every single data point with respect to the Amtrust book. We need to be able to reconstruct what the reserve -- what the historical loss ratios were in each year from the time Amtrust began . . . [c]e[]ding business to Maiden. . . . Defendants have effectively disclosed some of this information, but we need every piece of data on which one typically bases an assessment of a loss reserve.

9/21/2021 Hearing Tr. 15:3–17 (emphasis added). Judge King's reasonable view of Plaintiffs' demand for "every piece of data" was that it signaled "the fishing expedition that Judge Bumb did not want us to get into" since it "appears as if the plaintiff is trying to reassess every single claim and nitpick as to, you know, how the results and the loss ratio came about." *Id.* at 36:14–18.  Rejecting that demand, Judge King ordered Defendants to produce the documents they had proposed (and two additional categories), stating that she would "hear back from [Plaintiffs] as to

the information that he received, just didn't cover everything that the Court ordered, or that he still believes he's entitled to."  9/21/2021 Hearing Tr. at 23:25–24:3.

### 2.    The December 8, 2021 Discovery Dispute Hearing

On October 6, 2021, Judge King ordered Defendants to produce the documents ordered at the September 21, 2021 hearing; that Plaintiffs review those documents by October 22, 2021; and that Plaintiffs inform the Court, by letter, no later than October 27, 2021, if they believed they needed more discovery.  ECF No. 115.  Defendants made their timely production on October 8, 2021.

On November 22, 2021 (after agreed-upon extensions of time), Plaintiffs filed their letter (the "11/22/21 Letter," ECF No. 121).  Contrary to Judge King's instructions, Plaintiffs' letter requested no specific relief (beyond seeking one type of document), instead claiming Plaintiffs would, at an unspecified date, move to compel production of unspecified documents.  *Id.* at 4.

Judge King opened the December 8, 2021 hearing by highlighting Plaintiffs' deficient submission and noting her expectation that "items specifically identified in the document production request . . . would have been addressed."  12/8/21 Hearing Tr. (Plaintiffs' Ex. B) at 5:19–20.  Plaintiffs argued that Defendants had failed to produce documents that "identify the historical loss ratios that are at the heart of the allegations," *id.* at 17:2–4, but in response to Judge King's question as to whether "historical loss ratio documents" were provided, Plaintiffs conceded "I agree they

9

provided some." *Id.* at 17:17–21; *see also* 9/21/2021 Hearing Tr. 15:14–15 ("Defendants have effectively disclosed some of this information . . . .").

After a lengthy argument, Judge King was satisfied that Defendants had made a sufficient document production, particularly given Plaintiffs' concession. *See* 12/8/21 Tr. at 32:14–18. Judge King explained that Plaintiffs' demand for "all the loss ratio [information] goes to second-guessing . . . which is not what [] Judge Bumb ordered. So to that extent, I find that the discovery produced has been satisfactory to comply with Judge Bumb's . . . authorization of limited discovery information." *Id.* at 32:19–25. Judge King also rejected Plaintiffs' generalized request to produce emails as "tak[ing] us further into the fishing expedition," *id.* at 39:10, and concluded that she is "satisfied for purposes of Judge Bumb's order that the information that she thought may be relevant to plaintiffs' supplement in their pleadings on the motion to dismiss has been provided." *Id.* at 39:14–17.

## STANDARD OF REVIEW

Where, as here, an "appeal seeks review of a matter within the core competence of the Magistrate Judge, such as a discovery dispute, the ruling is entitled to great deference and is reversible only for abuse of discretion." *Ebert v. Twshp. of Hamilton*, 2017 WL 4546269, at *2 (D.N.J. Oct. 11, 2017) (quotations omitted); *see also Peterson v. HVM LLC*, 2018 WL 1414143, at *1 (D.N.J. Mar. 20, 2018) (same). This "deferential standard of review is particularly appropriate" here

10

because Judge King has "managed the case from the outset, and thus has a thorough knowledge of the proceedings." *Vanderwerff v. Quincy Bioscience Hldg. Co.*, 2018 WL 6243040, at *2 (D.N.J. Nov. 28, 2018) (quotation omitted).

