
# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

MICHAEL WIGGLESWORTH, et al.,

      *Plaintiffs*,

v.

MAIDEN HOLDINGS, LTD. et al.,

      *Defendants*.

No. 1:19-cv-05296

OPINION

**APPEARANCES:**

James E. Cecchi
Donald A. Ecklund
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
Roseland, NJ 07068

Laurence M. Rosen
Jing Chen
THE ROSEN LAW FIRM, P.A.
Newark, NJ 07102

    *On behalf of Movants Taishin International Bank Co., Ltd. & Boilermaker-Blacksmith National Pension Trust*

James E. Cecchi
(See above for affiliation and information)

    *On behalf of Plaintiff Michael Wigglesworth*

Mark M. Makhail
MCCARTER & ENGLISH, LLP
Newark, NJ 07102

    *On behalf of Movant Boilermaker-Blacksmith National Pension Trust*

Jonathan David Lindenfeld
Steve Owen,
FEGAN SCOTT LLC
New York, NY 10016

    *On behalf of Movants Steve Owen, Dennis R. Johnson, & Julio Queliz*

Jonathan David Lindenfeld
(See above for affiliation and information)

    *On behalf of Plaintiff John Dougan*

Lisa J. Rodriguez
DILWORTH PAXSON LLP
Cherry Hill, NJ 08002

    *On behalf of Movant John W. Kelly*

Kevin Harry Marino
John D. Tortorella
MARINO, TORTORELLA & BOYLE, PC
Chatham, NJ

    *On behalf of Defendants Maiden Holdings, Ltd., Arturo M. Raschbaum, Karen L. Schmitt, & John M. Marshaleck*

**O'HEARN, District Judge.**

This matter comes before the Court on a Motion to Dismiss, or in the Alternative, for Summary Judgment ("Defendants' Motion") filed by Defendants Maiden Holdings, Ltd. ("Maiden"), Arturo M. Raschbaum, Karen L. Schmitt, and John M. Marshaleck (the "Executive Defendants" and together with Maiden, the "Defendants"), (ECF No. 145), and upon a Motion to Strike Extrinsic Evidence or in the Alternative Defer or Deny Defendants' Motion Without Prejudice ("Lead Plaintiffs' Motion") filed by Plaintiffs Boilermaker-Blacksmith National Pension Trust and Taishin International Bank Co. Ltd. (together, the "Lead Plaintiffs"). (ECF No. 152). For the reasons that follow, Lead Plaintiffs' Motion is **DENIED**, and Defendants' Motion is **GRANTED** as to summary judgment.

I.   BACKGROUND

In 2007, Maiden entered into an agreement to provide reinsurance services to insurance provider AmTrust Financial Services, Inc. (Defs.' Local Rule 56.1 Statement of Material Undisputed Facts, ECF No. 149, ¶ 1; Pl.'s Local Rule 56.1 Statement of Material Undisputed Facts, ECF No. 154-1, ¶ 1). Through this arrangement, when AmTrust paid out claims to its insured clients, AmTrust made corresponding claims to Maiden under the reinsurance policy. (ECF No. 149, ¶ 2–3; ECF No. 154-1, ¶ 1). AmTrust compensated Maiden for reinsurance services by ceding to Maiden a percentage of the policy payments it received from its own insurance clients. (ECF No. 149, ¶ 3; ECF No. 154-1, ¶ 1).

In furtherance of this business, actuarial analyses were prepared to assist Maiden in estimating the amount and value of claims that AmTrust might make under Maiden's reinsurance policies, as well as how much cash Maiden should set aside in loss reserves to pay those claims. (ECF No. 149, ¶ 4–6; ECF No. 154-1, ¶ 6; Pl.'s Responsive Statement to Defs.' Local Rule 56.1

2

Statement of Material Undisputed Facts, ECF No. 154-2, ¶ 4–6). During the process of estimating loss reserves, Defendants had access to historical loss ratios for relevant accident years.[1] (ECF No. 149, ¶ 5; ECF No. 154-2, ¶ 5).

