THE ROSEN LAW FIRM, P.A.
LAURENCE M. ROSEN
One Gateway Center, Suite 2600
Newark, NJ  07102
Telephone:  973/313-1887
973/833-0399 (fax)
lrosen@rosenlegal.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
TOR GRONBORG
TRIG R. SMITH
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
torg@rgrdlaw.com
trigs@rgrdlaw.com

*Co-Lead Counsel*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re MAIDEN HOLDINGS, LTD. SECURITIES LITIGATION | ) Master File No. 1:19-cv-05296-CPO-SAK |
| | ) <u>CLASS ACTION</u> |
| This Document Relates To: | ) **MEMORANDUM OF LAW IN** |
| ALL ACTIONS. | ) **SUPPORT OF LEAD PLAINTIFFS'** |
| | ) **MOTION FOR CLASS** |
| | ) **CERTIFICATION** |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...............................................................................1

II. THE PROPOSED CLASS REPRESENTATIVES .......................................5

III. THE PROPOSED CLASS SATISFIES THE STANDARDS FOR CLASS CERTIFICATION UNDER RULE 23 .............................................7

A.  The Proposed Class Satisfies the Standards for Class Certification Under Rule 23(a)...............................................................8

1.  The Class Is so Numerous that Joinder Is Impracticable...........8

2.  Common Questions of Law and Fact Exist as to All Class Members........................................................................10

3.  The Claims Are Typical of Those of the Class........................12

4.  The Pension Trust and the Bank Will Fairly and Adequately Protect the Interests of the Class ...........................13

B.  The Proposed Class Satisfies the Standards for Class Certification Under Rule 23(b) ...........................................................17

1.  Common Questions of Law and Fact Predominate .................18

2.  The Proposed Class Is Entitled to a Presumption of Reliance Under Fraud-on-the-Market Theory ........................18

a.  Maiden's NASDAQ and NYSE Listings Are Strong Evidence of Market Efficiency ...........................21

b.  Cammer Factor 1: Weekly Trading Volume .................22

c.  Cammer Factor 2: Analyst and Media Coverage ...........23

d.  Cammer Factor 3: Number of Market Makers and the Potential for Arbitrage .............................................25

e.  Cammer Factor 4: Form S-3 Eligibility........................27

**Page**

   f. *Cammer* Factor 5: Maiden Securities Reacted to New, Company-Specific Information .............................27

   g. *Krogman* Factor 1: Market Capitalization......................29

   h. *Krogman* Factor 2: Bid-Ask Spread .............................30

   i. *Krogman* Factor 3: Float....................................................31

 C. Damages Are Measurable on a Class-Wide Basis ............................32

 D. A Class Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action..................................................35

 E. The Court Should Appoint Plaintiff's Choice of Counsel as Class Counsel Under Rule 23(g)........................................................38

IV. CONCLUSION................................................................................................39

- ii -

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Affiliated Ute Citizens of Utah v. U.S.*,
   406 U.S. 128 (1972)................................................................................42

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
   554 F.3d 342 (3d Cir. 2009) ..................................................................23

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................................25

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)..................................................................14, 25, 26

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988), reaffirmed in *Halliburton Co. v.*
   *Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014)..................................................................12, 26, 27

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) ..................................................................25

*Bing Li v. Aeterna Zentaris, Inc.*,
   324 F.R.D. 331 (D.N.J. 2018) *aff'd sub nom.*,
   *Vizirgianakis v. Aeterna Zentaris, Inc.*,
   775 F. App'x 51 (3d Cir. 2019) ...................................................18, 19, 20, 25

*Cammer v. Bloom*,
   711 F. Supp. 1264 (D.N.J. 1989)...............................................*passim*

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
   310 F.R.D. 69 (S.D.N.Y. 2015)..........................................................35, 36

*Cheney v. Cyberguard Corp.*,
   213 F.R.D. 484 (S.D. Fla. 2003)..............................................................37

*Comcast Corp v. Behrend*,
   569 U.S. 27 (2013)......................................................................39, 40, 41

**Page**

*Cosby v. KPMG, LLP*,
   2020 WL 3548379 (E.D. Tenn. June 29, 2020) ....................................................33

*Dewey* v. *Volkswagen Aktiengesellschaft*,
   681 F.3d 170 (3d Cir. 2012) .................................................................................21

*Grodko v. Cent. Eur. Distrib. Corp.*,
   2012 WL 6595931 (D.N.J. Dec. 17, 2012).............................................................22

*Grubb v. Green Tree Servicing, LLC*,
   2017 WL 3191521 (D.N.J. July 27, 2017) ............................................................39

*Hacker v. Elec. Last Mile Sols. Inc.*,
   722 F. Supp. 3d 480 (D.N.J. 2024)..................................................................32, 33

*In re Am. Realty Cap. Props., Inc. Litig.*,
   No. 15-mc-00040-AKH (S.D.N.Y. Jan. 21, 2020)................................................23

*In re Celgene Corp. Sec. Litig.*,
   2020 WL 8870665 (D.N.J. Nov. 29, 2020) ..........................................................29

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) .................................................................................46

*In re Cendant Corp. Litig.*,
   60 F.Supp.2d 354 (D.N.J. 1999).........................................................................20

*In re Constar Int'l Inc. Sec. Litig.*,
   585 F.3d 774 (3d Cir. 2009) .................................................................................23

*In re DVI Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Pa. 2008),
   *aff'd*, 639 F.3d 623 (3d Cir. 2011)...............................................................*passim*

*In re DVI, Inc. Sec. Litig.*,
   639 F.3d 623 (3d Cir. 2011), *abrogated on other grounds*,
   *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*,
   568 U.S. 455 (2013)..............................................................................................28

**Page**

*In re Lucent Techs., Inc., Sec. Litig.*,
  194 F.R.D. 137 (D.N.J. 2000).................................................................................10

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
  2013 WL 396117 (D.N.J. Jan. 30, 2013).......................................................21, 44

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
  493 F.3d 393 (3d Cir. 2007) ......................................................................................23

*In re Merck & Co., Inc., Vytorin/Zetia Sec. Litig.*,
  2012 WL 4482041 (D.N.J. Sep. 25, 2012) ......................................................29, 30

*In re Nat'l Football League Players Concussion Inj. Litig.*,
  821 F.3d 410 (3d Cir. 2016) .......................................................................................19

*In re NII Holdings, Inc. Sec. Litig.*,
  311 F.R.D. 401 (E.D. Va. 2015).................................................................................37

*In re Novo Nordisk Sec. Litig.*,
  2020 WL 502176 (D.N.J. Jan. 31, 2020).............................................................*passim*

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ........................................................................17, 21

*In re Res. Am. Sec. Litig.*,
  202 F.R.D. 177 (E.D. Pa. 2001)................................................................................33

*In re SanDisk LLC Sec. Litig.*,
  2018 WL 4293336 (N.D. Cal. Sep. 4, 2018) ......................................................41

*In re Schering Plough Corp. ERISA Litig.*,
  589 F.3d 585 (3d Cir. 2009) ........................................................................17, 20

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
  2012 WL 4482032 (D.N.J. Sep. 25, 2012) ........................................20, 21, 31, 33

*In re Tupperware Brands Corp. Sec. Litig.*,
  2020 WL 3259749 (M.D. Fla. May 27, 2020) ................................................23

**Page**

*In re Valeant Pharms. Int.'l, Inc. Sec. Litig.*,
2020 WL 3166456 (D.N.J. June 15, 2020)..........................................................22

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ...............................................................................19

*Inc. Sec. Litig.*,
2020 WL 3166456 (D.N.J. June 15, 2020)..........................................................23

*Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*,
2023 WL 4981716 (D.N.J. Aug. 3, 2023) ...........................................................40

*Institutional Invs. Grp. v. Avaya,* Inc.,
564 F.3d 242 (3d Cir. 2009) ...............................................................................23

*Kline v. First W. Gov't Sec., Inc.*,
1996 WL 153641 (E.D. Pa. Dec. 21, 1995)..........................................................45

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ..............................................................24

*Korrow v. Aaron's Inc.*,
2013 WL 5811496 (D.N.J. July 31, 2013) ..........................................................15

*Krangel v. Golden Rule Res., Ltd.*,
194 F.R.D. 501 (E.D. Pa. 2000)...........................................................................43

*Krogman v. Sterritt*,
202 F.R.D. 467 (N.D. Tex. 2001)..............................................................*passim*

*Leone v. ASP Isotopes Inc.*,
2025 WL 3484821 (S.D.N.Y. Dec. 4, 2025).......................................................38