The "abuse of discretion" standard is an exceedingly high bar. Such a finding is warranted only where "'the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court. If reasonable [people] could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.'" *Richards v. Johnson & Johnson*, 2008 WL 544663, at *2 (D.N.J. Feb. 26, 2008) (quoting *Lindy Bros. Builders v. Am. Radiator & Std. Sanitary Corp.*, 540 F.2d 102, 115 (3d Cir. 1976)). Indeed, where, as here, the Magistrate has made "well-considered discovery ruling[s]," this Court "should not undertake a *de novo* analysis of what has already been briefed, argued, and adjudicated fairly and carefully." *Druding v. Care Alternatives*, 2018 WL 6573096, at *3 (D.N.J. Mar. 22, 2018).

11

## ARGUMENT

### JUDGE KING'S ORDERS WERE CORRECT
### AND SHOULD BE AFFIRMED

**A.    Judge King's Interpretation of Judge Bumb's Opinion and Order Is Correct**

Far from constituting an abuse of discretion, Judge King's interpretation of Judge Bumb's Opinion and Order—which Judge King had the opportunity to form during months of correspondence and hearings—is correct.

**1.    Plaintiffs' View of the Scope of Discovery Is Inconsistent With Judge Bumb's Opinion and Order**

Plaintiffs' view is that Judge King was required to order discovery sufficient for Plaintiffs to prove "the factual predicate to their claim" and "whether Defendants acted recklessly or knowingly." App. at 8.  To justify this demand, Plaintiffs point to Judge Bumb's statement in the Opinion that "Plaintiffs pin their entire case on the idea that Defendants should have disclosed the historical AmTrust data, which they claim was 'material' and 'adverse.'"  App. at 2 (quoting Op. at 14).  It follows, according to Plaintiffs, that they are entitled to any and all discovery from Defendants necessary to establish that "sole" claim.  Therefore, in Plaintiffs' view, the only limitation Judge Bumb imposed in expressly requiring "limited discovery," Op. 17, and Ordering a "limited discovery schedule . . . addressing the two limited issues of historical loss data and stock sales," Order at 1, was quite literally anything relevant to proving Plaintiffs' "sole" claim.

12

As Plaintiffs state, however, that "sole" claim consists of the elements of falsity and scienter in support of their causes of action arising under Sections 10(b) and 20(a) of the 1934 Securities Exchange Act for various alleged misstatements over a five-year class period. *See, e.g.*, App. at 2 ("Judge King's Rulings . . . essentially disabled Plaintiffs from conducting discovery to establish both the factual predicate and Defendants' state of mind."). In other words, Plaintiffs' "sole" claim is their entire SAC. Neither the Opinion nor the Order anywhere provides for the broad discovery Plaintiffs demand. Indeed, "[d]iscovery relevant to a party's sole claim" is the type of discovery to which a party might be entitled in an ordinary case. But limited discovery—particularly, as here, discovery limited to a narrow and clearly stated question—is nothing of the sort.

Plaintiffs' Proposed Order, ECF No. 125-3, makes clear that Plaintiffs' position is completely inconsistent with Judge Bumb's Opinion and Order. The Proposed Order would require Defendants to "produce all requested information relevant to Plaintiffs' sole remaining claim." *Id.* This language appears nowhere in Judge Bumb's Opinion or Order, and also completely disregards her call for "<u>limited discovery</u>," Op. 17, on a "limited discovery schedule" to address "two limited issues." Order at 1. Plaintiffs demand for *every document*—among others, every e-mail, every bit of massive amounts of data, and all internal and external actuarial and financial analysis—is no limit at all.