Maiden set loss reserves for certain accident years by estimating loss ratios in the 50% to 60% range, while historical loss ratios for other accident years fell between 70% and 80%. (ECF No. 152-1, ¶ 7; ECF No. 162, ¶ 7). For example, by the end of 2016, Maiden's actual loss ratios for each accident year from 2008 through 2012 had developed to over 70%. (ECF No. 154-1, ¶ 18; ECF No. 162, ¶ 18). At that time, Maiden estimated loss ratios averaging 56.3% for accident years 2015 and 2016. (ECF No. 154-2, ¶ 19; ECF No. 162, ¶ 19). Between and including February 2014 and November 2018 (the "Class Period"), Defendants made multiple statements that mentioned the company's loss reserves and financial performance, among other details of the company's business, but did not disclose that, for years 2008–2012, actual loss ratios exceeded 70%. (ECF No. 154-1, ¶ 22–63; ECF No. 162, ¶ 22–63). Executive Defendants each made several sales of Maiden stock during the Class Period. (ECF No. 154-1, ¶ 64–71; ECF No. 162, ¶ 64–71).

## II.     PROCEDURAL HISTORY

Plaintiff Michael Wigglesworth commenced this action on February 11, 2019, bringing claims against all Defendants for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, as well as control person liability under Section 20(a) of the Securities Exchange Act. (Compl., ECF No. 1, ¶¶ 109, 114). The Court appointed Boilermaker-Blacksmith and Taishin as Lead Plaintiffs on February 19, 2020. (Stip. & Order Consolidating Related Actions, Appointing Co-Lead Pls., & Approving Co-Lead Counsel,

---

[1] The phrase "loss ratio" refers to the percentage of ceded premiums that Maiden might have to pay out as reinsurance claims to AmTrust. An "accident year" is the year in which an insured loss occurs; for example, if an insured party filed a worker's compensation claim for an incident that occurred in 2010, the "accident year" for that claim is 2010, even though AmTrust might ultimately pay that claim in 2015.

ECF No. 35).

Plaintiffs first amended their Complaint on May 1, 2020. (Am. Compl., ECF No. 43). Defendants moved to dismiss the First Amended Complaint on September 11, 2020. (Def. Mot. to Dismiss, ECF No. 61). In a Decision issued August 6, 2021 (the "August 2021 Order"), (Opinion, ECF No. 87; Order, ECF No. 88), the Court denied the Motion to Dismiss in part and granted it in part, allowing limited discovery, and ordering Plaintiffs to further amend their Complaint. Plaintiffs thereafter filed their Second Amended Complaint on August 20, 2021. (ECF No. 91). And Defendants answered on September 10, 2021. (ECF No. 100).[2]

Following the August 2021 Order, the parties engaged in a lengthy dispute over the scope of discovery. (Letter, ECF No. 99; Letter, ECF No. 101; Letter, ECF No. 105; Letter, ECF No. 106.). Discovery dispute hearings were held before the Magistrate Judge on September 21, 2021, (ECF No. 109), and December 8, 2021. (ECF No. 123). Plaintiffs sought additional discovery prior to the December 8, 2021, discovery dispute hearing, (ECF No. 121), and Defendants opposed that request. (ECF No. 122). During the December 8, 2021, hearing, Magistrate Judge King denied Plaintiffs' request for further discovery and held that discovery had been "satisfactory to comply with [the August 2021 Order's] . . . authorization of limited discovery." (Tr. of Disc. Dispute Hr'g, ECF No. 124, at 32:22–25). Lead Plaintiffs appealed the Magistrate Judge's decision, (ECF No. 125), and this Court denied the appeal as untimely. (ECF No. 131). Lead Plaintiffs thereafter moved for reconsideration of that denial, (ECF No. 132), which was denied as well on both substantive and procedural grounds. (ECF No. 138).

Defendants filed the Motion to Dismiss, or in the Alternative, for Summary Judgment now before the Court on May 26, 2023. (ECF No. 145). Lead Plaintiffs filed opposition on July 8, 2023,

---

[2] On November 15, 2021, this case was reassigned to the undersigned. (ECF No. 120).

(ECF No. 154), and Defendants replied on August 11, 2023. (ECF No. 161). On July 7, 2023, Lead Plaintiffs filed the Motion to Strike Extrinsic Evidence or in the Alternative Defer or Deny Defendants' Motion Without Prejudice now before the Court, seeking additional discovery under Rule 56(d). (ECF No. 152). Defendants filed opposition on August 11, 2023, (ECF No. 163), and Lead Plaintiffs replied on September 1, 2023. (ECF No. 164).