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) ...............................................................................15

*Martínek v. AmTrust Fin. Servs., Inc.*,
2022 WL 326320 (S.D.N.Y. Feb. 3, 2022) ............................................30, 35, 37

**Page**

*McIntire v. China MediaExpress Holdings, Inc.*,
   38 F. Supp. 3d 415 (S.D.N.Y. 2014) ....................................................38

*Neale v. Volvo Cars of N. Am., LLC*,
   794 F.3d 353 (3d Cir. 2015) ........................................................25, 39, 40

*Nepomuceno v. Midland Credit Mgmt., Inc.*,
   2016 WL 3392299 (D.N.J. June 13, 2016)..........................................21

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) ..................................................................17

*Pace v. Quintanilla*,
   2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .....................................24

*Petrie v. Elec. Game Card, Inc.*,
   308 F.R.D. 336 (C.D. Cal. 2015).........................................................37

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).............................................................................43

*Pope v. Navient Corp.*,
   2021 WL 926611 (D.N.J. Mar. 11, 2021) ....................................*passim*

*Ret. Sys. v. Mavenir, Inc.*,
   2019 WL 3494734 (D. Del. Aug. 1, 2019).........................................46

*Ret. Sys. v. Prudential Fin., Inc.*,
   2015 WL 5097883 (D.N.J. Aug. 31, 2015) .................................*passim*

*Reyes v. Netdeposit*,
   LLC, 802 F.3d 469 (3d Cir. 2015).....................................................39

*Roofer's Pension Fund v. Papa*,
   333 F.R.D. 66 (D.N.J. 2019).......................................................*passim*

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
   2023 WL 1454371 (M.D. Pa. Feb. 1, 2023).......................................16

**Page**

*Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*,
798 F. Supp. 3d 416 (S.D.N.Y. 2025) ......................................................23, 41

*Smith v. Merck & Co., Inc.*,
2019 WL 3281609 (D.N.J. July 19, 2019) ......................................................21

*Smith v. Suprema Specialties, Inc.*,
2007 WL 1217980 (D.N.J. Apr. 23, 2007)......................................................39

*Sowell v. Butcher & Singer, Inc.*,
926 F.2d 289 (3d Cir. 1991) ...........................................................................40

*Susinno v. Work Out World, Inc.*,
333 F.R.D. 354 (D.N.J. 2019)..........................................................................17

*Univ. of P.R. Ret. Sys. v. Lannett Co., Inc.*,
2023 WL 2985120 (3d Cir. Apr. 18, 2023)..........................................14, 40, 41

*Vinh Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014).....................................................24

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
2016 WL 4138613 (E.D. Pa. Aug. 4, 2016) ..........................................29, 35, 39

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017) ..............................................................................35

*Whiteley v. Zynerba Pharms., Inc.*,
2021 WL 4206696 (E.D. Pa. Sep. 16, 2021) ....................................................17

*Willis v. Big Lots, Inc.*,
242 F. Supp. 3d 634 (S.D. Ohio 2017) .............................................................33

*Yang v. Odom*,
392 F.3d 97 (3d Cir. 2004) ..............................................................................10

*Yedlowski v. Roka Bioscience, Inc.*,
2016 WL 6661336 (D.N.J. Nov. 10, 2016) .......................................................23

**Page**

## STATUTES, RULES, AND REGULATIONS

Securities Exchange Act of 1934 ..................................................................................8
    §10(b) ...........................................................................................8 12, 25, 44
    §20(a) ..........................................................................................................8, 25

Rule 10b-5 ..................................................................................................................8, 26

Rule 23 ....................................................................................................................14, 15
    Rule 23(a).........................................................................................*passim*
    Rule 23(a)(1)....................................................................................................15
    Rule 23(a)(1)-(4) .............................................................................................15
    Rule 23(a)(2) ..............................................................................................17, 19
    Rule 23(a)(3) ..............................................................................................19, 20
    Rule 23(a)(4) ...................................................................................................20
    Rule 23(b) ...........................................................................................14, 15, 24
    Rule 23(b)(3)...................................................................................*passim*
    Rule 23(g) ..........................................................................................8, 12, 45, 46
    Rule 23(g)(1)(A)(i)-(iv) ...................................................................................45

17 C.F.R.
    §229.404.............................................................................................................9

C.F.R.
    §239.13.............................................................................................................34

## SECONDARY AUTHORITIES

Andrew Bloomenthal, Understanding Market Makers: Roles, Profits, and Their
    Impact on Liquidity (Aug. 19, 2025),
    https://www.investopedia.com/terms/m/marketmaker.asp ................................32

Lead Plaintiffs Boilermaker-Blacksmith National Pension Trust (the "Pension Trust") and Taishin International Bank Co. Ltd. (the "Bank") (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their Motion for Class Certification and request that, pursuant to Federal Rules of Civil Procedure (the "Rule" or "Rules") 23(a) and (b)(3), the Court certify this case as a class action, appoint the Pension Trust and the Bank as Class Representatives, and appoint The Rosen Law Firm, P.A. and Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Class Counsel pursuant to Rule 23(g).

## I.    INTRODUCTION

This securities action (the "Action") asserts claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder. As alleged in Plaintiffs' Second Amended Complaint for Violations of the Federal Securities Laws (ECF 91)("Complaint"), Defendants misled investors when announcing Maiden Holdings, Ltd.'s ("Maiden" or the "Company") financial results, including loss reserves and loss-ratios, while failing to disclose adverse historical loss data evidencing that those reserves were deficient. As the truth began to emerge, beginning in February 2017 and running through

- 1 -

4918-1462-3887.v3

November 2018, the resulting decline in the price of Maiden's stock and Preference Shares damaged investors.  ¶¶93-110.[1]

The Pension Trust is a large, sophisticated institutional investor with billions of dollars in assets under management that purchased Maiden common stock between February 19, 2014 and November 9, 2018.  ¶21.  The Bank, a reputable commercial banking institution headquartered in Taipei, Taiwan, serves as trustee and nominal owner of client trust accounts that purchased Maiden Preference Shares. ¶22.  The interests of the two proposed class representatives are fully aligned with the Class.

> Plaintiffs seek certification on behalf of a Class consisting of:
>
> All persons or entities who purchased or otherwise acquired Maiden's common stock and/or Maiden's Series A, C, and/or D Preference Shares (collectively "Maiden Securities") between February 19, 2014, and November 9, 2018 (the "Class Period"). Excluded from the Class are (a) Maiden, Arturo M. Raschbaum, Karen L. Schmitt, and John M. Marshaleck (collectively, "Defendants") and their immediate family members,[2] (b) present or former executive officers of Maiden and their immediate family members, (c) AmTrust Financial Services, Inc. and the present or former executive officers and/or directors of AmTrust Financial Services, Inc., including George Karfunkel, Leah Karfunkel, Michael Karfunkel, Barry Zyskind, and their immediate family

---

[1] Plaintiffs cite to the Complaint as "¶_", to Exhibits attached to the Declaration of Laurence M. Rosen filed herewith, as "P.Ex._," to the Expert Report of Zachary Nye, Ph.D., C.F.A. as "Nye Rpt." or "Nye Report," and to Exhibits attached to Nye Rpt. as "Nye Ex._." All emphasis is added and citations are omitted unless otherwise indicated.

[2] For purposes of the Class definition 17 C.F.R. §229.404, Instructions (1)(a)(iii) and (1)(b)(ii) defines "immediate family members."

members, (d) excluded persons' affiliates, subsidiaries, legal representatives, heirs, successors, or assigns, and (e) any entity that any excluded person controlled or in which they had a material ownership interest.

"[T]he Third Circuit has observed that '[c]lass actions are a particularly appropriate and desirable means to resolve claims based on the securities laws, since the effectiveness of the securities laws may depend in large measure on the application of the class action device.'" *Pope v. Navient Corp.*, 2021 WL 926611, at *4 (D.N.J. Mar. 11, 2021) (citing *Yang v. Odom*, 392 F.3d 97, 109 (3d Cir. 2004)); *see also City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, 2015 WL 5097883, at *13 (D.N.J. Aug. 31, 2015) ("Prudential II") ("it is well-settled that the class action is a particularly appropriate vehicle for adjudication of federal securities cases"). Indeed, "private civil actions filed pursuant to the Federal securities laws are important; they provide a most effective weapon in the enforcement" of the securities laws and are a necessary supplement to [Securities and Exchange] Commission action." *In re Lucent Techs., Inc., Sec. Litig.*, 194 F.R.D. 137, 144 (D.N.J. 2000) (cleaned up). This case is no exception.

The requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy – are met. The proposed Class consists of thousands of injured investors who were all similarly injured by Defendants' false and misleading statements during the Class Period. The proposed Class Representatives and proposed Class Counsel are adequate, as the Pension Trust is a large and sophisticated institutional

- 3 -

4918-1462-3887.v3

investor and the Bank is a sophisticated and faithful fiduciary. The Pension Trust and the Bank have actively and zealously represented the interests of the Class to date, including by working through their counsel to investigate thoroughly the facts, submit a detailed amended complaint, and, after years of litigation, a limited discovery process, and an appeal, they successfully defeated Defendants' motion for summary judgment. The Pension Trust and the Bank's selected counsel, Robbins Geller and The Rosen Law Firm, are among the most successful and experienced securities class action law firms in the country and are committed to and capable of vigorously prosecuting and trying this action on behalf of the Class.

In addition, issues of fact and law subject to common proof predominate over any individualized issues because all Class members' claims arise from Defendants' single, unified course of misconduct, including whether Defendants' statements were misleading, whether those misstatements and omissions violated the federal securities laws, whether the omitted or misrepresented facts were material, whether Defendants acted consciously or recklessly, whether the prices of Maiden Securities were artificially inflated and by how much, whether Class members suffered damages as a result of the misconduct and the proper measure of those damages, and whether control-person liability can be established against the Defendants.

Furthermore, as explained in the accompanying Nye Report, the market for each of the Maiden Securities was efficient during the Class Period, such that all

- 4 -

Class members are entitled to the fraud-on-the-market presumption of reliance under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) ("*Basic*"), reaffirmed in *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) ("*Halliburton II*").  Accordingly, the reliance element of the Class's §10(b) claims is also subject to common proof.

Finally, this action satisfies Rule 23(b)(3)'s superiority requirement. Consolidating Class members' claims in this Court will conserve judicial resources and prevent inconsistent rulings, rendering economically feasible the claims of Class members that may be too small to litigate against Maiden.  Moreover, as explained herein and in the Nye Report, all of the Class members were damaged by the same fraudulent conduct and damages in this case can be calculated on a Class-wide basis consistent with Plaintiffs' theory of liability.

For these reasons, as detailed herein, Plaintiffs request that the Court grant their Motion for Class Certification and appoint them as Class Representatives pursuant to Rule 23(a) and (b)(3), and appoint Robbins Geller and The Rosen Law Firm as Class Counsel pursuant to Rule 23(g).

## II.    THE PROPOSED CLASS REPRESENTATIVES

The proposed Class Representatives, the Pension Trust and the Bank, are a large and sophisticated institutional investor and a sophisticated and faithful fiduciary.  The Pension Trust is a collectively bargained and jointly trusteed Labor-Management Trust that provides benefits primarily to union members located in

- 5 -

4918-1462-3887.v3

approximately 100 local lodges of The International Brotherhood of Boilermakers. The Pension Trust was founded in 1960, is headquartered in Kansas City, Missouri, and has over $7.0 billion in assets. The Pension Trust purchased Maiden's common stock during the Class Period and suffered damages as a result of Defendants' unlawful conduct as set forth in its Lead Plaintiff certification. ¶21; *see also* ECF 15-2. Founded in 1992, the Bank is a commercial banking institution headquartered in Taipei, Taiwan. The Bank offers personal banking, micro-enterprises, corporate finance, and corporate trusts. The Bank is the trustee of client trust accounts – nominal owner of the trust property of those accounts – that purchased Maiden Preference Shares during the Class Period and suffered damages as a result of Defendants' unlawful conduct. ¶22; *see also* ECF 27-3.

As Lead Plaintiffs, the Pension Trust and the Bank have expended substantial time and effort in informing themselves about this case, working with counsel to vigorously prosecute this action on behalf of the Class they seek to represent and participating in the litigation, including, with counsel, conducting a thorough investigation of the facts, submitting a highly detailed amended complaint, and, after years of litigation, a limited discovery process, and an appeal, successfully defeating Defendants' motion for summary judgment, and participating in the "full discovery" ordered by the Third Circuit. The Pension Trust and the Bank have been actively monitoring their counsels' efforts, diligently overseeing the litigation and

- 6 -

communicating with counsel.  They are willing and able to continue to do so as Class Representatives.  *See* P.Ex.2, ¶6; P.Ex.3, ¶8.

## III.    THE PROPOSED CLASS SATISFIES THE STANDARDS FOR CLASS CERTIFICATION UNDER RULE 23

Class certification is appropriate where the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied by a preponderance of the evidence. *See Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013); *Univ. of P.R. Ret. Sys. v. Lannett Co., Inc.*, 2023 WL 2985120, at *2 (3d Cir. Apr. 18, 2023). At the class certification stage, a movant is only required to demonstrate that the requirements of Rule 23 are met, not that it will ultimately prevail on the merits. *Amgen*, 568 U.S. at 466. Thus, "[m]erits questions may be considered to the extent – **but only to the extent** – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id*.

Rule 23(a) sets forth four prerequisites for class certification: (1) the class must be so numerous that joinder of all members is impractical ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims of the representative parties must be typical of the claims of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy").  Rule 23(a).

Once a putative class representative has shown that the proposed class meets these four requirements, a court then must determine whether the action can also be

- 7 -

maintained under one of the three subsections of Rule 23(b).  Here, Lead Plaintiff seeks class certification under Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3).

### A. The Proposed Class Satisfies the Standards for Class Certification Under Rule 23(a)

The proposed Class satisfies the numerosity, commonality, typicality, and adequacy prerequisites of Rule 23(a).  *See* Rule 23(a)(1)-(4).

### 1. The Class Is so Numerous that Joinder Is Impracticable

Rule 23(a)(1)'s numerosity requirement is met where the proposed Class is so numerous that joinder of all members is impracticable.  Rule 23(a)(1); *see also Navient Corp.*, 2021 WL 926611, at *6.  Joinder "need not be impossible to satisfy Rule 23," but simply difficult or inconvenient.  *Korrow v. Aaron's Inc.,* 2013 WL 5811496, at *7 (D.N.J. July 31, 2013).  While a party need not precisely enumerate the class members to proceed as a class action, *In re Novo Nordisk Sec. Litig.,* 2020 WL 502176, at *4 (D.N.J. Jan. 31, 2020), the numerosity requirement is generally met where a class is likely to exceed 40 members.  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012).

- 8 -

In this Circuit, it is well established that in securities fraud cases like this, where a publicly-owned and nationally-listed corporation that had a large amount of outstanding and traded shares is involved, joinder is impracticable. *See e.g., Navient Corp.*, 2021 WL 926611, at *6; *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 74 (D.N.J. 2019).    Courts have recognized a presumption that the numerosity requirement is satisfied when, like here, a class action involves a nationally-traded security on The New York Stock Exchange ("NYSE") or The National Association of Securities Dealers Automated Quotations ("NASDAQ"). *See Prudential II,* 2015 WL 5097883, at *8 (numerosity requirement "is readily met in securities cases involving an issuer whose stock trades publicly on the NYSE"); *Navient Corp.,* 2021 WL 926611, at *6 (trading on NASDAQ supports a finding of numerosity).

While the exact number of Class members is currently unknown, the Class far exceeds 40 members.  During the Class Period, Maiden's common stock was actively traded on NASDAQ and the Preference Shares were actively traded on the NYSE.  Nye Rpt., ¶¶13, 20-24, 58-59.  During the Class Period, between 72.6 million and 86.6 million shares of common stock and 18.6 million shares of the Preference Shares were issued and outstanding.  *See* Nye Rpt., ¶¶27, 61. Maiden's outstanding shares, which were actively traded, exceed levels that other courts have found sufficient to show numerosity.  *See e.g., Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 2023 WL 1454371, at *7 (M.D. Pa. Feb. 1, 2023) (seven million

- 9 -

shares in class suffices to establish numerosity); *Whiteley v. Zynerba Pharms., Inc.*, 2021 WL 4206696, at *7 (E.D. Pa. Sep. 16, 2021) (NASDAQ listing and 21 million shares outstanding establishes numerosity); *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 200-01 (E.D. Pa. 2008) ("DVI I"), *aff'd*, 639 F.3d 623 (3d Cir. 2011) ("DVI II") (geographically dispersed investors in stock traded on NYSE and over the counter markets suffices establishes numerosity).