13

### 2. Judge King's Discovery Rulings Correctly Apply Judge Bumb's Opinion and Order

In light of the Opinion and Order, Judge King appropriately concluded that Judge Bumb "was close to granting a motion to dismiss," and did not order "your typical discovery under the rules," but instead ordered limited discovery "simply for the purpose of determining whether . . . the defendants' motion to dismiss should be granted." 9/21/2021 Tr. 36:19–37:3. Plaintiffs are correct that Judge Bumb's Opinion frames one of the issues as whether there was "an intentional decision made by the Defendants to omit AmTrust's historical loss ratio information from the view of investors[]." Op. 17–18. But Judge Bumb explained with equal clarity that "if the evidence demonstrated that defendants considered the historical loss ratios as part of their analysis," the Opinion's narrow question would be answered in the negative. *See* Op. 15;[5] *see also* Order at 1 (expressly limiting discovery to "historical loss data").

---

[5] Plaintiffs speculate that "Defendants and Judge King appear to be using the 'considered' question as a proxy for whether the challenged statements were sincerely held opinions," but that Judge Bumb's citation to *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16 (S.D.N.Y. 2019), at the end of that passage means she "rejected the idea [that] sincerely holding a belief negates liability for misleading investors." App. at 13. Judge Bumb said nothing of the sort. Further, the passage from *Lexmark* to which she actually cited explains that "[r]easonable investors understand that opinions sometimes rest on a weighing of competing facts, and ... do[ ] not expect that every fact known to an issuer supports its opinion statement." *Id.* at 32–33 (quoting *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016).

As elaborated at the 12/8/21 Hearing, that is precisely what the evidence revealed. *See id.* at 14-16 (describing historical information contained in Defendants' document production). Judge King therefore determined that the discovery Maiden produced was sufficient to show that Maiden did in fact evaluate historical loss information as part of its overall loss reserve calculations—just as it represented to investors. *See* 12/8/21 Hearing Tr. at 32; *see also* Op. at 14. It follows that Plaintiffs' case is built on hindsight quibbling with *how* Maiden went about considering such information, *see* Op. at 18, which cannot support securities fraud. Indeed, given Plaintiffs' concession that Defendants produced historical loss ratio information, Judge King's holding merely determined—consistent with Judge Bumb's discovery protocol—that Plaintiffs were entitled to *less* information than they would like to have received. At most, reasonable minds could differ on what limits Judge King should have imposed upon discovery; but there can be no question she acted within her discretion in imposing those limits.

## B.    Defendants' Production of Documents Was Reasonable

Plaintiffs repeatedly disparage Defendants' document production as both insufficient and incomplete. Neither assertion is correct.

Defendants produced: (i) the actuarial analysis prepared by Maiden's Chief Actuary in connection with Maiden's loss-reserve estimates; (ii) available committee minutes reflecting review of that analysis by upper management to

15

estimate loss reserves; (iii) "cession statements," which Plaintiffs expressly requested in RFP 1(e); (iv) policies concerning Maiden's reserving processes; and (v) Maiden's limited outsourced actuarial analysis.  These include dozens of pages of meeting minutes, spreadsheets containing dozens of worksheets and thousands of lines of detailed data, and hundreds of data statements received directly from AmTrust.  Notably, the actuarial analysis, as discussed at the December 8, 2021 hearing, includes, for instance, historical loss data going back to 2007—years before the beginning of the class period—and includes spreadsheet columns with loss ratios calculated using various approaches to historical data. 12/8/21 Hearing Tr. at 14-16.

Judge King correctly concluded that this production satisfied the purposes for which Judge Bumb permitted limited discovery.  First, it included substantial historical loss ratio data, as Plaintiffs conceded.  *See* 12/8/21 Hearing Tr. at 17; *see also* App. 14 ("Judge King's Rulings do not even provide Plaintiffs with *fulsome* discovery into Defendants' consideration of the omitted historical loss ratios.") (emphasis added).  Plaintiffs argue the data are insufficient to "reconstruct the loss triangles necessary to identify these historical loss ratios," App. at 9, but neither Judge Bumb's Opinion nor her Order requires Defendants to produce discovery sufficient to provide that information.  Judge King, in her broad discretion, determined that Defendants' production of historical data was sufficient to satisfy the Opinion and Order.