### III. LEGAL STANDARDS

#### A. Rule 56(d)[3]

"[A] Court 'is obligated to give a party opposing summary judgment an adequate opportunity to obtain discovery.'" *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (quoting *Dowling v. City of Phila.*, 855 F.2d 136, 139 (3d Cir. 1988)). To that end, Rule 56(d) provides that upon a motion for summary judgment, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "[D]istrict courts usually grant properly filed requests for discovery under Rule 56(d) 'as a matter of course.'" *Shelton v. Bledsoe*, 775 F.3d 554, 568 (quoting *Murphy v. Millennium Radio Grp.*, 650 F.3d 295, 309–10 (3d Cir. 2011)). But courts nevertheless retain discretion over such requests. *See Woloszyn v. Cty. of Lawrence*, 396 F.3d 314, 324 n.6 (3d Cir. 2005) (citing *Bradley v. United States*, 299 F.3d 197, 206 (3d Cir. 2002)).

#### B. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), courts may grant summary judgment when a case presents "no genuine dispute as to any material fact and . . . the movant is entitled to judgment

---

[3] For the reasons articulated in Section IV(B)(1), *infra*, the Court construes Defendants' Motion as a Motion for Summary Judgment and therefore does not set forth the standards governing a Rule 12(b)(6) Motion to Dismiss.

5

as a matter of law." A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there exists no genuine issue of material fact. *Baymont Franchise Sys. v. SB Hosp. Palm Springs, LLC*, No. 19-06954, 2022 WL 2063623, at *3 (D.N.J. June 8, 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

A genuine dispute of material fact exists only when there is sufficient evidence for a reasonable jury to find for the non-moving party. *Young v. United States*, 152 F. Supp. 3d 337, 345 (D.N.J. 2015). When courts consider the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 346.

To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[I]f the nonmovant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249–50); *see Dunkin' Donuts Inc. v. Patel*, 174 F. Supp. 2d 202, 210 (D.N.J. 2001) ("[A] party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations."). However, "[if] reasonable minds could differ as to the import of the evidence," summary judgment is not appropriate. *Anderson*, 477 U.S. at 250–51.

IV. **DISCUSSION**

As articulated in the Opinion accompanying the August 2021 Order, (ECF No. 87), Plaintiffs allege that Defendants' many statements about Maiden's business, combined with "the discrepancy between historical loss ratios and estimated loss reserves, and Defendants' failure to disclose the historical [loss ratio] information, without more, constitutes securities fraud." (ECF No. 87, at 10). Defendants now move to dismiss the Second Amended Complaint, or alternatively

6

for summary judgment on grounds that the limited discovery permitted by the Court's August 2021 Order shows Maiden engaged in a meaningful actuarial process that considered historical loss ratios among numerous other factors, and thus, they are entitled to judgment as a matter of law. For this reason, and because nothing in the record suggests the lower historical loss ratios would overshadow the other factors used to set loss reserves, the Court grants summary judgment.

Lead Plaintiffs separately move to strike extrinsic evidence if the Court construes Defendants' Motion as a motion to dismiss, or alternatively, for additional discovery under Rule 56(d) if the Court construes Defendants' Motion as one for summary judgment. In the latter portion of that Motion, Lead Plaintiffs argue that Defendants have produced insufficient discovery to enable them to present a meaningful opposition to the summary judgment Motion. This Court has already affirmed the Magistrate Judge's decision as to the close of discovery and Lead Plaintiffs cannot relitigate that issue yet again. Thus, Lead Plaintiffs' Motion is denied.

### A. Lead Plaintiffs' Motion to Strike Extrinsic Evidence or in the Alternative Defer or Deny Defendants' Motion Without Prejudice

Lead Plaintiff's Motion, (ECF No. 152), seeking exclusion of extrinsic evidence is denied as moot because the Court considers Defendants' Motion, (ECF No. 145), as a Motion for Summary Judgment and not a Motion to Dismiss.[4] Thus, Lead Plaintiffs' Motion requesting additional discovery pursuant to Rule 56(d) is denied because it constitutes a yet a third attempt to challenge the scope of discovery set forth by the Court in the August 2021 Order as determined by the Magistrate Judge.