The proposed Class satisfies the numerosity requirement.

### 2. Common Questions of Law and Fact Exist as to All Class Members

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Rule 23(a)(2). The Third Circuit has "set a low threshold" for satisfying commonality requirements. *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 183 (3d Cir. 2001); *see also Susinno v. Work Out World, Inc.*, 333 F.R.D. 354, 359 (D.N.J. 2019) (commonality easily met). Identical claims or facts among class members are unnecessary. *Id.* (citing *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 310 (3d Cir. 1998) ("Prudential I")). One common question of law or fact suffices to establish commonality. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 596 n.10 (3d Cir. 2009) ("Schering ERISA"). "[C]lass members can assert a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are subject to the same harm will suffice." *Novo*, 2020 WL 502176, at *5.

- 10 -

Moreover, securities class actions "often present a paradigmatic common question of law or fact of whether a company omitted material information or made misrepresentations that inflated the price of its stock." *Papa*, 333 F.R.D. at 74-75 (quoting *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 339 (D.N.J. 2018) *aff'd sub nom., Vizirgianakis v. Aeterna Zentaris, Inc.,* 775 F. App'x 51 (3d Cir. 2019)).

Here, Defendants made material misstatements, omitting adverse historical loss reserve and loss-ratio data from the investing public when reporting Maiden's financial results. These misstatements and omissions artificially inflated the price of the Maiden Securities, injuring each member of the Class in the same way. Even though just one would suffice, virtually all of the questions of law or fact in this Action are common to Class members, including:

- Whether Defendants made misstatements or omitted materials information about Maiden's financial results and loss reserves for its AmTrust segment in violation of the federal securities law;

- Whether Defendants knew or were reckless in not knowing that their statements and omissions were false and misleading;

- Whether the prices of Maiden Securities were artificially inflated, and by how much;

- Whether Defendants' misstatements and omissions caused Class members' damages; and

- Whether members of the Class suffered damages as a result of the alleged misconduct, and if so, the proper measure of damages.

- 11 -

Because these questions closely mirror those identified in other cases in which courts have found commonality, Rule 23(a)(2) is satisfied. *See, e.g.*, *Papa*, 333 F.R.D. at 74–75 ("whether a company omitted material information or made misrepresentations that inflated the price of its stock" supports commonality); *Aeterna Zentaris*, 324 F.R.D. at 339 (finding commonality in securities fraud action); *Navient Corp.*, 2021 WL 926611, at *6 (securities actions are replete with common questions of law and fact).

### 3. The Claims Are Typical of Those of the Class

Rule 23(a)(3) requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3). Typicality aligns the Class's and the Class Representatives' interest "so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Nat'l Football League Players Concussion Inj. Litig.*, 821 F.3d 410, 427–28 (3d Cir. 2016).

Typicality and commonality are closely related and often merge. *Aeterna Zentaris*, 324 F.R.D. at 340. Like commonality, typicality is "undemanding" in securities fraud actions, requiring only that "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant." *Papa*, 333 F.R.D. at 75 (citation omitted). But all the putative class members need not share identical claims. *In re Warfarin Sodium Antitrust Litig.*,

- 12 -

4918-1462-3887.v3

391 F.3d 516, 531-32 (3d Cir. 2004); *see also Schering ERISA*, 589 F.3d at 598 ("[c]omplete factual similarity is not required; just enough factual similarity so that maintaining the class action is reasonably economical and the interests of the other class members will be fairly and adequately protected in their absence").

Here, Plaintiffs assert claims typical of the Class. The Complaint alleges that Defendants misrepresented and omitted material facts necessary to make their public statements not misleading.  Defendants' conduct artificially inflated the prices of Maiden Securities.  When the truth was revealed through a series of disclosures, the prices of Maiden Securities fell and all members of the Class who, like Plaintiffs, purchased publicly traded Maiden Securities during the Class Period were damaged.  Therefore, the typicality requirement of Rule 23(a)(3) is met.  *See e.g., Aeterna Zentaris*, 324 F.R.D. at 340; *Novo,* 2020 WL 502176, at *6.[3]

### 4.    The Pension Trust and the Bank Will Fairly and Adequately Protect the Interests of the Class

The adequacy requirement of Rule 23(a)(4) demands that "the representative parties will fairly and adequately protect the interests of the class." Rule 23(a)(4).

---

[3] A purchaser of one security can represent similarly situated purchasers of an issuers other securities. *See e.g., In re Cendant Corp. Litig.*, 60 F.Supp.2d 354, 376 (D.N.J. 1999) (common stock purchaser "may represent purchasers of securities other than common stock," where claims "arise from the same alleged fraud as the claims of the common stock purchasers"); *In re Schering-Plough Corp./ENHANCE Sec. Litig.,* 2012 WL 4482032 at *9-10 (D.N.J. Sep. 25, 2012) ("*Schering ENHANCE*") (same). That Plaintiffs here collectively purchased both common stock and Preference Shares, supports a finding of typicality.

- 13 -

4918-1462-3887.v3

This requirement has two prongs: (i) "the class representatives' interests are not adverse to those of other members of the class"; and (ii) "the class representative is represented by attorneys who are qualified, experienced, and generally able to conduct the litigation." *Schering ENHANCE*, 2012 WL 4482032, at \*6.  Absent a showing of conflicting interests, a representative plaintiff is adequate.  *Novo*, 2020 WL 502176, at \*6 (citing *Prudential I*, 148 F.3d at 312).  Defendants bear the burden of proving inadequacy.  *Smith v. Merck & Co., Inc.,* 2019 WL 3281609, at \*3 (D.N.J. July 19, 2019).  Here, they cannot.

Only a "fundamental" conflict defeats adequacy, such as where a defendant's conduct harms some class members but benefits others.  *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 2013 WL 396117, at \*9 (D.N.J. Jan. 30, 2013) ("Merck II") (quoting *Dewey* v. *Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012)). Here, Plaintiffs interests align with all Class members, necessitating proof of the same core issues of law and fact to prosecute their claims.  There is no conflict between Plaintiffs and the absent Class members, let alone any fundamental conflict.  *See Nepomuceno v. Midland Credit Mgmt., Inc.,* 2016 WL 3392299, at \*5 (D.N.J. June 13, 2016) (finding adequacy where the plaintiff did "not have interests antagonistic to or in conflict with the class").

Moreover, Plaintiffs have already zealously represented the interests of the Class, demonstrating their adequacy.  Since their appointment as Lead Plaintiffs,

- 14 -

they have supervised the litigation and worked with counsel to protect the Class's interests. They have overseen: (1) the filing of an exceptionally detailed Complaint asserting a comprehensive set of claims; (2) the defense of those claims through extensive motion-to-dismiss briefing, motion for summary judgment briefing, and related appellate proceedings; and (3) the dogged pursuit of critical discovery from Defendants and key third parties. Plaintiffs also understand their responsibilities as a fiduciary to the Class and have certified that they will seek to act in the Class's best interests in prosecuting the litigation. *See* P.Ex.2, ¶6; P.Ex.3, ¶8. As they have to date, Plaintiffs will protect the interests of the Class. *See Papa,* 333 F.R.D. at 77; *Novo*, 2020 WL 502176, at *7 (adequacy satisfied where plaintiffs actively participated in similar fashion).

Plaintiffs have also engaged, and the Court appointed, Robbins Geller and The Rosen Law Firm as Lead Counsel in this Action. Robbins Geller is a "proposed class counsel [that] is highly qualified to represent the class." *Prudential II*, 2015 WL 5097883, at *9; *see also Grodko v. Cent. Eur. Distrib. Corp.*, 2012 WL 6595931, at *10 (D.N.J. Dec. 17, 2012) ("Robbins Geller has extensive experience with complex securities litigation and a successful track record."). Robbins Geller possesses extensive experience litigating securities class actions before courts in this Circuit and throughout the country, and it has successfully prosecuted hundreds of securities class actions on behalf of injured investors. *See, e.g., In re Valeant*

- 15 -

4918-1462-3887.v3

*Pharms. Int.'l, Inc. Sec. Litig.*, 2020 WL 3166456 (D.N.J. June 15, 2020); *Novo,* 2020 WL502176, at *6 (finding Robbins Geller qualified as class counsel); Transcript of Proceedings at 55, *In re Am. Realty Cap. Props., Inc. Litig.,* No. 15-mc-00040-AKH(S.D.N.Y. Jan. 21, 2020) (ECF 1316) ("[P]laintiffs' representation is adequate and . . . the role of lead counsel was fulfilled in an extremely fine fashion by [Robbins Geller].   At every juncture, the representations made to me were reliable, the arguments were cogent, and the representation of their client was zealous.").   The firm has also achieved numerous appellate victories for investors, including several important securities decisions in the Third Circuit.  *See, e.g., In re Constar Int'l Inc. Sec. Litig.,* 585 F.3d 774 (3d Cir. 2009); *Alaska Elec. Pension Fund v. Pharmacia Corp.,* 554 F.3d 342 (3d Cir. 2009); *Institutional Invs. Grp. v. Avaya,* Inc., 564 F.3d 242 (3d Cir. 2009); *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.,* 493 F.3d 393 (3d Cir. 2007); *see also* P.Ex.5 (firm resume).