16

Second, contrary to their assertions, Plaintiffs have had discovery into "whether Defendants made a decision to omit the historical loss ratios from the view of investors." App. 11. Defendants produced available meeting minutes reflecting in-depth discussions that included the individual defendants and addressed Maiden's quarterly actuarial analysis, historical data and other information about Maiden's individual AmTrust business lines, and Maiden's quarterly reserving decisions. *See* 12/8/21 Hearing Tr. at 14–16. Even with access to documents concerning the process at the center of Plaintiffs' claim, they have never identified for the Court any evidence of wrongdoing. Plaintiffs' experts have also had ample opportunity to review this information. *See* App. 9. Plaintiffs' inability to establish wrongdoing through the limited discovery called for by Judge Bumb is not a reason for *more* discovery. It is a reason to confirm that Plaintiffs action should now be dismissed.

Furthermore, in an appropriate exercise of discretion, Judge King declined to order an additional, invasive, and expensive foray into Defendants' e-mails. Plaintiffs' sole justification for demanding such discovery is that it is "candid and contemporaneous" and therefore "often the best indicator of scienter." App. 15. Plaintiffs' reasoning confirms their desire for precisely what Judge Bumb forbade: a fishing expedition. Despite reviewing thousands of pages of discovery into

17

Maiden's loss reserve processes, Plaintiffs could offer Judge King nothing specific to believe that further discovery would uncover wrongdoing.[6]

Finally, Plaintiffs' disparagement of Defendants' document production has no bearing on whether Judge King providently exercised her discretion in limiting discovery.  Notably, Plaintiffs continue to assert that the committee minutes are "incomplete," ignoring Defendants' December 3, 2021 letter to the Court, ECF No. 122, which explains that Defendants produced the minutes they understand to exist, and have not withheld any minutes that could be located. *Id.* at 3.  Plaintiffs therefore have no support for their assertion of a "cherry-picked set of sanitized, self-serving committee minutes."  App. at 12.  As to incomplete "exhibits" and "presentations," Defendants have produced documents that constitute the actuarial analysis presented to the committees. Plaintiffs' disparagement of Defendants' production is a makeweight argument that evidences the weakness of their appeal.

---

[6] Plaintiffs claim that Defendants "refused to identify who—including the individual Defendants—had access to or custody of the produced documents."  App. 14.  As Judge King noted, however, the minutes of committee meetings—at which Maiden's management, *including the individual defendants*, considered Maiden's actuarial analysis—*listed the meeting participants*.  The Appeal fails to clarify what other information Plaintiffs could need to satisfy Judge Bumb's Opinion.

18

## CONCLUSION

Judge King correctly applied Judge Bumb's Opinion and ordered reasonably limited discovery. The ruling on appeal should therefore be affirmed.

Dated: January 24, 2022        **MARINO, TORTORELLA & BOYLE, P.C.**

By: _____

      Kevin H. Marino
      John D. Tortorella
      437 Southern Boulevard
      Chatham, NJ 07928-1488
      Telephone:  (973) 824-9300
      Facsimile:   (973) 824-8425
      kmarino@khmarino.com
      jtortorella@khmarino.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
      Michael B. Carlinsky (*pro hac vice*)
      Rollo Baker (*pro hac vice*)
      Jacob J. Waldman (*pro hac vice*)
      Jesse Bernstein (*pro hac vice*)
      51 Madison Avenue, 22nd Floor
      New York, NY 10010
      Telephone:  (212) 849-7000
      Facsimile:   (212) 849-7100
      michaelcarlinsky@quinnemanuel.com
      rollobaker@quinnemanuel.com
      jacobwaldman@quinneamnuel.com
      jessebernstein@quinnemanuel.com