District courts have discretion to deny Rule 56(d) motions that duplicate previously litigated requests for additional discovery. *See Horvath v. Keystone Health Plan E., Inc.*, 333 F.3d 450, 458–59 (3d Cir. 2003); *Holt v. Pa.*, 18-02448, 2021 WL 3511104 (M.D. Pa. Aug. 10, 2021).

---

[4] The Court discusses its reasoning for this finding at greater length in Section IV(B)(1) of this Opinion, *infra*.

In *Horvath v. Keystone Health Plan East*, the plaintiff responded to a motion for summary judgment with a request for additional discovery.[5] *Horvath*, 333 F.3d at 459. The district court denied that request and the Third Circuit affirmed because the request "essentially amounted to nothing more than a motion for reconsideration of the District Court's" decision on two prior motions to compel production of the same materials. *Id.* at 458.

Similar circumstances are present here. By the Court's count, Lead Plaintiffs' Motion constitutes a third attempt to re-litigate the scope of discovery set forth in the August 2021 Order. As recited at greater length in this Court's Opinion Denying Lead Plaintiffs' Motion for Reconsideration of the Order Denying Appeal from Non-Dispositive Orders of Magistrate Judge King, (ECF No. 137), the August 2021 Order limited discovery in this case to certain narrow issues in order to avoid a "fishing expedition." (ECF No. 87, at 17). On December 10, 2022, Magistrate Judge King found Defendants' production of documents adequate and denied the further discovery sought by Lead Plaintiffs. (ECF No. 124).This Court has upheld that ruling on procedural and substantive grounds twice. (Order Denying Appeal of Magistrate Judge King's December 8, 2021, Decision, ECF No. 131; Order Denying Plaintiff's Motion for Reconsideration, ECF No. 138). As was the case in *Horvath*, the discovery request here at issue "amount[s] to nothing more than a motion for reconsideration" of these previous denials. *Horvath*, 333 F.3d at 459. Lead Plaintiff's attempt to now avoid summary judgment on grounds that there is insufficient discovery lacks merit

---

[5] The *Horvath* plaintiff moved for additional discovery under Rule 56(f). The language in Rule 56 relevant to requests for additional discovery was moved from Rule 56(f) to Rule 56(d) with the 2010 amendments to Rule 56. *See* Fed. R. Civ. P. 56(d) advisory committee's note to 2010 amendment ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).").

and the Rule 56(d) request is denied.

**B. Defendants' Motion to Dismiss or in the Alternative for Summary Judgment**

1. Dismissal Under Rule 12(b)(6)

The Court finds a renewed Motion to Dismiss is inappropriate at this time and denies that portion of Defendants' Motion. "A Rule 12(b) motion to dismiss a complaint must be filed before any responsive pleading." *United States v. Estate of Elson*, 421 F. Supp. 3d 1, 4 (D.N.J. 2019) (quoting *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)). Defendants have filed an Answer to Plaintiffs' Second Amended Complaint, (ECF No. 100), and this responsive pleading forecloses their opportunity to file a renewed motion to dismiss. The Court instead construes Defendants' Motion as a Motion for Summary Judgment.

2. Summary Judgment Under Rule 56(a)

The Court finds that Defendants are entitled to summary judgment as to Plaintiffs' Section 10b and Rule 10b-5 claims. This finding also entitles Defendants to summary judgment as to Plaintiffs' derivative claims under Section 20(a).

Section 10(b) of the Securities Exchange Act of 1934 prohibits "any manipulative or deceptive device or contrivance" in violation of SEC regulations. 15 U.S.C. § 78j(b). Rule 10b-5, promulgated thereunder, makes it illegal to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b).

This obligation extends to statements of opinion, and "the omission of a fact can make a statement of opinion . . . even if literally accurate, misleading to the ordinary investor" for purposes of the securities laws. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 187 (2015)); *see also City of Warren Police and Fire Ret. Sys. v. Prudential Fin.*, 70 F.