Similarly, The Rosen Law Firm has extensive experience litigating complex actions and has successfully prosecuted securities class actions in courts throughout the country, including many in this District.  *See e.g., Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[The Rosen Law Firm] is highly experienced in the complex field of securities fraud class action litigation"); *In re Tupperware Brands Corp. Sec. Litig.*, 2020 WL 3259749, at *2-3 (M.D. Fla. May 27, 2020) (recognizing that The Rosen Law Firm is "well-credentialed" with

- 16 -

"significant securities litigation experience"); *Pace v. Quintanilla*, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (The Rosen Law Firm "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation"); *see also* P.Ex.4 (firm resume).

Robbins Geller and The Rosen Law Firm have zealously litigated this case, successfully appealing summary judgment for Defendants, engaging in full discovery, and litigating vigorously for over six years against determined and experienced defense counsel.  Lead Counsel are qualified, experienced, and able to prosecute this action.  For those reasons, Plaintiffs are adequate to represent the Class.

### B.    The Proposed Class Satisfies the Standards for Class Certification Under Rule 23(b)

In addition to meeting Rule 23(a)'s prerequisites, this action also satisfies Rule 23(b)(3)'s requirements that common questions of law or fact predominate over individual questions and that a class action be the superior method to adjudicate this

4918-1462-3887.v3

dispute.  *See Amgen*, 568 U.S. at 460; *see also Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006).

### 1. Common Questions of Law and Fact Predominate

Rule 23(b)(3) predominance exists where the proposed class is "'sufficiently cohesive to warrant adjudication by representation.'" *See Amgen*, 568 U.S. at 469. Predominance "is a test readily met in certain cases alleging consumer or securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  Where common questions of law or fact outnumber those affecting only individual class members, predominance is satisfied.  *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 371 (3d Cir. 2015).  "'[T]he presence of individual questions does not per se rule out a finding of predominance,'" and as long as "issues common to the class overwhelm individual issues, predominance should be satisfied." *Id.*

The Supreme Court in *Amgen* held that the §10(b) elements of falsity, materiality, and loss causation are amenable to class-wide proof.  568 U.S. at 474-75.  Plaintiffs' §20(a) claims are predicated on the same legal and factual basis as Defendants' alleged violations of §10(b) and will also be determined by a common resolution of the same issues.  *See Aeterna Zentaris*, 324 F.R.D. at 339.

### 2. The Proposed Class Is Entitled to a Presumption of Reliance Under Fraud-on-the-Market Theory

"Whether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance." *Halliburton I*, 563 U.S. at 804.  Here,

4918-1462-3887.v3

the Class is entitled to a presumption of reliance under fraud-on-the-market theory first articulated by the Supreme Court in *Basic*.

Under *Basic*, the predominance requirement is met in a securities fraud class action where the plaintiffs invoke the fraud-on-the-market presumption of reliance. *See Basic*, 485 U.S. at 247; *Amgen*, 568 U.S. at 461.  In *Halliburton II*, the Supreme Court reaffirmed *Basic*'s fraud-on-the-market reliance presumption where "'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations.'" *Halliburton II*, 573 U.S. at 268.  Whenever an "investor buys or sells stock at the market price, his 'reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action.'" Id. (quoting *Basic*, 485 U.S. at 246-47).

For the fraud-on-the-market presumption to apply, a plaintiff must show: "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed." *Halliburton II*, 573 U.S. at 268. Here, the alleged misrepresentations were publicly made in United States Securities and Exchange Commission ("SEC") filings, press releases, and conference calls. ¶¶64-92.  Plaintiffs purchased Maiden common stock and Preference Shares after the misrepresentations were made and before the truth was revealed. *See* ¶¶21-22; ECF 15-2; ECF 27-3. And, as discussed

- 19 -

below and in the Nye Report, each of the Maiden Securities traded in an efficient market.[4]

To determine whether the market for a security was efficient, courts in this Circuit look to the non-exhaustive list of factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989) (the "*Cammer* factors"). Additionally, courts within the Third Circuit apply three additional factors, typically referred to as the *Krogman* factors. *See Krogman v. Sterritt*, 202 F.R.D. 467, 476 (N.D. Tex. 2001)*; Prudential II*, 2015 WL 5097883, at *6; *see also* Nye Rpt., ¶¶14-18.

During the Class Period, Maiden Securities were widely traded in efficient markets. In support of this Motion for Class Certification, Lead Plaintiffs offer the expert opinion of Dr. Zachary Nye, supporting market efficiency. Dr. Nye is a financial economist and Vice President at Stanford Consulting Group, Inc. Dr. Nye holds an A.B. in Economics from Princeton University; an M.Sc. in Finance from the London Business School; and a Ph.D. in Finance from the Paul Merage School of Business at the University of California, Irvine. He has co-authored academic research published in peer-reviewed conference proceedings, as well as working papers with finance faculty at various universities. His research areas include the market efficiency of financial and derivative securities, volatility forecasting, risk

---

[4] The Supreme Court has affirmed that materiality does not need to be proven at the class certification stage. *Halliburton II*, 573 U.S. at 276.

- 20 -

management, financial econometrics, valuation, and corporate finance. Dr. Nye has previously served as an expert witness in matters involving securities litigation, as well as business and intellectual property valuation. His reports have been recognized by various courts, including those in New Jersey. *See e.g.*, *Papa*, 333 F.R.D. 66. Dr. Nye has analyzed and opined on efficiency for the Maiden Securities during the Class Period.

Dr. Nye analyzed the market for Maiden Securities using the *Cammer* and *Krogman* factors. In addition to analyzing Maiden Securities' trading information and SEC filings, Dr. Nye performed an event study, testing whether the price of Maiden Securities reacted to new, company-specific information. Based on his analysis and study, Dr. Nye concludes that, during the Class Period, each of the Maiden Securities satisfied the *Cammer* and *Krogman* factors, strongly demonstrating market efficiency. *See generally* Nye Rpt., §VI .

### a.    Maiden's NASDAQ and NYSE Listings Are Strong Evidence of Market Efficiency

Initially, throughout the Class Period Maiden's common stock was listed and traded on NASDAQ and Maiden Series A, C, and D Preference Shares were listed and traded on the NYSE. Both weigh in favor of a finding of market efficiency. Nye Rpt., ¶13. *See also In re DVI, Inc. Sec. Litig.,* 639 F.3d 623, 634 (3d Cir. 2011) ("DVI II") (securities traded on NYSE and NASDAQ  well suited for application of the fraud-on-the-market theory), *abrogated on other grounds*, *Amgen Inc. v.*

- 21 -

*Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455 (2013); *In re Celgene Corp. Sec. Litig.,* 2020 WL 8870665, at \*9 (D.N.J. Nov. 29, 2020) (same); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2016 WL 4138613, at \*12 (E.D. Pa. Aug. 4, 2016) (same, collecting cases); *Papa*, 333 F.R.D. at 80 n.8 (same).

### b.    Cammer Factor 1: Weekly Trading Volume

High trading volume "is often seen as indicative of efficiency because 'many investors are executing trades on the basis of newly available or disseminated corporate information.'" *DVI I*, 249 F.R.D. at 208 (quoting *Cammer*, 711 F. Supp. at 1286). As noted by the *Cammer* court and reaffirmed many times since, an "average weekly trading of two percent or more of the outstanding shares would justify a strong presumption that the market for the security is an efficient one; one percent would justify a substantial presumption." *Cammer*, 711 F. Supp. at 1286; see also *In re Merck & Co., Inc., Vytorin/Zetia Sec. Litig.,* 2012 WL 4482041, at \*5 (D.N.J. Sep. 25, 2012) ("Merck I"); Nye Rpt., ¶27.