9

4th 668, 685 (3d Cir. 2023) ("Omnicare's framework for evaluating opinion falsity applies to claims under § 10(b) for violations of Rule 10b-5."). This standard does not "allow investors to second-guess inherently subjective and uncertain assessments" nor is it "an invitation to Monday morning quarterback an issuer's opinions." *Omnicare*, 575 U.S. 175, 186. To that end, an Opinion statement is misleading under the securities laws "if it: (i) was not sincerely believed when made; (ii) contains an expressly embedded, untrue factual assertion; or (iii) reasonably implies untrue facts and omits appropriate qualifying language." *Prudential*, 70 F. 4th at 687.

Under the August 2021 Order, the third "falsity-by-omission" prong of this standard provides Plaintiffs' only viable theory for liability. (ECF No. 87, at 17) ("Plaintiffs aver that Defendants fraudulently failed to disclose the historical loss ratios—and that will be the focus of discovery."). Under this scenario, a statement of opinion is misleading if it "omits material facts about the issuer's inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself." *Omnicare,* 575 U.S. at 189. However, "a reasonable investor does not expect that *every* fact known to an issuer supports its opinion statement." *Id.* at 190. And an opinion is "not necessarily misleading when an issuer knows but fails to disclose, some fact" that might weigh against the challenged opinion. *Prudential*, 70 F.4th at 687 (quoting *Omnicare*, 575 U.S. at 189–90). Whether an omission renders an opinion statement misleading "always depends on context." *Omnicare*, 575 U.S. at 190. It is thus "no small task" to prove an opinion false by omission. *Id.* at 194.

Where, as here, a Section 10(b) claim challenges an insurer's representations regarding the adequacy of its reserves, "the stated reserve amount, as a manifestation of actuarial judgment, functions as an opinion" within the meaning of *Omnicare*. *Prudential*, 70 F.4th at 684. The process to set loss reserves is necessarily complex and imprecise. *See Prudential*, 70 F.4th at 684 ("The

setting of reserves reflects an insurer's actuarial judgment, based on a variety of complex assumptions and considerations, of the amount that it must set aside to pay claims by policyholders." (citing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 281 (3d Cir. 1992)); *Delta Holdings v. Nat'l Distillers and Chem. Corp.*, 945 F.2d 1226, 1231 (2d Cir. 1991) ("[I]n the reinsurance industry, history may be an imperfect guide to the future . . . . One cannot, therefore, expect . . . certainty in a balance sheet's statement of loss reserves . . . ."). And for that reason, the omission of any single factor from a disclosure regarding the process used to calculate those reserves is not actionable as a false statement of opinion under the securities laws unless its revelation would "eclipse the balance of the numerous other considerations used to set reserves." *Prudential*, 70 F.4th at 687.

Plaintiffs challenge numerous statements made during the Class Period, all of which to some extent concern Defendants' loss reserves and financial performance. Plaintiffs allege that these statements were misleading because any description of Defendants' financial performance or loss reserves necessarily implied the adequacy of loss reserves, and Defendants for that reason should have disclosed that reserves were set by relying on estimated loss ratios that were lower than historical loss ratios for previous accident years. The Court finds nothing in the record to support this claim.

In *City of Warren Police & Fire Retirement System v. Prudential Financial*, plaintiffs alleged that the identification of loss reserve amounts in the defendant insurer's SEC disclosures constituted false statements of opinion. *Prudential*, 70 F.4th at 684. Specifically, the plaintiff argued that those statements implied the adequacy of the insurer's loss reserves but omitted data indicating that certain insurance policies were incurring greater-than-expected losses that might call for greater reserves. *Id.* The District Court dismissed this claim and the Third Circuit affirmed

11

finding that the plaintiff had not sufficiently alleged that the insurer's statements of opinion were "misleading under the falsity-by-omission scenario described in *Omnicare*." *Id.* at 686.

In reaching that decision, the Third Circuit explained that the omitted losses were, "at most, only one of many factors that [the insurer] considered in setting its reserves." *Id.* at 687. The court explained that an opinion statement like one concerning loss reserves is "not necessarily misleading when an issuer knows, but fails to disclose, some fact cutting the other way." *Id.* at 687 (quoting *Omnicare*, 575 U.S. at 189–90). And, the court dismissed the plaintiff's allegation that the omission of data concerning higher-than-expected losses rendered the insurer's disclosures false by omission because plaintiffs did not allege that this information "would eclipse the balance of the numerous other considerations used to set reserves." *Id.* (citing, *inter alia*, *Omnicare*, 575 U.S. at 190).