Here, the average weekly trading volume for Maiden's common stock during the Class Period was 2,445,007 shares, equal to 3.1% of Maiden common stock outstanding, exceeding the two percent threshold established in *Cammer* as justifying a "strong presumption" of market efficiency. Nye Rpt., ¶¶27-28. The Preference Shares average weekly trading volumes during the Class Period ranged

- 22 -

from 1.4% to 3.7%. Nye Rpt., ¶¶ 60-62.[5] Thus, this factor weighs in favor of a finding of market efficiency. *See e.g.*, *Cammer*, 711 F. Supp. at 1286; *Merck I*, 2012 WL 4482041, at *5 (finding Merck stock traded at a volume closer to 2.8% well over the threshold justifying a "strong presumption" of an efficient market); *Martínek v. AmTrust Fin. Servs., Inc.*,  2022 WL 326320, at *10 (S.D.N.Y. Feb. 3, 2022) (preferred stock trading volume ranged from 1.38% to 2.09% weighs in favor of market efficiency).

### c.    Cammer Factor 2: Analyst and Media Coverage

"Extensive coverage by securities analysts likewise indicates market efficiency, since the price of a company's security is often affected by analysts' reports of information learned through their own investigation and analysis." *DVI I*, 249 F.R.D. at 209 (citing *Cammer*, 711 F. Supp. at 1286). Security analysts serve to facilitate information flow and promote efficiency, and only a few analysts are necessary to strengthen the presumption of efficiency. *See id.* at 209.

Here, at least 250 analyst reports pertaining to the Company were issued during the Class Period, including reports from well-known investment firms that

---

[5] The Series A, C, and D Preference Shares' average weekly trading volumes during the Class Period were 1.4%, 2.2%, and 3.7%, respectively. The average weekly reported trading volume for the Series C and D shares exceeded the threshold for a "strong presumption" of market efficiency set out by *Cammer*, while the Series A Shares exceeded the threshold for a "substantial presumption." Nye Rpt., ¶¶ 60-62

followed and published research on Maiden or participated in the Company's conference calls. Investors also received information and analyses about Maiden during the Class Period via media coverage, investor conferences, trade magazines, Company presentations, as well as SEC filings with no cost. As such, company-specific news was widely disseminated to investors, thereby facilitating the incorporation of such information into the market prices of the Maiden Securities. *See* Nye Rpt., ¶¶31-34, 63.[6]

This significant analyst coverage supports market efficiency for all the Maiden Securities. *See e.g., DVI I*, 249 F.R.D. at 209 (coverage by *three* analysts and over 80 analyst reports was sufficient to favor a finding of market efficiency); *Navient Corp.*, 2021 WL 926611, at *10 (203 analyst reports on Navient is sufficiently significant to suggest market efficiency); *Schering ENHANCE*, 2012 WL 4482032, at *5 (analysts from a number of well-known firms published reports on Schering's securities weighs in favor of an efficient market); *Papa*, 333 F.R.D. at 82 (a variety of other sources that disseminated information about Perrigo stocks to

---

[6] Even though the aforementioned facts are sufficient to support the conclusion that each of the Maiden Securities traded in an efficient market, the Maiden Preference Shares were also each rated by two major credit rating agencies, which evaluated the Company and issued reports on Maiden during the Class Period. This further supports market efficiency for the Preference Shares. Nye Rpt., ¶¶ 64–68.

- 24 -

the investing public, including media coverage, public filings, trade magazines, and international news weighs in favor of finding market efficiency).

### d.    Cammer Factor 3: Number of Market Makers and the Potential for Arbitrage

*Cammer* explains that "[t]he existence of market makers and arbitrageurs would ensure completion of the market mechanism; these individuals would react swiftly to company news and reported financial results by buying or selling stock and driving it to a changed price level." *Cammer*, 711 F. Supp. at 1286-87; *see also* Nye Rpt., ¶36.[7] According to the *Cammer* court, "[t]en market makers for a security would justify a substantial presumption that the market for the security is an efficient one; five market makers would justify a more modest presumption." *Cammer*, 711 F. Supp. at  1293; *see also* Nye Rpt., ¶37.

During the Class Period, there were over 180 active market makers that traded Maiden common stock, and many of the market makers that facilitated trading in Maiden common stock handled a sizeable volume of shares. *See id.* ¶37; Nye Ex.7. *See also Papa* 333 F.R.D. at 83 (17 market makers are sufficient to support a finding

---

[7] A market maker is "a dealer who conducts a two-sided auction for securities by standing ready to trade on either side of the market for his or her own account when an order arrives." *Hacker v. Elec. Last Mile Sols. Inc.*, 722 F. Supp. 3d 480, 495 n.27 (D.N.J. 2024). Andrew Bloomenthal, Understanding Market Makers: Roles, Profits, and Their Impact on Liquidity (Aug. 19, 2025), https://www.investopedia.com/terms/m/marketmaker.asp ("[m]arket makers provide liquidity and depth to markets and profit from the difference in the bid-ask spread").

of market efficiency); *In re Res. Am. Sec. Litig.*, 202 F.R.D. 177, 189 (E.D. Pa. 2001) (33 market makers are enough); *Hacker*, 722 F. Supp. 3d at 495 (48 market-making firms are sufficient).[8]

As for the Preference Shares, they were traded on the NYSE using a single designated market-maker ("DMM"), which is indicative of an efficient market. Nye Rpt., ¶71. *See also, Schering ENHANCE*, 2012 WL 4482032, at *5 n.3 (finding efficient market without considering market makers number because Schering stock traded on the NYSE, noting that "market makers are used only for [NASDAQ] securities traded on the NASDAQ or in the over-the-counter market, this factor is not relevant for our purposes."); *Cosby v. KPMG, LLP,* 2020 WL 3548379, at *13 (E.D. Tenn. June 29, 2020) (finding *Cammer* Factor 3 weighs in favor of efficient market because preferred stock was traded on the NYSE); *see also Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 654 (S.D. Ohio 2017) (explaining that transactions on the NYSE go through a DMM which has been found to satisfy *Cammer* Factor 3).

---

[8] While a showing of arbitrage activity is not required to establish market efficiency, *see Papa*, 333 F.R.D. at 84 n.11 (finding that the number of market makers weighs in favor of market efficiency but not addressing arbitrage activity), Dr. Nye opined that the level of short interest, the degree of institutional ownership, and the tightness of the bid-ask spread indicate that arbitrage activity in Maiden's common stock was not hindered during the Class Period, further supporting market efficiency. Nye Rpt., ¶¶38-44.

### e.    Cammer Factor 4: Form S-3 Eligibility

A company is eligible to file an SEC Form S-3 registration statement if it meets certain requirements. *See* C.F.R. §239.13. 17. The ability to file this form indicates that the company is easily able to issue new securities and is evidence of market efficiency for the company's securities. *See Papa*, 333 F.R.D. at 84 (quoting *Krogman*, 202 F.R.D. at 476 ("Corporations permitted to use the S-3 form are . . . presumed to be actively traded and widely followed," so "a company's ability to file an S-3 Registration Statement [evidences an efficient market].")); *see also* Nye Rpt., ¶¶45-47.

Maiden was eligible and actually filed SEC Forms S-3 prior to and during the Class Period. Therefore, *Cammer* Factor 4 supports a finding of market efficiency for Maiden Securities. Nye Rpt., ¶¶48, 75. *See Navient Corp.*, 2021 WL 926611, at *10 (ability to file Form S-3 supports market efficiency).

### f.    *Cammer* Factor 5: Maiden Securities Reacted to New, Company-Specific Information

The final *Cammer* factor focuses on whether there is empirical evidence that Maiden Securities responded to the release of new, company-specific news events. *Cammer*, 711 F. Supp. at 1287. Experts "often perform event studies to prove the causal relationship between a company's stock price and the release of new corporate information." *Papa*, 333 F.R.D. at 84; Nye Rpt., ¶50. However, "a plaintiff seeking to demonstrate market efficiency need not always present direct evidence of

- 27 -

price impact through event studies." *Waggoner v. Barclays PLC*, 875 F.3d 79, 96-98 (2d Cir. 2017); *see also DFC Glob.*, 2016 WL 4138613, at *12 ("[c]ourts have rejected the idea that the fifth *Cammer* factor is necessary to establish market efficiency"); Nye Rpt., ¶50 n.85. Indeed, "courts have found market efficiency in the absence of an event study or where the event study was not definitive." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 84 (S.D.N.Y. 2015) .