The record evidences that, Like defendants in *Prudential*, Maiden engaged in a complex actuarial process to set loss reserves. Defendants provided materials from the Class Period, including minutes from meetings of loss reserve decisionmakers, exhibits prepared for those meetings, internal actuarial work product used in setting reserves, and work product from outside experts that decisionmakers relied upon to set reserves. (Decl. of William Jarman in Supp. of Defs.' Mot. to Dismiss the Second Am. Compl. or in the Alternative, for Summ. J., ECF 147, ¶¶ 5–31 and accompanying exhibits). The Court finds the record indisputably shows Maiden engaged in a complex actuarial process that considered historical losses and that this is not evidence about which "reasonable minds could differ." *Anderson*, 477 U.S. at 250. Plaintiffs' allegation that Maiden did not consider any of this material in setting loss reserves thus constitutes mere "speculation and conclusory allegations" that cannot defeat a motion for summary judgment. *Dunkin' Donuts*, 174 F. Supp. 2d at 210. Plaintiffs challenge whether Maiden engaged in such a

process at all, but Plaintiffs point to no facts to support this challenge and instead rely upon conclusory allegations and speculation.

On the record before the Court, there is also no genuine question of material fact as to whether the revelation of historical loss reserves during the Class Period would have overshadowed the many other factors involved in this actuarial process. Plaintiffs emphasize the importance of the AmTrust reinsurance business to Maiden's operations, the importance of the loss ratio estimates to the calculation of loss reserves, and the importance of loss reserve estimates to Maiden's reinsurance business generally. (*See, e.g.,* Pls.' Opp. to Defs' Renewed Mot. to Dismiss the Second Am. Compl. Or, In the Alternative, for Summ. J., ECF No. 154, at 21). But Plaintiffs point to no evidence, and the Court does not find anything in the record to suggest that the revelation of lower historical loss ratios would totally "eclipse the balance of the numerous other considerations used to set reserves" if revealed to investors. *Prudential*, 70 F.4th at 687. Like the policy loss rates at issue in *Prudential*, the higher historical loss ratios here constitute "only one of many factors that [Defendants] considered in setting . . . reserves." *Prudential*, 70 F.4th at 687. Plaintiffs' backward-looking challenge to Defendants' reserve-setting process appears to be an attempt to "second-guess inherently subjective and uncertain assessments" involved in setting loss reserves. *Omnicare*, 575 U.S. 175, 186.

For that reason, the Court finds there can be no genuine dispute as to whether Defendants' statements regarding loss reserves were false because of their omission of details regarding actual loss ratios in recent years, and thus, Defendants are entitled to judgment as a matter of law regarding Plaintiffs' Section 10(b) and Rule 10b-5 claims.

This conclusion also compels summary judgment as to Plaintiffs' Section 20(a) claims. Section 20(a) of the Securities Exchange Act of 1934 "creates a cause of action against individuals

who exercise control over a 'controlled person,' including a corporation, that has committed a violation of Section 10(b)." *Inst'l Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009). Liability under Section 20(a) is therefore "derivative of an underlying violation of Section 10(b) by the controlled person." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 247 (3d Cir. 2013) (citing *Avaya*, 564 F.3d at 252). Summary judgment of an underlying Section 10(b) claim thus compels summary judgment of derivate claims under Section 20(a). *Id.* ("Inasmuch as there cannot be Section 10(b) liability here, the individual defendants cannot be liable under Section 20(b).") Because the Court grants summary judgment as to Plaintiffs' claim under Section 10(b), it will likewise grant summary judgment with respect to any derivative claims under Section 20(a).

## V.  CONCLUSION

For the foregoing reasons, Lead Plaintiffs' Motion to Strike Extrinsic Evidence or in the Alternative Defer or Deny Defendants' Motion Without Prejudice, (ECF No. 152), is **DENIED** and Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, (ECF No. 145), is **GRANTED** as to summary judgment. An appropriate Order accompanies this Opinion.

*/s/ Christine P. O'Hearn*

**CHRISTINE P. O'HEARN**
**United States District Judge**