Here, Dr. Nye conducted event studies of the Maiden Securities, examining the causal relationship between the release of Maiden-specific news events and the response in Maiden Securities prices. Nye Rpt., ¶¶51-55, 76-83. Specifically, Dr. Nye analyzed whether the price of Maiden's common stock and Preference Shares, adjusted for market and industry factors, moved in response to new, value-relevant corporate events. *Id.*[9] Utilizing different tests reflecting the differences in the way common stock and preference shares are expected to trade, Dr. Nye determined that there was a cause-and-effect relationship between new, value-relevant disclosures and resulting movements in Maiden's common stock price and the price of each of

---

[9]    As Dr. Nye discusses, because of the differences between Maiden's common stock and Preference Shares, he utilized distinct sets of events for his analyses. Nye Rpt., ¶¶76-81; *see AmTrust Fin. Servs.*, 2022 WL 326320, at *17  (recognizing Plaintiffs' expert's position to exclude certain events because, due to preferred stock's seniority, fixed dividends, and equity buffer, preferred stocks are less sensitive to minor fluctuations in the company's financial fortunes).

4918-1462-3887.v3

the Maiden Preference Shares during the Class Period. *Id.* The results of Dr. Nye's analyses is further evidence that each of the Maiden Securities traded in an efficient market during the Class Period. Nye Rpt., ¶¶55, 83; Nye Ex. 11C, 11E, 11G, and 12.

g.    *Krogman* Factor 1: Market Capitalization

Market capitalization is an indicator of market efficiency because investors have greater incentive to invest in more highly capitalized corporations, and such companies tend to be more well-known and closely followed. *See DVI I*, 249 F.R.D. at 212 (citing *Krogman*, 202 F.R.D. at 478). During the Class Period, Maiden's market capitalization (based on common stock and Preference Shares) was as high as $1.95 billion. As of the start of the Class Period, Maiden's market capitalization was greater than that of 71.1% of NASDAQ-listed stocks. Over the course of the Class Period, the percentile rank of Maiden Securities relative to NASDAQ-listed firms ranged from 52.6% (meaning Maiden's market capitalization was greater than 52.6% of NASDAQ-listed firms) to 80.8%. Nye Rpt., ¶56, 84; Nye Ex.13.

Maiden's sizeable market capitalization throughout the Class Period exceeded most of the NASDAQ-listed firms, materially exceeding the market capitalizations of companies whose securities were found to be trading in efficient markets, thus further evidencing efficiency. *See* Nye Rpt., ¶56, 84; *DVI I*, 249 F.R.D. at 212 (finding market capitalization ranging between $12 million to $300 million, a "rather

- 29 -

high market capitalization as compared to the broader survey of publicly traded companies," weighed in favor of a finding of market efficiency).

### h.    *Krogman* Factor 2: Bid-Ask Spread

A bid-ask spread is the difference between the prices at which investors are willing to buy a security and what current stockholders are willing to sell the security. A low bid-ask spread evidences market efficiency. *See, e.g., Prudential II*, 2015 WL 5097883, at *6 (citing *Krogman*, 202 F.R.D. at 478). A low bid-ask spread "indicates the presence of an efficient market because it suggests that the stock is liquid and more likely to be traded." *In re NII Holdings, Inc. Sec. Litig.*, 311 F.R.D. 401, 413 (E.D. Va. 2015).

The bid-ask spreads for each Maiden Securities were below 1% and comparable to those of randomly sampled stocks, supporting the conclusion that they traded in efficient markets. Nye Rpt., ¶¶56, 73.[10] *See, e.g., Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 501 (S.D. Fla. 2003) (a bid-ask spread of 2.44% weighed in favor of market efficiency); *Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 356 (C.D. Cal. 2015) (bid-ask spread of 2.91%). The bid-ask spreads supports market efficiency for each of the Maiden Securities.

---

[10] Maiden's common stock bid-ask was low during the Class Period, with a median of 0.14% and an average of 0.31%. Nye Rpt., ¶43. The bid-ask spreads for the Preference Shares were materially below 1% during the Class Period with the median ranging from 0.16% to 0.38% and the average ranging from 0.20% to 0.66%. *Id.*

4918-1462-3887.v3

### i.    *Krogman* Factor 3: Float

A stock's "public float" is defined as "the percentage of a security held by the public as opposed to company insiders." *DVI I*, 249 F.R.D. at 212 (citing *Krogman*, 202 F.R.D. at 478). "'Because insiders may have private information that is not yet reflected in stock prices, the prices of stocks that have greater holdings by insiders are less likely to accurately reflect all available information about the security.'" *Id.*. During the Class Period, the average public float of Maiden's common stock was 80.5% of the shares outstanding, and the public float for all three Preference Shares was 100%. Nye Rpt., ¶¶57, 86. That is further evidence in support of a finding of market efficiency for each of the Maiden Securities. *Id.*; *See McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 433 (S.D.N.Y. 2014) (public float of 31% to 43% of shares outstanding supported a finding of market efficiency); *Leone v. ASP Isotopes Inc.*, 2025 WL 3484821, at *39 (S.D.N.Y. Dec. 4, 2025) (67.36% public float supports a finding of efficient market).

In sum, all of the *Cammer* and *Krogman* factors support that the markets for the Maiden Securities were efficient during the Class Period. Thus, Plaintiffs have demonstrated that Class-wide reliance is appropriately presumed for class certification purposes under the fraud-on-the-market doctrine.

## C.    Damages Are Measurable on a Class-Wide Basis

Courts in the Third Circuit have consistently recognized "the need to perform individual damages calculations does ***not*** foreclose class certification under Rule 23(b)(3)." *DFC Glob.*, 2016 WL 4138613, at \*14 (citing *Neale*, 794 F.3d at 374). This is because "'[t]he focus of the predominance inquiry is on liability, not damages.'" *Novo*, 2020 WL 502176, at \*8 (quoting *Smith v. Suprema Specialties, Inc.*, 2007 WL 1217980, at \*9 (D.N.J. Apr. 23, 2007)); see also *Grubb v. Green Tree Servicing, LLC*, 2017 WL 3191521, at \*22 (D.N.J. July 27, 2017); *Reyes v. Netdeposit*, LLC, 802 F.3d 469, 481 n.12 (3d Cir. 2015). Indeed, the Third Circuit has recognized that denying class certification based on a finding of individualized damages would "amount[] to an abuse of discretion." *Neale*, 794 F.3d at 375; *see also Novo*, 2020 WL 502176, at \*9 (where all other issues are common, denying certification because of individual damages calculations abuses discretion).

Following the Supreme Court decision in *Comcast Corp v. Behrend*, 569 U.S. 27 (2013) ("*Comcast*"), it has been common for defendants to suggest that plaintiffs must calculate damages in order to demonstrate predominance under Rule 23(b)(3). But that is not true. In *Comcast*, the Supreme Court held that a class wide damages model "must measure only those damages attributable to [the plaintiff's] theory" of liability. 569 U.S. at 35. But the Third Circuit has effectively limited *Comcast*'s application to the nature of those plaintiffs' claims. *Neale,* 794 F.3d 353, 374. "A

- 32 -

close reading of [*Comcast*]," the Third Circuit wrote, "makes it clear that the predominance analysis was specific to the antitrust claim at issue. That is eminently sensible. Every question of class certification will depend on the nature of the claims and evidence presented by the plaintiffs." *Id*. *Comcast* established no broad-based rule and certainly did not mandate that damages must be calculated at the class certification stage. *See Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 2023 WL 4981716, at \*7-\*8 (D.N.J. Aug. 3, 2023) (certifying securities fraud class action over the defendants *Comcast* objection).

In the securities fraud context, the Third Circuit has limited *Comcast's* application in circumstances substantially similar to this case. In *Lannett*, 2023 WL 2985120, the Third Circuit affirmed class certification over the defendants' argument that a mismatch existed between the theory of liability and the damages model the plaintiffs proposed. The Third Circuit wrote, "'the out-of-pocket loss damages theory'" – the same damages theory Plaintiffs propose to use here (*see* Nye Rpt., ¶¶88-89) – "'is the traditional measure of damages in a 10b-5 action.'" *Lannett*, 2023 WL 2985120, at \*8  (citing, among others, *Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 297 (3d Cir. 1991)). The Third Circuit distinguished *Comcast*, noting that the plaintiffs' damages model in *Comcast* combined four theories of liability "in such a way that the model could not account for damages from one specific theory of wrongdoing." *Id.* at \*4. In *Lannett*, the plaintiffs "focused on a single theory of

- 33 -

liability" that material misrepresentations or omissions "artificially inflated Lannett's stock price, and Lannett's stock price dropped when the truth emerged." *Id.*.

This case is indistinguishable from *Lannett*. Plaintiffs here allege that Defendants made material misrepresentations and omissions about Maiden's financial results and loss reserves and when the truth about those loss reserves was disclosed Maiden's stock price dropped substantially. For a securities fraud class action in this context, the out-of-pocket damages methodology is the gold standard and more than sufficient to satisfy the predominance of common issues as it relates to damages. *See, e.g., Papa*, 333 F.R.D. at 87-88 (certifying class, rejecting *Comcast* challenge in securities fraud class action, approving Dr. Nye's proposed out-of-pocket damages methodology as reflecting inflation from misleading statements and price drop upon correction). The out-of-pocket methodology is widely accepted in both this Circuit and throughout the country for calculating damages in securities fraud cases like this one. *See, e.g.*, *In re SanDisk LLC Sec. Litig.*, 2018 WL 4293336, at *2 (N.D. Cal. Sep. 4, 2018) ("[t]he out-of-pocket method is 'widely considered an accepted method for the evaluation of materiality damages to a class of stockholders in a defendant corporation'"); *Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 798 F. Supp. 3d 416, 478-79 (S.D.N.Y. 2025) ([t]he "event study methodology to measure out-of-pocket damages based upon [plaintiff's] sole theory of liability – that

- 34 -

4918-1462-3887.v3

Defendants' material misstatements created or maintained artificial inflation in Goldman's stock price during the class period, causing losses when that inflation was released from the stock price following the disclosure of information revealing the fraud. . . . has been endorsed repeatedly by courts in this Circuit"). Indeed, the Supreme Court has endorsed this approach: "[T]he correct measure of damages . . . is the difference between the fair value of all [the plaintiff] received and the fair value of what he would have received had there been no fraudulent conduct." *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 155 (1972). As Dr. Nye describes, out-of-pocket damages in this case can be determined by using the event study methodology that he has already used to analyze price movements for the Maiden Securities in response to new, value-relevant information. *See* Nye Rpt., ¶¶87-92. Accordingly, Plaintiffs have established that the predominance requirement of Rule 23(b)(3) has been satisfied.

### D.    A Class Is Superior to Other Available Methods for the Fair and Efficient Adjudication of This Action

This action also satisfies Rule 23(b)(3)'s requirement that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3). Courts uniformly recognize that the class action device is superior to other available methods for the fair and efficient resolution of securities class actions, like this one, comprised of hundreds or thousands of separate individual cases. The Supreme Court has explained that class actions "permit the

- 35 -

plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that, in the case before it, "most of the plaintiffs would have no realistic day in court if a class action were not available").

In assessing the superiority prong, Rule 23(b)(3) sets forth the following four factors: (1) the interests of members of the class in "individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) the difficulties likely to be encountered in the management of a class action. Rule 23(b)(3). Here, each factor weighs strongly in favor of class certification.

First, Class members' interests in individually controlling the prosecution of separate actions is minimal. The proposed Class is geographically dispersed, and for many, the burden and expense of litigating their claims individually would be economically prohibitive given the size of their individual damages relative to the time and expense of litigation. *See Novo*, 2020 WL 502176, at *9 (citing *Krangel v. Golden Rule Res., Ltd.*, 194 F.R.D. 501, 506 (E.D. Pa. 2000) ("class actions are appropriate in securities cases where a significant number of investors with relatively small losses would likely have decreased motivation to pursue their claims

- 36 -

4918-1462-3887.v3

individually")). Thus, absent certification, the burden and expense of litigating would not be distributed among the Class, one of the advantages afforded by the class action mechanism.

Second, Plaintiffs are unaware of any §10(b) actions brought by a potential Class member against Maiden related to the fraud alleged in this action. The absence of other matters further confirms the limited ability or willingness of individual Class members to prosecute separate actions. *See Papa*, 333 F.R.D. at 78 (finding the superiority requirement met where "[a]side from [other cases in the same district], the court [was] not aware of any class member interest in prosecuting th[e] matter on an individual basis").

Third, the maintenance of a class action in this District ensures an efficient expenditure of resources and consistent rulings concerning matters relating to the Class's claims. *See Merck II*, 2013 WL 396117, at *13; *DVI I*, 249 F.R.D. at 218. Because Defendants reside or transact business within this District, and Maiden maintains the primary offices of its U.S. subsidiary, Maiden Reinsurance North America, Inc., in this District, and many of the acts and practices complained of occurred in substantial part in this District, the District of New Jersey is a desirable forum for this class action.

Finally, Plaintiffs do not foresee any management difficulties that will preclude this action from being maintained as a class action. Consistent with Rule

- 37 -

23(b)(3), certification of the case as a class action would not only be superior to other available methods for fairly and efficiently adjudicating the controversy, but also appears to be the sole method for fairly and efficiently litigating the claims of all members of the proposed class. *See Papa*, 333 F.R.D. at 78; *Kline v. First W. Gov't Sec., Inc.*, 1996 WL 153641, at *12 (E.D. Pa. Dec. 21, 1995) ("considerations of judicial economy and fairness dictate that a class action is superior for securities fraud cases . . . [because] it avoids numerous scattered duplicative lawsuits burdening the federal court system and affords small investors an opportunity to redress their injuries").

**E.     The Court Should Appoint Plaintiff's Choice of Counsel as Class Counsel Under Rule 23(g)**

As detailed in §III.A.4, *supra*, Robbins Geller and The Rosen Law Firm are well-qualified to serve as Class Counsel in this matter and should be so appointed pursuant to Rule 23(g). Under Rule 23(g), the Court shall appoint counsel who will fairly and adequately represent the Class, considering counsel's work "in identifying or investigating potential claims in the action," "counsel's experience in handling class actions," "counsel's knowledge of the applicable law" and "the resources that counsel will commit to representing the class".  Rule 23(g)(1)(A)(i)-(iv).

Lead Counsel, together with the Pension Trust and the Bank, have already undertaken a vigorous prosecution of this action, including conducting an extensive investigation of the claims, defeating Defendants' motion-to-dismiss and, on appeal,

- 38 -

4918-1462-3887.v3

motion for summary judgment, engaging in party and third-party discovery, consulting relevant experts, and pursuing class certification. Moreover, because "he Private Securities Litigation Reform Act provides that the lead plaintiff "'shall, subject to the approval of the court, select and retain counsel to represent the class,'" there is "'a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'" *Wayne Cnty. Emps.' Ret. Sys. v. Mavenir, Inc.*, 2019 WL 3494734, at *4 (D. Del. Aug. 1, 2019) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 218, 276 (3d Cir. 2001)). Given Robbins Geller and The Rosen Law Firm's stellar track record in securities cases around the nation, their substantial experience and resources, and their dedication to aggressively prosecuting this action on behalf of the Class, the Pension Trust and the Bank's selection of Robbins Geller and The Rosen Law Firm as Class Counsel should be approved.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Class Certification pursuant to Rules 23(a) and 23(b)(3), appoint the Pension Trust and the Bank as Class Representatives, and appoint Robbins Geller and The Rosen Law Firm as Class Counsel pursuant to Rule 23(g).

- 39 -

4918-1462-3887.v3

DATED:  February 13, 2026          THE ROSEN LAW FIRM, P.A.


/s/ *Laurence M. Rosen*

LAURENCE M. ROSEN
One Gateway Center, Suite 2600
Newark, NJ  07102
Telephone:  973/313-1887
973/833-0399 (fax)
lrosen@rosenlegal.com

THE ROSEN LAW FIRM, P.A.
JACOB A. GOLDBERG
DANIEL TYRE-KARP
275 Madison Ave., 40th Floor
New York, NY 10016
jgoldberg@rosenlegal.com
dtyrekarp@rosenlegal.com
Telephone: 212/686-1060
212/202-3827 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
TOR GRONBORG
TRIG R. SMITH
PATTON L. JOHNSON
ASHLEY G. PYLE
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
torg@rgrdlaw.com
trigs@rgrdlaw.com
pjohnson@rgrdlaw.com
apyle@rgrdlaw.com

- 40 -

4918-1462-3887.v3

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

*Co-Lead Counsel*

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
JAMES E. CECCHI
DONALD A. ECKLUND
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
decklund@carellabyrne.com

*Additional Counsel*

- 41 -

4918-1462-3887.v3